## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ALEXANDRIA McGAUGHEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:07-cv-01498 |
| v. | ) | |
| | ) | Judge Richard J. Leon |
| DISTRICT OF COLUMBIA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### PLAINTIFF'S OPPOSITION TO DEFENDANT DISTRICT OF COLUMBIA'S MOTION FOR LEAVE TO LATE FILE REPLY

Plaintiff Alexandria McGaughey respectfully submits this Opposition to Defendant District of Columbia's ("District's") Motion for Leave to Late File Reply.  The Court should not countenance the District's dilatory filing, particularly in light of the representations made by the District in its motion, as discussed below.  The District has not met the standards for excusable neglect, as it must under Federal Rule of Civil Procedure 6(b) in order to receive permission to late file.  Moreover, the District's proposed reply brief improperly attempts to raise a new argument that may not be made at this pre-answer stage of the case.  Accordingly, the Court should deny the District's motion for leave to late file.[1]

### FACTUAL BACKGROUND

In its motion for leave to late file reply and accompanying memorandum of points and authorities, the District has failed to provide the Court with an accurate and complete recitation of relevant facts.  To begin with, the District states on page one of its motion that it "was unable

---

[1] In an abundance of caution, Plaintiff attaches as Exhibit A to this Opposition a proposed surreply to the District's proposed reply brief.  Plaintiff respectfully requests that if the Court permits the District's late-filed reply, then the Court also accept for filing Plaintiff's surreply, as the Court suggested that it would during the January 14, 2008 status conference.

to gain plaintiff's consent to the filing of this motion or the relief requested herein." Dist. Mot. at 1. That statement is false. The District never contacted undersigned counsel – by email, by phone, or by any other means – to confer regarding the District's motion for leave to late file a reply memorandum. Rather, the District simply e-filed that document approximately an hour prior to the scheduled January 14, 2008 status conference. Thus, the District was not "unable to gain plaintiff's consent," as the District has represented to the Court. Rather, it never sought such consent in the first place.

The District's account of facts concerning its proposed late filing is also incomplete. Although the District correctly states that it filed its motion to dismiss on October 27, 2007, Dist. Mem. at 1, the District fails to note that its motion originally was due on September 11, 2007. On the afternoon of September 10, 2007, counsel for the District Michelle Davy sought and received from undersigned counsel consent to a 30-day extension (until October 12, 2007) to answer or otherwise respond to the Complaint. Ms. Davy's contact with undersigned counsel was by both phone and email. In the District's consent motion submitted to the Court on September 11, 2007, the District noted that the additional time would permit it to fully investigate the case and compile relevant information. 9/11/07 Dist. Mem. at 3-4. Ms. Davy also stated that she had been out of the office and that staffing issues had "created scheduling conflicts that the undersigned counsel did not anticipate previously" *Id.* at 4. By minute order of September 17, 2007, the Court granted the District's requested extension and ordered a response to the Complaint by October 12, 2007.

On the afternoon of October 12, 2007, Ms. Davy sent an urgent email to undersigned counsel seeking an additional two-week extension to answer or otherwise respond to the Complaint. Again, undersigned counsel consented to that request. Despite that the District's

response to the Complaint was due on October 12, 2007, the District did not submit a consent

motion to the Court until October 15, 2007.  The District's submission stated that an additional

two weeks would allow the District "to complete investigating this case."  10/15/07 Dist. Mem.

at 1.  Ms. Davy also cited an increased caseload, trial preparation in another matter, and

"scheduling conflicts that she did not anticipate when she was first assigned to this matter" as

reasons for allowing the two-week extension.  *Id.*  On October 18, 2007, the Court granted the

District's motion and ordered a response to the Complaint by October 29, 2007.

The District thereafter filed its motion to dismiss on October 29, 2007, accompanied by a

five-page memorandum of points and authorities.  Plaintiff timely filed an opposition to the

District's motion on November 13, 2007.

Finally, and especially pertinent here, on December 12, 2007, the parties filed a Joint

Meet and Confer Statement Pursuant to Local Civil Rule 16.3(c) ("Joint Statement").  The Joint

Statement was submitted under the signature of all parties, including the District, which

reviewed and approved the document.  In multiple places, that document references the District's

pending motion to dismiss and states that briefing upon that motion has been completed.  *See,*

*e.g.*, Joint Statement at 3 ("Defendant District of Columbia has filed a motion to dismiss for lack

of jurisdiction which remains pending before the court."); *id.* at 4-5 ("Only one party, the

District, has filed a dispositive motion, and that has been fully briefed."); *id.* at 5 (discussing the

briefing schedule for "any dispositive motions, other than the District's pending motion"); *id.* at

6 ("Defendant District of Columbia believes that it may be dismissed from this action based on

its pending motion to dismiss and, in the alternative, for summary judgment.").  Despite that the

exchanges among the parties culminating in the Joint Statement plainly were a reminder to the

District about its pending motion, the District did not take that opportunity in mid-December

2007 to seek permission to submit a late-filed reply.  Rather, the District agreed, as of December

12, 2007, that its pending motion "has been fully briefed."  *Id.* at 5.[2]

## ARGUMENT

**I.     THE DISTRICT'S MOTION FOR LEAVE TO LATE FILE SHOULD BE DENIED BECAUSE THE DISTRICT DID NOT SEEK PLAINTIFF'S CONSENT TO THE FILING OF THAT MOTION, AS REQUIRED BY LOCAL RULE.**

Local Civil Rule 7(m) imposes a "duty of counsel to confer on nondispositive motions."

