UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEXANDRIA MCGAUGHEY, | : |
| Plaintiff, | : |
| v. | : Case No. 1:07-CV-01498 (RJL) |
| DISTRICT OF COLUMBIA, *et al.*, | : |
| Defendants. | : |

**REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
ON BEHALF OF THE DISTRICT OF COLUMBIA**

Defendant District of Columbia ("District"), by and through undersigned counsel, hereby submits its Reply to Plaintiff's Opposition to Defendant's Motions for Judgment on the Pleadings.

**ARGUMENT**

The District is generally immune from tort liability for actions taken by its officers in the course of providing public services. *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 561 (D.C. Cir. 1993). In adjudging the District's motion, this Court is squarely asked to resolve whether a special relationship (*i.e.*, the lone exception to the public duty doctrine) has been pled based on facts alleged in Counts V, VI and VII of Plaintiff's Complaint. Both parties agree that a special relationship may only be found when two conditions are met:

1. a direct contact or continuing contact between the victim and the governmental agency or official;

— AND —

2. a justifiable reliance on the part of the victim.

"The first prong of the test requires that there be some form of privity between the agency and the victim that sets the victim apart from the general public. That is, the victim must become a reasonably foreseeable plaintiff. The contact must be a direct transaction with the person injured' or an arms-length relationship in which the city's agent is dealing directly, in some form, with the person injured. With regard to the second prong of the test, justifiable reliance means particular or special reliance. Liability is established if the agency specifically undertakes to protect a particular individual and the individual specifically relies upon the undertaking." *See Nealon v. District of Columbia,* 669 A2d 685, 693 (D.C.1995) This requirement of the existence of both prongs is conjunctive, such that Plaintiff's failure to plead either element defeats her negligence claims against the District. *Id.* ("Appellants must satisfy both prongs of the special relationship test in order to defeat the District's immunity from liability under the public duty doctrine.").

As stated in the District's motion, Plaintiff has failed to plead any facts to establish the existence of any special relationship between herself and the District because: (1) Plaintiff was of legal age when the events that underlie this lawsuit occurred; (2) she was never in police custody; (3) she never personally contacted police; (4) police never promised to provide her any special services; and (5) she has failed to allege any justifiable reliance based on her interaction with the police. *See* Complaint, generally; *see also* Docket # 41 at p. 6; and Pl's Opp. hereto.  By contrast, Plaintiff's discussion of these prongs is exceedingly brief, and fails to overcome her burden under the special relationship test.

Specifically, Plaintiff attempts to circumvent the public duty doctrine by arguing in a single paragraph that her Complaint allegations establish a special relationship, as follows:

> Plaintiff has pleaded a special relationship with the District based on her numerous contacts with District employees. *See* Complaint ¶¶ 46-65, 88-101. The Complaint makes clear that based on Plaintiff's direct and repeated interactions with District employees in the MPD's touted "Sex Assault Unit," Plaintiff relied on the District to take reasonable efforts to assist her as a sexual assault victim and to investigate her case, *e.g.*, *id.* ¶ 51, including to follow up with her after the traumatic odyssey at the hospitals, *id.* ¶ 52.

*See* Docket #43 at pp. 18 – 19.   The Court is not required to accept plaintiff's conclusory allegations, but these allegations must be juxtaposed with the well settled law as applied to facts alleged in the Complaint.[1]  *See Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1974 (2007).

## I. EVEN TWO CONTACTS BETWEEN PLAINTIFF AND MPD IS NOT ENOUGH TO ESTABLISH A SPECIAL RELATIONSHIP

The first prong of the special relationship test requires that there be some form of privity between the District and Alexandria McGaughey that sets her apart from the general public.  That is, any direct contact between Plaintiff and the District must be "different from the type of contact that the District has with the general public" *See Nealon,* 669 A2d at 693, citing *Powell v. District of Columbia,* 602 A.2d 1123, 1130 (D.C.1992).

Plaintiff argues that MPD's two visits to Howard University Hospital *automatically* create privity between herself and MPD.  *See* Pl.'s Opp. at pgs. 18 – 19.

---

[1]  For instance, ¶¶ 51 & 52 (cited in Plaintiff's lone "special relationship paragraph) chronicle Reagan McGaughey's fruitless efforts to communicate with Officers Green and Leveque and, otherwise, describe how Alexandria McGaughey's complaint had been "cleared" previously without a report.  This is not sufficient to establish a special relationship with this defendant.