Local Civ. R. 7(m).  Specifically, this Rule requires:

> Before filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel, either in person or by telephone, in a good faith effort to determine whether there is any opposition to the relief sought and, if there is opposition, to narrow the areas of disagreement.

*Id.*  The Rule also requires that a party include in its motion a statement (1) "that the required

discussion occurred" and (2) "a statement as to whether the motion is opposed."  *Id.*

"If a party files a nondispositive motion without certifying its compliance with Rule

7(m), the motion will be denied."  *Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006);

*accord, e.g.*, *Equal Rights Ctr. v. Post Props., Inc.*, 246 F.R.D. 29, 31 (D.D.C. 2007).  Moreover,

as this Court has explained, "[t]he Local Rule is clear that compliance with the duty to confer

requirement necessitates something more than an exchange of letters or a chain of e-mail

correspondence; if the moving party does not discuss the anticipated motion with opposing

counsel 'in person or by telephone,' then she has not followed the rule and the court may dismiss

her motion."  *Equal Rights Ctr.*, 246 F.R.D. at 31.

---

[2] From the District's first request for an extension in September 2007 through its most recent motion for leave to late file, the same attorneys have been listed as counsel on District's filings (Mr. George C. Valentine, Ms. Kimberly Matthews Johnson, and Ms. Michelle Davy), with the sole exception that the District's most recent filing reflects that Peter Nickles is now serving as Interim Attorney General for the District of Columbia, replacing former Attorney General of the District of Columbia Linda Singer.

Here, in clear violation of Local Rule 7(m), the District <u>never</u> sought Plaintiff's consent to the District's motion for leave to late file a reply brief.  As noted, Local Rule 7(m) requires a moving party, subject to denial of the motion, to confer in good-faith with the opposing party on <u>all</u> nondispositive motions.[3]  The District never initiated any contact with Plaintiff and thus the required conference never took place.  Undersigned counsel briefly stated this point at the January 14, 2008 status conference, and counsel for the District, who spoke subsequently, did not dispute that the District had not sought Plaintiff's consent.  What is more, despite its patent failure to confer with Plaintiff's counsel, the District represented to the Court in its motion for leave to late file that the District had been "unable to gain plaintiff's consent to the filing of this motion or the relief requested herein," Dist. Mot. at 1, leaving the misleading impression that the District had indeed conferred with Plaintiff's counsel, but that Plaintiff had not consented.

Because of the District's clear failure to comply with Local Rule 7(m), and because of its misleading statement in its motion for leave to late file suggesting that it had in fact complied with the Local Rule, the Court should deny the District's motion for leave to late file.

## II.     THE DISTRICT'S MOTION FOR LEAVE TO LATE FILE SHOULD BE DENIED BECAUSE IT HAS NOT MADE THE REQUIRED SHOWING OF EXCUSABLE NEGLECT.

As the District appears to recognize, *see* Dist. Mem. ¶ 6, Federal Rule of Civil Procedure 6(b)(2) requires that the District establish "excusable neglect" in order for the Court to permit the District's late filing.  Because the District has not and cannot establish excusable neglect for its

---

[3] On page one of the District's proposed reply in support of its motion to dismiss, the District states that "[s]ince this is a dispositive motion, defendant was not required to obtain consent from plaintiff to the relief requested in this Motion."  Proposed Reply at 1.  Although that statement is confusing to the extent that the proposed reply brief is not itself a motion subject to Local Rule 7(m), Plaintiff assumes that the District is not suggesting, incorrectly, that Local Rule 7(m) does not apply to its motion for leave to late file a reply brief simply because the proposed reply brief is related to a dispositive motion.  By its clear terms, Local Rule 7(m) applies to the District's nondispositive motion for leave to late file a reply.

delinquency, the Court must deny the District's motion.

Pursuant to Federal Rule 6(b), where, as here, a party seeks to submit a filing "after the expiration of the specified period," it must do so "upon motion" demonstrating that "the failure to act was the result of excusable neglect." Fed. R. Civ. P. 6(b).  The Court may grant a motion for leave to late file only "for cause shown," which, in the case of a filing attempted after the expiration of a due date, requires a showing of "excusable neglect."  *Id.*

As the United States Supreme Court authority cited by the District plainly states, "any *post*deadline extension must be 'upon motion made,' and is permissible only where the failure to meet the deadline 'was the result of excusable neglect.'"  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 895-96 (1990) (emphasis in original).  Thus, the District is wrong to suggest that the Court may, in its discretion, grant a Rule 6(b) motion for a post-deadline submission absent a finding of excusable neglect.  *See* Dist. Mem. ¶ 7.  As the Supreme Court explained in *Lujan*,  Federal Rule 6(b) "provides the mechanism by which that discretion is to be invoked and exercised," including the "excusable neglect" requirement.  *Lujan*, 497 U.S. at 895-96; *see Smith v. District of Columbia*, 430 F.3d 450, 456-57 (D.C. Cir. 2005) (reversing the acceptance of a postdeadline filing that did not meet Rule 6(b)'s "motion" and "excusable neglect" requirements).[4]

Whether "excusable neglect" exists is an equitable inquiry, involving the following