This oversimplified analysis would allow any citizen from the general populace to manufacture privity by reporting their complaint to MPD more than once — themselves creating multiple contacts that could later be used to circumvent the public duty doctrine. This is not the law in this jurisdiction or elsewhere. While summoning police may be considered in determining whether there was "direct contact" between Plaintiff and the District, it cannot by itself create the requisite special relationship.

A special relationship does not arise simply because an individual requests — and a District employee agrees to render — public assistance. *See Morgan v. District of Columbia,* 468 A.2d 1306, 1313 (D.C. 1983) (*en banc*); *Warren,* 444 A.2d 1, 2 & 6 (D.C. 1981) (*en banc*). "Even a series of contacts over a period of time between a public agency and an injured or endangered person is not enough to establish a special relationship, absent some showing that the agency assumed a greater duty to that person than the duty owed to the public at large." *Wanzer v. District of Columbia*, 580 A.2d 127, 132 (D.C. 1990). Thus, the mere fact that MPD officers responded to Howard University Hospital and spoke with Plaintiff on two occasions, in itself, does not create a special relationship. For this reason alone, the Court should dismiss Plaintiff's Complaint against this defendant.

**II.    COUNTS V & VII MUST BE DISMISSED BECAUSE THEY REST UPON POLICE "INACTION" AND THEREBY FAIL THE "JUSTIFIABLE RELIANCE" PRONG**

Not only are Plaintiff's "direct contact" allegations deficient, the Complaint also fails to recite any express MPD assurances on which Plaintiff justifiably relied to her detriment. There are no Complaint allegations that any law enforcement officer expressly assured Ms. McGaughey or her family that police would guarantee compliance with MPD General Orders, prepare a sexual assault incident report, collect sex kit

evidence, bar or authorize hospital officials from administering a sex kit, or conduct any further investigation. *See* Complaint, generally. No amount of discovery can cure this defect.

Courts adhere to a strict interpretation of the justifiable reliance prong of the special relationship test. *Taylor v. District of Columbia*, 776 A.2d 1208, 1218 (D.C. 2001). Justifiable reliance means particular or special reliance. *Morgan v. District of Columbia,* 468 A.2d 1306, 1315 (D.C.1983) (en banc); *see also Platt v. District of Columbia,* 467 A.2d 149, 151 (D.C.1983). More than general reliance is needed, and Plaintiff must either act or fail to act in such a way as to show particular reliance upon the actions of MPD officers. "Liability is established [if the agency has] specifically undertaken to protect a particular individual and the individual has specifically relied upon the undertaking." *Id.*

Plaintiff suggests that Count V "hinges on the District's inadequate policies and practices regarding the handling of sexual assault victims." *See* Pl.'s Opp. at pg. 14. Yet, the District has cited well settled authority establishing that MPD policies and practices are not actionable in negligence. See District's Motion, at Docket # 41 at pgs. 9 – 10. Plaintiff cites no countervailing authority and, therefore, cedes this point. *See* LCvR 7(b); *see also Jackson v. Snow*, 2006 WL 212136 (D.D.C. 2006) (Plaintiff concedes argument through failure to respond); *M.R.S. Enterprise v. Sheet Metal Workers Int'l Ass'n*, 429 F.Supp2d 72 (D.D.C. 2006) (same). Thus, all claims of practice/policy violations set forth in Count V of Plaintiff's Complaint must be dismissed.

Further, by its own plain terms, Count V of the Complaint is based on what Plaintiff describes as a "chain of failures" — including the District's: "(1) failing to hire,

train and supervise MPD officers properly qualified to document, assess, and investigate criminal activity; (2) failing to hire, train and supervise MPD officers to investigate alleged rape cases in a proper manner, including with respect to the gathering and preservation of time-sensitive evidence, and the facilitation of (as opposed to interference with) the administration of sexual assault forensic exams; and (3) failing to hire, train and supervise MPD officers to treat rape victims with sensitivity and respect." See Complaint at ¶¶ 91 and 93. Likewise, Count VII of the Complaint exhorts the Court to find that Plaintiff's sexual assault complaint, standing alone, **requires** MPD to treat her complaint as a sexual assault, prepare a sexual assault report, and conduct further investigation designed to identify her purported assailant.