---

[4] As the District notes, in *Yesudian ex rel. United States v. Howard Univ.*, 207 F.3d 969, 917 (D.C. Cir. 2001), the D.C. Circuit did not reverse the district court's allowance of a week-late filing absent a "formal finding" of excusable neglect.  *Yesudian* does not hold, however, that a late filing may be permitted under Federal Rule 6(b)(2) absent a showing of excusable neglect. Rather, the D.C. Circuit did not reverse in *Yesudian* because, despite the district court's lack of a "formal finding," the district court had weighed factors relevant to the excusable neglect analysis in deciding to permit the late filing.  Moreover, in *Yesudian* the filing was only a week late and the late filer offered a good-faith reason for the delay – a mistaken reliance on the wrong court rule.  In contrast, here the District's filing was nearly two months late, the District had previously concurred that its briefing on the motion was complete, and the District has offered no specific reason for the delay.  In other words, unlike in *Yesudian*, excusable neglect does not exist here.

factors:  "[1] the danger of prejudice to the [non-movant], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Yesudian*, 270 F.3d at 971 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)); *accord, e.g.*, *Smith*, 430 F.3d at 457 n.5.  Although the inquiry is an equitable one, the Supreme Court has made clear that "'inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute "excusable" neglect.'"  *In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1209-10 (D.C. Cir. 2003) (quoting *Pioneer*, 507 U.S. at 392).  Moreover, courts in this Circuit have recognized that the fault of the moving party is a "key factor."  *Wilson v. Prudential Fin.*, 218 F.R.D. 1, 3-4 (D.D.C. 2003); *see, e.g.*, *Webster v. Pacesetter, Inc.*, 270 F. Supp. 2d 9, 14 (D.D.C. 2003) (explaining that "'fault in the delay remains a very important factor – perhaps the most important single factor – in determining whether neglect is excusable'"); *Inst. For Policy Studies v. U.S. Cent. Intelligence Agency*, No. 06-cv-0960, 2007 U.S. Dist. LEXIS 92206, at *7-15 (D.D.C. Dec. 18, 2007) (discussing the importance of fault to the excusable neglect analysis and citing numerous "examples of untimely filings being rejected" due only to the "mistake made by counsel" *Pioneer* factor).

The District has proffered three reasons for its nearly two-month delay, none of which are sufficient to establish excusable neglect.  First, the District cites "inadvertence."  Dist. Mem. ¶ 5.  As explained above, "inadvertence" does not ordinarily support a finding of excusable neglect.  *See, e.g.*, *Pioneer*, 507 U.S. at 392.  That principle is particularly apt where, as here, the District has failed to elaborate on the nature and timing of its "inadvertence."  Importantly, to the extent the District inadvertently overlooked the November 23, 2007 deadline at that time, the District subsequently was reminded of its pending motion to dismiss by the December 12, 2007 Joint

Statement submitted by <u>all</u> parties, and about which all parties, including the District, extensively conferred prior to filing.  Yet, instead of alerting the parties and the Court at that time that the District planned to seek permission to submit a late reply, the District instead concurred with the parties that its pending motion "has been fully briefed."  Joint Statement at 5.  Given these factual circumstances and the District's utter lack of an explanation for its actions, its assertion of mere "inadvertence" cannot support a conclusion of excusable neglect.

Second, the District cites "the intervening Thanksgiving holiday" as a basis for excusable neglect.  Dist. Mem. ¶ 5.  Notably, that holiday took place nearly two months prior to the District's submission of its motion for leave to late file, and thus it cannot possibly serve as a complete explanation for the District's delay.  The "Thanksgiving holiday" is also a plainly flawed excuse because subsequent to that holiday, the District was reminded of its pending motion by the detailed discussions among the parties of the proposed schedule for this case, culminating in the December 12, 2007 Joint Statement, which stated that the District's motion "has been fully briefed."  Joint Statement at 5.  This Court has previously rejected the "holiday season" as the basis for excusable neglect, particularly where, as here, there was ample post-holiday notice of the need to respond.  *See Wilson*, 218 F.R.D. at 3 & n.4 (rejecting the "Christmas holiday season" as a justification for a six-week delay where the triggering event occurred "after the Christmas holiday had passed").

Third, the District cites "the press of other business."  Again, the District provides no elaboration or substantiation of this claim.  Moreover, the District's proposed reply brief is only four pages long, and thus it is hard to credit that "the press of other business" could have delayed a filing of that length for nearly two months.  In any event, this Court has explained that "mistake resulting from a heavy case load" is "an insufficient basis for excusable neglect."  *D.A. v.*

*District of Columbia*, No. 07-cv-1084, 2007 U.S. Dist. LEXIS 90640, at *10 (D.D.C. Dec. 6, 2007); *see, e.g.*, *Inst. For Policy Studies*, 2007 U.S. Dist. LEXIS 92206, at *9 ("'the holidays and the press of other business, and the absence of undue prejudice to Plaintiff, fall far short of a showing of excusable neglect'" (quoting *Moore v. District of Columbia*, No. 05-2020 (D.D.C. filed Feb. 15, 2007)).