In *Nichol v. District Metropolitan Police Department*, 444 A2d 1 (D.C. 1981)(en banc), a case quite similar to the instant case, a man was assaulted in his car and the police came to his assistance.. At the behest of the police officer, the victim ceased efforts to obtain the identity of his attackers. Because the officer failed to obtain the information, the victim was unable to perfect a lawsuit against his assailants. Plaintiff's subsequent lawsuit against the District of Columbia for failure to file a crime report was dismissed by the trial court for failure to state a claim upon which relief could be granted. In affirming the trial court's ruling, the Court of Appeals held that the police officer's failure to prepare an accident report does not constitute the degree of "affirmative negligence" necessary to create either a "special relationship" with the crime victim or detrimental "reliance". *Id; see also Auto World Inc. v. District of Columbia*, 627 A.2d 11 (D.C. 1993)(no duty to provide motor vehicle registration information); *Hines v. District of Columbia,* 580 A.2d 133, 136 (D.C. 1990) (the District has no duty to provide public

services to any particular person). Plaintiff has failed to cite any countervailing statutory or jurisprudential authority. By contrast, the District has cited authority clearly demonstrating that the mere fact of Plaintiff's quibble with the categorization/substance of MPD's report is legally insignificant, and does not circumvent the public duty doctrine. *See* District's Motion, at Docket # 41 at pgs. 10 – 11. Under the public duty doctrine, MPD has no special duty to prepare or provide an incident report to an injured party — much less any duty for which it can be held liable for its alleged failure to prepare or provide the "sexual assault" incident report demanded herein by Plaintiff.

Therefore, Counts V and VII must be dismissed because, as demonstrated by the above-cited cases, MPD owed no duty to conduct any further investigation designed to provide Plaintiff with the identity of her alleged assailant. Moreover, the mere fact that Plaintiff presented a sexual assault complaint did not require MPD to endorse those allegations. These officers were not stripped of all discretion to reach a conclusion that contravenes Plaintiff's complaint.

### III.   COUNT VI CLAIMS OF "AFFIRMATIVE NEGLIGENCE" MUST ALSO BE REJECTED

In any negligence action, a plaintiff bears the burden of proof on the following three issues in order to prevail:

1. the applicable standard of care;
2. a deviation from that standard by the defendant; and
3. a causal relationship between the deviation and the plaintiff's injury.

*Meek v. Shepard*, 484 A.2d 579, 581 (D.C. 1984); *District of Columbia v. Davis*, 386 A.2d 1195, 1200 (D.C. 1978). The existence of a legal duty under negligence is ordinarily a question of law for the court. *See Zhou v. Jennifer mall Restaurant,* 534 A.2d 1268, 1274 (D.C. 1987); *In re Sealed Case,* 67 F.3d 956, 968 (1995). Plaintiff avers

that "MPD personnel inserted themselves into the decision making over her medical treatment and interfered with [her] attempt to have medical forensic evidence collected by the hospitals."  See Pl.'s Opp. at pg. 10.  As support for her argument that the District is subject to liability based on this alleged misconduct, she cites to deposition testimony of an MPD officer who testified that when he was asked by a nurse whether or not they needed to do a kit, he told her that Detective Wheeler said there would be no sexual assault kit done.  See Pl.'s Opp. at 11.  This alleged misconduct does not create any duty owed to Plaintiff by MPD, or show the breach of any duty.  There simply was no duty by MPD to authorize the sexual assault kit.  Moreover, there was no duty owed to Plaintiff to assist her with the collection of forensic evidence.  Absent a duty of care owed to Plaintiff, her negligent interference with medical care and treatment claim must be dismissed.

Although Plaintiff tries to establish a special relationship with MPD officers in order to create a duty of care, she must show that public agents committed acts of "affirmative negligence" that "actually and directly worsen[ed] [her] condition." *Johnson v. District of Columbia,* 580 A.2d 140, 142 (D.C.1990). This "affirmative negligence" concept can be incorporated within the "justifiable reliance" framework on the theory that "a victim may arguably 'rely' on an emergency crew not to worsen h [is] condition." *Joy v. Bell Helicopter Textron, Inc.,* 999 F.2d 549, 561 (D.C. Cir. 1993).