Especially in light of the District's fault and lack of a valid explanation, the remaining *Pioneer* factors provide no basis for showing of excusable neglect. In particular, the length of the delay – nearly two months – is much longer than the brief delay generally at issue in cases establishing excusable neglect. *See, e.g.*, *Yesudian*, 270 F.3d at 971 (characterizing as "brief" the week-long delay at issue). That delay, and the District's lack of a real explanation for it, is particularly troubling because (1) Plaintiff previously agreed to two extensions (totaling six weeks) for the District to file its initial motion to dismiss; (2) the District continues to offer the same unsubstantiated excuses for delay as it did in the previous consent motions for extension that it submitted to the Court, in which the District assured the Court that it was using the time to attend to this case; and (3) the District received a clear reminder before and as of December 12, 2007 that it had a pending motion to address, but yet – without explanation – waited over a month to attempt to rectify the situation. *See supra.*

Finally, the District will not be unduly prejudiced by having its filing rejected, as the bulk of its proposed reply concerns a new argument that is not properly raised at this juncture, but that instead must be made later in this case. *See infra* Section III. In contrast, Plaintiff has been and will be prejudiced by the District's late filing, particularly if the District is allowed to raise new arguments that were required to have been made in its original Rule 12(b) motion. *See id.*

**III.    IN NO EVENT SHOULD THE DISTRICT BE PERMITTED TO RAISE AN
ENTIRELY NEW ARGUMENT FOR DISMISSAL IN ITS REPLY BRIEF.**

Although not mentioned in the District's motion for leave to late file or supporting memorandum, the District's proposed reply is not only late, but it largely is an improper attempt to raise a new argument (the "public duty doctrine") that could have been made in the District's original motion to dismiss. Both the Federal Rules and precedent dictate that the District may not raise a new Rule 12(b) argument for dismissal in its reply brief. Rather, it must make that argument in due course, as provided by Federal Rule 12(h)(2). Thus, regardless whether the District's late filing is permitted, this Court should not entertain the District's new "public duty" argument as part of the District's pre-answer motion to dismiss.

Federal Rule of Civil Procedure 12(g) requires "consolidation of defenses" in a pre-answer Rule 12(b) motion. Thus, "[i]f a party makes a motion under [Rule 12(b)] but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted," except as provided for by Federal Rule 12(h)(2). Fed. R. Civ. P. 12(g). In turn, Federal Rule 12(h)(2) provides that "[a] defense of failure to state a claim upon which relief can be granted" is not waived for all time by omission from a Rule 12(b) motion, but instead "may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits." Fed. R. Civ. P. 12(h)(2). Thus, a defendant is limited to one pre-answer Rule 12(b) motion. Omitted Rule 12(b)(6) arguments that could have been made, but are not made, by the initial Rule 12(b) motion must await post-answer resolution, such as by motion for judgment on the pleadings or motion for summary judgment.

In addition, arguments made for the first time in a reply brief are forfeited. *See, e.g.*, *Dialysis Clinic, Inc. v. Leavitt*, 518 F. Supp. 2d 197, 2007 U.S. Dist. LEXIS 79860, at *18

(D.D.C. 2007) (citing, *inter alia*, *Louisiana Pub. Serv. Comm'n v. FERC*, 482 F.3d 510, 521

(D.C. Cir. 2007)); *Walker v. Pharm. Research & Mfrs. of Am.*, 461 F. Supp. 2d 52, 58 n.9

(D.D.C. 2006) (citing, *inter alia*, *In re Asemani*, 455 F.3d 296, 300 (D.C. Cir. 2006)).

Together, these principles preclude the District from raising a new ground for dismissal

pursuant to Federal Rule 12(b)(6) in its proposed reply brief in support of its initial Federal Rule

12(b) motion to dismiss.  The District's initial Rule 12(b) motion made one argument for

dismissal:  that the Court lacks jurisdiction over the District.  *See, e.g.*, 10/29/07 Dist. Mem. at 1.

That motion did not raise the Rule 12(b)(6) "public duty" argument that the District now seeks to

raise in reply.  *See* Dist. Proposed Reply at 2-4.  As noted, caselaw in this Circuit establishes in

both the Circuit Court and District Court context, a party may not raise an argument for the first

time in a reply brief.  *See supra*.  To the extent that the District's "judicial economy" argument,

Dist. Mem. ¶ 9, is taken to suggest that the District could simply have brought the "public duty"

argument as another freestanding Rule 12(b) motion to dismiss, Dist. Mem. ¶ 9, that argument is

precluded by Federal Rules 12(g) and (h).  Those rules make clear that pre-answer arguments for

dismissal should be consolidated in <u>one</u> pre-answer motion.  The District has provided no

justification for its delay in raising the "public duty" argument and has made no showing that this

argument was not "available" to the District when it filed its initial motion.  Fed. R. Civ. P.

12(g).  Thus, the District may not raise that argument in a pre-answer motion, but must instead

await the post-answer avenues provided for by Federal Rule 12(h)(2).

## <u>CONCLUSION</u>

For the foregoing reasons, the District's Motion for Leave to Late File Reply should be denied.[5]

Dated:  January 28, 2008                                    Respectfully submitted,

                                                                    _____/s/_____
                                                                    Bruce V. Spiva, D.C. Bar. No. 443754
                                                                       bspiva@spivahartnett.com
                                                                    Kathleen R. Hartnett, D.C. Bar. No. 483250
                                                                       khartnett@spivahartnett.com
                                                                    SPIVA & HARTNETT LLP
                                                                    1776 Massachusetts Ave. N.W., Suite 600
                                                                    Washington, D.C. 20036
                                                                    Telephone:  (202) 785-0601
                                                                    Facsimile:  (202) 785-0697

                                                                    *Attorneys for Plaintiff*

---

[5] As noted above, in the event the Court permits the District's late filing, Plaintiff respectfully requests that the Court accept for filing Plaintiff's proposed surreply in opposition to the District's motion to dismiss, which is attached to this Opposition as Exhibit A.