In *Joy, supra,* the Court was presented with an unresolved and critically important question of D.C. law regarding the public duty doctrine's reach — "the precise question whether interference by the police with civilian rescue efforts may constitute the type of

affirmative negligence that can create a special relationship, and thereby give rise to liability on the part of the District." 999 F.2d at 561. The Court explained that:

> [A] special relationship may arise from affirmative negligence only when the alleged actions constitute "ordinary negligence"— that is, actions "for which anyone ... would be held liable" — such as "negligent handling of an attack dog, negligent operation of a motor vehicle, or the negligent use of a firearm." By contrast, the court found that a special relationship does not arise from "allegations of negligence [that] derive solely from defendants' status as police employees and from plaintiffs' contention that defendants failed to do what reasonably prudent police officers would have done in similar circumstances." According to the court, the present case involved the latter type of allegation.

*Id*. at 562 (internal citations omitted). Yet, because this was an issue of first impression of "extreme public importance in which the District of Columbia has a substantial interest," the Court certified the question to the D.C. Court of Appeals. Thus, in *Allison Gas Turbine Division of General Motors Corp. v. District of Columbia*, 642 A.2d 841 (D.C. 1994), the Court of Appeals held that no special relationship is created, even where police affirmatively interfere with civilian rescue efforts, and the District is not liable based on the public duty doctrine. *See also Joy v. Bell Helicopter Textron, Inc*., 40 F.3d 475 (D.C. Cir. 1994) (per curiam). Similarly, this Court must reject Plaintiff's claims of active negligence in this case because the allegations of Count VI are insufficient to overcome the bar presented by the public duty doctrine.

Finally, Plaintiff urges the Court to spare Count VI from dismissal and argues that *Johnson v. District of Columbia,* 580 A.2d 140 (D.C. 1990), stands for the proposition that the public duty doctrine does not apply where "affirmative acts" of public officials "worsened" the plaintiff's condition. See Pl.'s Opp. at p. 15. This argument must also fail. In *Johnson*, a heart attack victim called the District's 911 number and requested emergency medical care. Although the dispatcher assured the caller that an ambulance

would be sent, none was dispatched until two subsequent calls and thirty minutes had elapsed. When the late arriving crew finally appeared, the treatment that was rendered allegedly worsened the patient's condition. In reversing the trial judge's grant of summary judgment, the appellate court held that the mere calling of the ambulance, even when coupled with the dispatcher's promise that help was on the way, neither created a "special relationship" nor gave rise to "reliance" on the part of the heart attack victim. The court held, however, that <u>allegations that treatment rendered on the scene actually worsened plaintiff's condition did take the claim beyond the ambit of the public duty doctrine</u>. The court reasoned that such "affirmative negligence" created both a "special relationship" (i.e., medical provider and patient) and justifiable "reliance" (i.e., reliance on the emergency crew not to worsen her condition). The *Johnson* holding turned on the fact that emergency responders engaged in affirmative undertakings (i.e., they rendered aid) to protect the victim. This case is unlike *Johnson* because Plaintiff's primary complaint is that MPD officers failed to act and, as stated above, the interference/ obstruction claim of affirmative negligence does not bring Plaintiff within the special relationship exception. The MPD officers did not worsen Plaintiff's medical condition or her ability to locate her alleged assailant. In fact, there are no allegations as to how her medical condition was worsened. Moreover, based on the allegations in the Complaint, Plaintiff did not have sufficient information to provide to MPD to find her alleged assailant anyway. See Amended Complaint, generally. Therefore, Count VI must be dismissed.

## CONCLUSION

The first hurdle in any negligence action is establishing a duty.  Under the public duty doctrine, recovery from a municipal corporation is possible only when a plaintiff can show that the duty breached was owed to her individually, rather than to the public in general.  Plaintiff's arguments to extend the law and find a special relationship under the public duty doctrine, given the facts here, are unpersuasive.  While Plaintiff argues that further discovery will allow her to overcome her burden, this argument is hollow since there simply was no duty owed to plaintiff different than to the general public.  Thus, for the foregoing reasons, the District of Columbia respectfully requests that this Court grant its motion for judgment on the pleadings.

Respectfully Submitted,

PETER J. NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

_____/s/_____
PATRICIA A. JONES [428132]
Chief, General Litigation Sec. IV

____/s/ Dwayne C. Jefferson_____
DWAYNE C. JEFFERSON [980813]
Assistant Attorney General
One Judiciary Square
441 4th St., N.W., 6th Floor South
Washington, D.C. 20001
(202) 724-6649; (202) 727-6295; (202) 741-0554 fax
dwayne.jefferson@dc.gov