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2008, a true and correct copy of the foregoing

Plaintiff's Opposition to Defendant District of Columbia's Motion for Leave to Late File Reply,

including Exhibit A (Plaintiff's Proposed Surreply) was served electronically via ECF upon the

following:

> Michelle H. Davy
>    michelle.davy@dc.gov
> OFFICE OF THE ATTORNEY GENERAL
>    FOR THE DISTRICT OF COLUMBIA
> 441 4th Street, N.W, Room 6S085
> Washington, D.C. 20007
>
> Karen R. Turner
>    karen.turner@hacdlaw.com
> HAMILTON ALTMAN CANALE & DILLON, LLC
> 4600 East-West Highway, Suite 201
> Bethesda, MD 20814
>
> Larry D. McAfee
>    lmcafee@gleason-law.com
> GLEASON, FLYNN, EMIG & FOGLEMAN, CHARTERED
> 11 North Washington Street, Suite 400
> Rockville, MD 20850
>
> Robert W. Goodson
>    robert.goodson@wilsonelser.com
> Deidre L. Robokos
>    deidre.robokos@wilsonelser.com
> WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
> 1341 G Street, NW, Suite 500
> Washington, D.C. 20005-3105
>
> Thomas V. Monahan, Jr.
>    tvm@gdldlaw.com
> GOODELL, DEVRIES, LEECH & DANN, LLP
> One South Street, Suite 2000
> Baltimore, MD 21202

                                        /s/
                              _____
                              Bruce V. Spiva

# Exhibit A

**To Plaintiff's Opposition to Defendant District of Columbia's
Motion for Leave to Late File Reply**

*McGaughey v. District of Columbia, et al.*, No. 1:07-cv-01498 (D.D.C.)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALEXANDRIA McGAUGHEY,      )
                                   )
          Plaintiff,        )
                                   )     Case No. 1:07-cv-01498
v.                              )
                                 )     Judge Richard J. Leon
DISTRICT OF COLUMBIA, *et al.*,   )
                                 )
         Defendants.    )
————————————————)

**PLAINTIFF'S SURREPLY IN OPPOSITION TO DEFENDANT
DISTRICT OF COLUMBIA'S  MOTION TO DISMISS,
OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Plaintiff Alexandria McGaughey respectfully submits this Surreply in Opposition to

Defendant District of Columbia's ("District's") Motion to Dismiss or in the Alternative, for

Summary Judgment.  For the reasons below, and those described in Plaintiff's Opposition to the

District's Motion to Dismiss ("Opposition"), the District's Motion should be denied in full.

**I.     THIS COURT HAS JURISDICTION OVER PLAINTIFF'S CLAIMS AGAINST
       THE DISTRICT OF COLUMBIA.**

Plaintiff has fully explained in her Opposition why the District is properly within this

Court's jurisdiction under the supplemental jurisdiction statute, 28 U.S.C. § 1367(a).  The

District's Reply offers no new argument on this point, and, indeed, no response at all to

Plaintiff's substantial arguments and authorities in Opposition.  Accordingly, the District's

motion to dismiss for lack of subject matter jurisdiction should be denied.

Obviously, Plaintiff does not "concede" that "dismissal pursuant to Fed. R. Civ. P.

12(b)(2) is appropriate."  Dist. Mem. at 1.  Indeed, the District yet again erroneously describes

the basis for its jurisdictional motion, which – as Plaintiff noted in her Opposition – is Federal

Rule 12(b)(1), not Rule 12(b)(2).  In all events, the District is properly before this Court.

**II.    THE "PUBLIC DUTY DOCTRINE" DOES NOT REQUIRE DISMISSAL OF PLAINTIFF'S CLAIMS AGAINST THE DISTRICT.**

**A.    The District's Public Duty Argument Is Not Properly Before The Court.**

As explained in Plaintiff's opposition to the District's motion for leave to late file reply, Plaintiff's "public duty doctrine" argument is not properly before the Court.  *See* Section III, Plaintiff's Opp. to District's Mot. for Leave to Late File Reply.  Plaintiff incorporates those arguments by reference here.  By omitting the "public duty doctrine" argument from its Rule 12(b) motion and by raising that argument for the first time in its reply brief, the District has waived a "public duty" argument at this juncture and must await the post-answer avenues provided for by Federal Rule of Civil Procedure 12(h)(2).  *See id.*

**B.    The "Public Duty Doctrine" Does Not Bar Plaintiff's Claims Against The District.**

The public duty doctrine does not bar Plaintiff's three negligence claims against the District, for at least two reasons.  First, the public duty doctrine is largely, if not completely, inapposite in this case.  As courts, including this Court, have recognized, the public duty doctrine does not apply where, as here, a plaintiff is alleging that public officials have affirmatively caused her harm, rather than – as in *Varner v. District Columbia*, 891 A.2d 260 (D.C. 2006) and other typical public duty cases – that the public officials have failed to protect the plaintiff from crime or have failed to properly address an emergency situation.  Plaintiff is not claiming that the District failed to protect her from sexual assault or that the District is responsible for those injuries, but is claiming, among other things, that the District harmed her by affirmatively interfering with her medical treatment and her ability to have evidence collected to determine who sexually assaulted her and whether (as likely) she was subjected to date rate drugs.

Second, as even the District recognizes, there is an exception to the public duty doctrine

for individuals with a "special relationship" to the District.  Dist. Reply at 3-4.  Even assuming that the public duty doctrine applies to some or all of Plaintiff's claims in this case, the special relationship exception permits Plaintiff's claims.  As pleaded in the detailed Complaint, Plaintiff was no stranger to District officials, but rather had extensive and continuing contact with the District throughout her ordeal.  She relied on District agents to handle their contacts with her properly and non-negligently, but they did not.  Rather, in gross violation of the ordinary standard of care, District officials interfered with Plaintiff's medical treatment and ability to have evidence collected and preserved concerning her sexual assault.  In circumstances such as these, a "special relationship" exists and the public duty doctrine does not bar Plaintiff's claims.

### 1.    Plaintiff's Allegations Against the District.

The District begins by incompletely stating Plaintiff's allegations against the District, citing only one paragraph of the Complaint.  Dist. Reply at 2.  Plaintiff's claim is not simply that the District failed to investigate her case.  Rather, as set forth in detail in the Complaint, Plaintiff has three separate claims of negligence against the District.  *See* Complaint ¶¶ 46-65, 88-101.

Count V alleges that the District is liable for negligence as a result of its failure to properly hire, train and supervise Metropolitan Police Department ("MPD") employees, including with respect to the proper assessment and treatment of sexual assault victims, investigation of sexual assault cases, and collection and retention of forensic evidence of sexual assault.  Complaint ¶¶ 88-93.  This negligence claim hinges on the District's inadequate policies and practices regarding the handling of sexual assault victims, which, according to Plaintiff's allegations, led the District to interfere with Plaintiff's medical treatment, to exacerbate her physical and emotional harm and pain and suffering, and to prevent the collection and preservation of evidence relevant to her sexual assault and likely drugging.

Count VI alleges that the District is liable for negligence based upon its employees' interference with Plaintiff's treatment by the hospitals, including District employees' obstruction of the hospitals' collection of forensic evidence and performance of a forensic examination of Plaintiff. Complaint ¶¶ 94-97. Among other things, this claim is based on MPD employees stating without basis that Plaintiff's complaint of sexual assault did not justify treating her as a sexual assault victim or performing relevant tests and procedures. Plaintiff alleges that these actions by District employees exacerbated her physical and emotional harm and pain and suffering, as well as prevented the collection and preservation of evidence relevant to her sexual assault.

Count VII alleges that the District is liable for negligence based on its officers' failure to investigate Plaintiff's sexual assault, including their preparation of a false and misleading police report and their refusal to treat Plaintiff's complaint as an alleged sexual assault. Complaint ¶¶ 98-101. Plaintiff brings this claim in light of the District's special duty to sexual assault victims created by the District's partnership with area hospitals and by the District's insertion of itself into hospitals' treatment of sexual assault victims, as in Plaintiff's case. Plaintiff alleges that the District's negligence caused substantial injury to Plaintiff, including the loss of evidence to identify and hold responsible her assailant.

### 2.    The Public Duty Doctrine Does Not Apply To This Case.

The public duty doctrine exempts the District from liability in "cases where individuals seek to hold the District liable for negligence or wrongful death because of a <u>failure to protect a</u> person." *Taylor v. District of Columbia*, 776 A.2d 1208, 1214 (D.C. 2001) (emphasis added). As courts have explained, the public duty doctrine "is wholly inapposite in a case such as this, where the alleged harm was brought about directly by the officers themselves, and where there is

no allegation of a failure to protect." *Liser v. Smith*, 254 F. Supp. 2d 89, 102 (D.D.C. 2003)

(citing *District of Columbia v. Evans*, 644 A.2d 1008, 1017 n.8 (D.C. 1994) ("In this case, the

harm to Virtus Evans was caused directly by the officers at the scene.  There is no allegation of

failure to protect.  The public duty doctrine, therefore, has no relevance to this case.")); *see, e.g.*,

*Briggs v. Washington Metro. Area Transit Auth.*, 293 F. Supp. 2d 8, 12 (D.D.C. 2003)

(explaining that for the District "to have immunity under the public duty doctrine, the plaintiff

must allege that one of the city's public services failed to protect the decedent"); *Johnson v.

District of Columbia*, 580 A.2d 140, 142-43 (D.C. 1990) (the public duty doctrine does not apply

where "affirmative acts" of public officials "worsened" the plaintiff's condition.[1]

     *Varner v. District of Columbia*, 891 A.2d 260 (D.C. 2006) – the primary case relied upon

by the District for its public duty argument – exemplifies why the public duty doctrine does not

apply in this case.  *Varner* was a wrongful death and survival action brought on behalf of a

murdered Gallaudet student, Varner.  *Id.* at 263.  The murderer had previously killed another

Gallaudet student, but had not been apprehended by the authorities at the time he killed Varner.

*Id.* at 264.  The plaintiffs alleged that the District was "negligent in their investigation of the

[first] murder," and that "if the police had exercised reasonable care in investigating that murder,

[the perpetrator] would have been swiftly apprehended, and he would therefore have had no

opportunity to kill Benjamin Varner."  *Id.* at 273-74.  The D.C. Court of Appeals affirmed a

grant of summary judgment in favor of the District based on the public duty doctrine.  *Id.* at 273-

---

[1] A caveat to *Johnson* is that public officials are not ordinarily susceptible to suit for
"affirmatively worsening" a plaintiff's condition in the exigency of a rescue operation.  *See, e.g.*,
*Miller v. District of Columbia*, 841 A.2d 1244, 1248 (D.C. 2004) (in a case involving a fire
rescue operation, explaining that "the actions of the police during a rescue operation are
protected by the public duty doctrine and are not subject to retrospective dissection at trial").
Because Plaintiff's claims against the District do not pertain to an alleged duty to protect, never
mind in the context of a rescue operation, the public duty doctrine is inapposite here.

77. The Court of Appeals explained that "'under the public duty doctrine, public officials such as police officers cannot be held liable for harm caused by criminals unless there was a "special relationship" between the victim and the official.'"  *Id.* at 275 (quoting trial court).  The Court concluded that the "special relationship" exception did not apply because plaintiffs "'present no argument or evidence, however, to show that Benjamin Varner himself had any direct or continuing contact with the MPD,'" *id.* (quoting trial court), even assuming that the police had made general assurances to the 2000-person Gallaudet campus that District officials were doing all they could to protect everyone on campus, *id.* at 275-76.

As Plaintiff's allegations makes clear, Plaintiff is not alleging that the District failed to protect her from criminal acts or other harm caused by a third party.  Rather, Plaintiff's allegations are that the District's policies and the actions of its employees directly harmed her by affirmatively interfering with her medical treatment and preventing the collection and preservation of evidence about her sexual assault, adding to and exacerbating her physical and emotional harm and pain and suffering, and preventing her from obtaining evidence relevant to her sexual assault and likely drugging.  Complaint ¶¶ 46-65, 88-101.  Such evidence was relevant not only to a potential criminal prosecution by the District, but also to her proper medical treatment and to any effort to hold her assailant civilly responsible for his actions.  Thus, Plaintiff's allegation is not that the police failed to prevent her sexual assault, or that they failed to respond to the scene of an emergency, but rather that they improperly inserted themselves into Plaintiff's treatment and the collection of evidence at the hospital, causing her injury.  In this context, the public duty doctrine is inapposite.

The District's public duty argument does not differentiate among Plaintiff's three separate negligence claims against the District.  One might argue, however, that even if Counts V

and VI – both of which allege direct harm to Plaintiff through the affirmative acts of the police – are not barred by the public duty doctrine, that doctrine bars Count VII, which is Plaintiff's "failure to investigate" claim. Importantly, Plaintiff's failure to investigate claim is unlike the "failure to investigate" claim barred in *Varner* and similar cases, in which plaintiffs seek to hold the District liable for the criminal actions of third parties based on the District's failure to investigate or respond to criminal activity. That is <u>not</u> Plaintiff's claim in Count VII. Plaintiff's claim is that the District's investigation of her sexual assault claim fell woefully short of the standard of care and prevented her from being able to identify her assailant and bring him to justice. This is not the sort of "failure to investigate" claim precluded by the public duty doctrine, which, as explained above, insulates government officials from liability for failing to protect individuals from harm by others – not for directly causing individuals harm.

### 3. Even Were The Public Duty Doctrine Applicable, The "Special Relationship" Exception Permits Plaintiff's Claims.

Even assuming the applicability of the public duty doctrine to all or some of Plaintiff's claims against the District, those claims may not be dismissed because Plaintiff has pleaded a "special relationship" with the District – a well-established exception to the public duty doctrine. The District acknowledges that an exception to the public duty doctrine exists for a plaintiff who can "establish[] that he or she enjoyed a 'special relationship' with the District of Columbia." Dist. Mem. at 3. The "special relationship" exception distinguishes individuals in the general public – to whom public officials generally owe no specific duty to protect – from individuals who have established contact with public officials and to whom a duty is owed.

To establish a "special relationship," a plaintiff must show: (1) "'a direct and continuing contact between the victim and the police department'" and (2) "'justifiable reliance on that contact by the victim.'" *Varner*, 891 A.2d at 275; *accord, e.g.*, Dist. Mem. at 4. The cases cited

by the District for this point actually illustrate why a "special relationship" has been properly pleaded in this case.  In *Varner*, the Court of Appeals rejected the "special relationship" exception on summary judgment because the plaintiff could not establish any direct contact between the police and plaintiff's murdered son, but rather attempted to rely on generalized assurances made by the police to the entire 2000-person Gallaudet student body.  *Varner*, 891 A.2d at 276.  Similarly, in *Taylor*, also cited by the District, the plaintiff was unable to present evidence at the summary judgment stage establishing that her deceased son was actually a police informant or that he justifiably relied upon the police for protection.  *Taylor*, 776 A.2d at 1210.[2]

   In stark contrast, Plaintiff has pleaded a special relationship with the District based on her numerous contacts with District employees.  *See* Complaint ¶¶ 46-65, 88-101.  The Complaint makes clear that based on Plaintiff's direct and repeated interactions with District employees in the MPD's touted "Sex Assault Unit," Plaintiff relied on the District to take reasonable efforts to assist her as a sexual assault victim and to investigate her case, *e.g.*, *id.* ¶ 51, including to follow up with her after the traumatic odyssey at the hospitals, *id.* ¶ 52.  As the Complaint alleges, the District wholly failed in these regards.  Because Plaintiff has pleaded facts to support both a direct and continuing contact with District officials and justifiable reliance on those contacts, she has pleaded a "special relationship."  Her claims against the District therefore may not be

---

[2] *Trifax Corp. v. District of Columbia*, 53 F. Supp. 2d 20 (D.D.C. 1999), the only other authority cited by the District for its public duty argument, is wholly inapposite here.  *Trifax* dismissed a negligence claim against the District, where the plaintiff company alleged that the District's Office of Inspector General ("OIG") negligently prepared a negative report concerning the plaintiff.  *Trifax*, 53 F. Supp. 2d at 29-31.  Dismissal was appropriate in *Trifax* because the court concluded that the statute cited by the plaintiff as establishing a legal duty established no such thing.  *Id.* at 29-30.  Alternatively, the court observed that plaintiff had not pleaded facts supporting a "special relationship" to avoid application of the public duty doctrine.  *See id.* Specifically – unlike here – the plaintiff in *Trifax* had not pleaded direct or continuing contact with the OIG, which had "prepared and published its report without consulting Plaintiff, relying solely upon agency and outside documentation."  *Id.* at 31.  In contrast, here Plaintiff and other witnesses to the sexual assault had direct and continuing contact with District officials.

dismissed based on the public duty doctrine.

### C.    At The Very Least, Decision On This Issue Must Await Full Discovery.

For the reasons articulated above, the Court should rule, as a matter of law, that the public duty doctrine does not bar Plaintiff's claims against the District in this case.  At the very least, however, the Court should not resolve the public duty issue in the District's favor prior to full discovery.  As elaborated above, Plaintiff has adequately pleaded that the public duty doctrine does not apply in this case, among other reasons, because the District established a "special relationship" with the Plaintiff, *e.g.*, Complaint ¶ 100.  Plaintiff's Complaint is thus adequate to withstand a motion to dismiss, and she should be allowed the opportunity to develop facts in discovery to further support her claim that the public duty doctrine does not apply. Specifically, as in *Varner*, *Taylor*, and numerous other cases resolving this issue on summary judgment or at trial, Plaintiff should be permitted discovery concerning the establishment of a "special relationship" with the District based on its employees' course of conduct.

### <u>CONCLUSION</u>

For the foregoing reasons, and for those articulated in Plaintiff's Opposition, the District's Motion to Dismiss or in the Alternative, for Summary Judgment should be denied.

Dated:  January 28, 2008                          Respectfully submitted,

                                                                    /s/
                                              _____
                                              Bruce V. Spiva, D.C. Bar. No. 443754
                                                 bspiva@spivahartnett.com
                                              Kathleen R. Hartnett, D.C. Bar. No. 483250
                                                 khartnett@spivahartnett.com
                                              SPIVA & HARTNETT LLP
                                              1776 Massachusetts Ave., N.W., Suite 600
                                              Washington, D.C. 20036
                                              Telephone:  (202) 785-0601
                                              Facsimile:  (202) 785-0697

                                              *Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ALEXANDRIA McGAUGHEY,      )
                                )
          Plaintiff,      )
                                )     Case No. 1:07-cv-01498
v.                            )
                                )
DISTRICT OF COLUMBIA, *et al.*,   )
                                )
         Defendants.     )
                               )

**[PROPOSED] ORDER DENYING DEFENDANT DISTRICT OF**
**COLUMBIA'S MOTION FOR LEAVE TO LATE FILE REPLY**

Upon consideration of Defendant District of Columbia's Motion for Leave to Late File

Reply, the opposition thereto, any additional supporting briefs and materials submitted by the

parties, and the record herein, the Motion is hereby DENIED.

SO ORDERED, this _____ day of _____, 2008.

_____
Hon. Richard J. Leon
United States District Judge

Copies:

Bruce V. Spiva
  bspiva@spivahartnett.com
Kathleen R. Hartnett, D.C. Bar. No. 483250
  khartnett@spivahartnett.com
SPIVA & HARTNETT LLP
1776 Massachusetts Avenue, N.W.
Suite 600
Washington, D.C. 20036

Michelle H. Davy
  michelle.davy@dc.gov
OFFICE OF THE ATTORNEY GENERAL
  FOR THE DISTRICT OF COLUMBIA
441 4th Street, N.W, Room 6S085
Washington, D.C. 20007

Karen R. Turner
  karen.turner@hacdlaw.com
HAMILTON ALTMAN CANALE & DILLON, LLC
4600 East-West Highway, Suite 201
Bethesda, MD 20814

Larry D. McAfee
  lmcafee@gleason-law.com
GLEASON, FLYNN, EMIG & FOGLEMAN, CHARTERED
11 North Washington Street, Suite 400
Rockville, MD 20850

Robert W. Goodson
  robert.goodson@wilsonelser.com
Deidre L. Robokos
  deidre.robokos@wilsonelser.com
WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
1341 G Street, NW, Suite 500
Washington, D.C. 20005-3105

Thomas V. Monahan, Jr.
  tvm@gdldlaw.com
GOODELL, DEVRIES, LEECH & DANN, LLP
One South Street, Suite 2000
Baltimore, MD 21202