UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ALEXANDRIA MCGAUGHEY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 1:07-CV-01498 (RJL) |
| | : | |
| DISTRICT OF COLUMBIA, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**THE DISTRICT OF COLUMBIA'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S (SECOND) MOTION TO MODIFY
SCHEDULING ORDER AND INCREASE NUMBER OF DEPOSITIONS PLAINTIFF MAY TAKE**

Defendant District of Columbia, by and through undersigned counsel, herein

submits its Opposition to Plaintiff's (Second) Motion to Modify Scheduling Order and

Increase Number of Depositions Plaintiff May Take. [Docket # 47]. Contrary to

Plaintiff's claims, this is not a complex case, particularly as it relates to Plaintiff's claims

against this Defendant. See Complaint at ¶¶ 88-101. Reopening fact discovery as to the

District would be futile because Plaintiff has failed to plead, and cannot otherwise

establish, the existence of any duty owed to Plaintiff by the District or any special

relationship between herself and the District. [Docket # 41 & # 44]. No amount of

discovery can cure this defect. The District's resources have already been unnecessarily

stretched in this case. The discovery to date has been onerous and costly to this

Defendant, and is simply irrelevant since the District owed no legal duty to Plaintiff.

**PROCEDURAL POSTURE**

On August 21, 2007, Plaintiff filed this action alleging that the District of

Columbia negligently hired, trained and supervised certain Metropolitan Police

Department ("MPD") officers who, negligently failed to investigate her sexual assault allegations and, otherwise, negligently led hospital personnel to believe that police approval was required before certain sexual assault-related forensic evidence could be collected. The basic premise of Plaintiff's argument is that had MPD officers properly investigated her sexual assault allegations (i.e., by administering the sex kit she requested and interviewing other persons involved), then she would not have been deprived of the opportunity to see her assailant brought to justice. *See, e.g.* Complaint at ¶¶ 97 & 101.

On or about March 27, 2008, Plaintiff filed her (First) Motion for Modification of Scheduling Order and Increase in Number of Depositions Plaintiff May Take. [Docket # 31]. By Minute Order dated April 16, 2008, the Court granted in part and denied in part Plaintiff's motion. All scheduling order deadlines were extended by two months, and Plaintiff was allowed to take 20 depositions.

On June 16, 2008 (the pleading amendment deadline under the April 16th Scheduling Order as amended), the District moved for judgment on the pleadings [Docket #41] because responding to reports of — and investigating — criminal activity are duties that law enforcement owe to the public as a whole, not to any specific individual, absent special circumstances. The District's motion is now ripe for consideration.

Plaintiff now moves to amend the scheduling order for 90 days and for the Court to permit her to take an additional 15-16 depositions. As set forth below, the Court should deny Plaintiff's motion.

**ARGUMENT**

Fed. R. Civ. P. 26 allows the Court to govern the course of discovery, and to alter the scheduling order at its discretion if it deems it appropriate to do so. Plaintiff has failed to set forth sufficient grounds to have this Court alter the discovery in this case as it relates to the District.

This case is not a complex case. In fact, Plaintiff's negligence claims against the District are quite simple. Plaintiff avers that she was sexually assaulted, not while on government property, or by an individual employed or otherwise associated with the District. Plaintiff was not transported to the hospital by government personnel, nor was she taken to a District-owned hospital or treated by doctors employed by or otherwise associated with the District. *See* Complaint, generally. Instead, Plaintiff seeks to hold the District liable because it allegedly failed to properly investigate her sexual assault claims, and negligently trained and/or supervised its employees on how to investigate those claims.

This case presents a clear legal issue to the Court. That is, whether the District owed Plaintiff a duty of care, more simply put, did plaintiff have a special relationship with the District such that she was owed a duty of care that the District breached. The simple answer to that question is no — the District owed Plaintiff no duty of care as she did not have a special relationship with the District or any of its employees. Despite the clear legal issue in this case, the District has worked with Plaintiff to respond to her irrelevant and overly burdensome fact discovery requests. The District has voluntarily produced the following non-party witnesses for deposition, despite the fact that they were never served with a subpoena for deposition:

| | |
|---|---|
| April 14 | Patrol Officer Ginette Leveque |
| May 8 | Patrol Officer Tandreia Green |
| May 14 | Patrol Officer Michael Minor |
| *July 9* | *Detective Ronald Reid* |
| July 14 | Sergeant George Maradiaga |

Plaintiff used virtually the entire July 9th deposition to question Sergeant Reid about a document she apparently obtained from an American University web-page.  *See* American University Web-Page (attached as Exhibit "A").  The web-page recites data regarding training materials Sergeant Reid prepared — including first responder materials presented at the Police Academy and a videotape entitled "*First Responder Video for Sexual Assault*."  Plaintiff had the web-site information prior to the scheduled deposition, and never communicated with the District about the web-page to see whether the District was in possession of the documents identified in the web-page.   Plaintiff claims that Sergeant Reid's deposition was also terminated because of two "tardily produced" MPD policies.  [Docket # 47 at pp. 7 – 8].  The "allegedly untimely"production of the policies was an insufficient basis to terminate the deposition, particularly since the policies do not set forth any duty specifically owed to Plaintiff.

On July 11, 2008, the District filed a Motion for Protective Order to preclude further depositions in this matter.  However, because the depositions of Wandella Fields and Sergeant Maradiaga were both scheduled for July 14, 2008, the District did not seek to preclude those depositions.  Due to an emergency that arose on the morning of the scheduled deposition of Officer Fields, she was not deposed.  The District withdrew its motion for protective order despite the fact that it believed the scheduled depositions would not lead to relevant evidence and was an undue burden on the District, essentially because it determined that since discovery was scheduled to close on July 16, 2008, it

was more efficient to proceed with discovery until the close date.

Plaintiff avers that she not only wants to depose 15-16 additional witnesses, but to follow-up on alleged deficient discovery responses produced by the Defendants, including the District. [Docket # 47, generally]. The reasons for denying any further District-related discovery are straightforward. The Motion for Judgment on the Pleadings advances a purely legal challenge to Plaintiff's Complaint. The District's motion raises the public duty defense in arguing that Plaintiff's Complaint fails to establish the duty element of her negligence claim — *i.e.*, that law enforcement officials were duty-bound to protect Plaintiff by concluding (after investigation) that her complaint did in fact constitute a sexual assault. [Docket #41 and #44]. More importantly, Plaintiff failed to establish any special relationship with the District which would create any duty owed to her by the District. The Court can resolve the pending motion by reference to the parties' legal arguments filed in their legal briefs. There are no relevant facts to establish; therefore no discovery is necessary. *See Persons v. Runyon*, 1999 WL 104427, *3 (10th Cir. 1999) (unpublished) (holding that discovery is inappropriate where legal issues determine the outcome of the lawsuit). Moreover, as is clearly shown by Plaintiff in her proffer as to what the District's potential additional deponents' knowledge is about her claims, their testimony will not show the existence of any special relationship between Plaintiff and the District, and will not establish any specific duty owed to Plaintiff by the District.

### Detective Arnita Briggs (District)

Plaintiff needs to depose Detective Briggs to determine the extent of her knowledge of Plaintiff's case, including whether she actually made the statement attributed to her and what she meant by any such statement. Plaintiff also needs to determine the source of Detective Briggs'

information about the case and the basis for any decision she made regarding Plaintiff's case, including interference with GWUH's or HUH's provision of a sexual assault medical forensic examination or other medical treatment. Plaintiff also intends to determine the extent of Detective Briggs' training in handling of sexual assault cases, as well as to determine her understanding and knowledge of MPD policies regarding the handling of sexual assault cases and related matters.

**Officer Tracy Hughes (District)**

Plaintiff needs to depose Officer Hughes to determine the extent of her involvement and knowledge in this case, and, if appropriate, her knowledge and training in handling of sexual assault complaints and the application of such training to this case.

**Rule 30(b)(6) Deposition of MPD (District)**

Plaintiff needs to depose MPD to determine its official policies and practices concerning sexual assault complaints, including with respect to the following topics: (1) responding to sexual assault victims; (2) investigating alleged sexual assaults; (3) MPD's role with respect to whether or not a sexual assault victim receives a sexual assault medical forensic exam; (4) police reporting requirements for sexual assault complaints; (5) discretion of police personnel to deviate from written policies; (6) founding and unfounding of complaints of sexual assaults; (7) handling of cases of alleged drug-facilitated sexual assaults; (8) training of police personnel concerning handling sexual assault complaints and victims; and (9) department record-keeping of complaints of sexual assaults and policies concerning handling of sexual assault cases.

[Docket # 47 at pp. 9-10].

The scope of documentary and testimonial discovery in this case has been daunting.  On July 29, 2008, after the close of discovery, Plaintiff forwarded a 10-page letter to the District claiming that its discovery responses were deficient, and threatens to seek discovery sanctions against the District if it fails to cure.  As is shown by the letter, Plaintiff's request are overly burdensome, irrelevant, and responses thereto will not show the existence of any duty owed to Plaintiff, nor will they show any special relationship between Plaintiff and the District.  *See* Plaintiff's July 29, 2008 Letter to the District

(attached as Exhibit "B").   For example, Plaintiff seeks, "an index of <u>all</u> MPD General Orders, Special Orders and any other types of policies" — whether related to her claims or not.  *See* Exhibit "B" at p.4 (original emphasis).  Plaintiff seeks documents related to the David Rosenbaum investigation because the OIG Report allegedly bears directly on this case.  *See* Exhibit "B" at pp. 8 – 9.  The OIG Report will not show that the District owed Plaintiff any duty of care.  Plaintiff seeks FEMS documents related to the general handling of sexual assault victims.  *See* Exhibit "B" at p. 8.  Plaintiff seeks critical data regarding forensic medical examinations conducted in the District in recent years.  *See* Exhibit "B" at p. 9.   While Plaintiff claims to need additional time to have the District cure its purportedly defective discovery responses, the discovery sought is not relevant, and will not bear on any legal issue set forth in the District's pending dispositive motion.

While Plaintiff claims that she seeks to resolve the parties' discovery dispute in good faith; yet, this claim is contradicted by the fact that Plaintiff's letter — ostensibly designed to cure alleged discovery deficiencies —was sent to the District nearly two weeks after the discovery closed.  In fact, it violates the spirit and meaning of the discovery rules.  The District tendered its discovery responses on or about April 25, 2008.  If Plaintiff sought to resolve the parties' discovery dispute, the letter should have been sent to the District prior to the close of discovery, so as to give the District sufficient time during discovery to cure any alleged discovery deficiencies.  While the District has a continuing obligation to supplement discovery whenever appropriate, Plaintiff's letter to the District is untimely and forms no basis upon which to enlarge discovery for 90 days, or any other additional time period for that matter.

The District requests that the Court deny Plaintiff's Motion to Enlarge Discovery

particularly as it relates to this Defendant.

CONCLUSION

Plaintiff has not presented persuasive arguments to support her request for relief from the July 16th discovery deadline.  The Court has given Plaintiff more than ample opportunity to complete discovery.  All parties (not only Plaintiff) are deserving of the Court's justice.  Under all the circumstances herein, this Court should refuse to reopen discovery, and enter an Order dismissing this case against the District based on the public duty doctrine..

Respectfully Submitted,

PETER J. NICKLES
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

_____/s/_____
PATRICIA A. JONES [428132]
Chief, General Litigation Sec. IV

_____Dwayne C. Jefferson_____
DWAYNE C. JEFFERSON [980813]
Assistant Attorney General
One Judiciary Square
441 4th St., N.W., 6th Floor South
Washington, D.C. 20001
(202) 724-6649 p | (202) 741-0554 f
dwayne.jefferson@dc.gov

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ALEXANDRIA MCGAUGHEY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 1:07-CV-01498 (RJL) |
| | : | |
| DISTRICT OF COLUMBIA, *et al.* | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## **ORDER**

UPON CONSIDERATION of the Plaintiff's (Second) Motion to Modify Scheduling Order and Increase Number of Depositions, opposition thereto, and the entire record in this matter, it is this __ day of _____, 2008, hereby:

ORDERED that the Motion to Modify Scheduling Order and Increase Number of Depositions is **DENIED**.

_____
**HON. RICHARD J. LEON**
   United States District Court for the District of Columbia

Exhibit A

**Ronald K. Reid** is an 18 year sworn law enforcement veteran currently serving for the Metropolitan Police Department in Washington, D.C. He serves as a detective in the Sex Offender Registry Unit. In addition he served as an adjunct faculty member at the Maurice T. Turner Institute of Police Science in Washington, D.C. as well as a training consultant with the National Institute of Corrections (NIC).

Prior to serving in the Sex Offender Registry, Detective Reid spent 10 years with the Sex Offense Branch, where he was the lead or assisting investigator in hundreds of cases involving the sexual abuse of adults and children. These are some of the most difficult cases handled by MPD. They often involve traumatized victims and witnesses who have been sexually abused by family members or friends. Other cases have involved serial rapists and child molesters who would continue to terrorize the community until they were stopped. In particular, Detective Reid has developed an expertise in gathering and assessing forensic and medical evidence in sexual abuse cases. Detective Reid has extensive training in interviewing techniques for child victims and has worked closely with the Child Advocacy Center, which is the entry point for many child sexual abuse victims. He also has significant training in the interrogation of suspects and has obtained confessions in many sexual abuse and violent crime cases.

While working as a detective for the Metropolitan Police Department, Detective Reid has provided training in the field of Sexual Abuse to the D.C. Rape Crisis Center, D.C. Public Health Service, D.C. Public Schools, Community groups, and various organizations throughout the Metropolitan area. He has also lectured for various Law enforcement agencies in the field of Adult and Child Sexual abuse, Crime scene Management, and Interviewing Victims and Offenders. He also consulted in the organizing of the (80 hours) Sexual Assault Training Program at the Institute of Police Science in Washington, D.C. for detectives. Furthermore, he has designed and instructs a 4 hour First responder's course at the Maurice T Turner Institute of Police Science in Washington, D.C. In 2004, Detective Reid worked with Police Advocates to co-produce a training video designed for law enforcement first responders, titled *First Responder Video for Sexual Assault*. In 2003, detective Reid received his instructor certification from The Maryland Police and Correctional Training Commission.

Moreover, Detective Reid has represented Metropolitan Police Department on many multidisciplinary working groups and task forces to ensure that the police department was appropriately represented and that their policies were made an integral part of the group's efforts. As an example, he represented MPD in developing the Sexual Assault Nurse Examiners (SANE) Program at Howard University Hospital, which provides a safe, forensically sound medical facility to examine sexual assault victims and gather evidence. Also, he participated on the Derek McGinty Talk Radio show in 1997 discussing sexual assaults in the District of Columbia. Not only has he become an efficient trainer, he has received numerous commendations and awards for his expertise in this field. Detective Reid is proud to be the recipient of the Department of Justice Award for his work with the victim of an extremely violent rapist who was brought to justice as well as an award from the Department of Justice for his work with victims of sexual assault.

He and his wife, Grisel, have been married for ten years and have one child, Naomi, a dog Max and a big fluffy cat, Flash.

PROFESSIONAL MEMBER AFFILIATIONS: American Professional Society on the Abuse of Children.

http://www.wcl.american.edu/nic/bios.cfm

Exhibit B

# SPIVA & HARTNETT LLP

1776 MASSACHUSETTS AVENUE, N.W., SUITE 600
WASHINGTON, D.C. 20036
(202) 785-0601   (202) 785-0697 (FAX)

KATHLEEN R. HARTNETT
KHARTNETT@SPIVAHARTNETT.COM

July 29, 2008

**BY EMAIL AND U.S. MAIL**

Dwayne C. Jefferson, Esq.
OFFICE OF THE ATTORNEY GENERAL
  OF THE DISTRICT OF COLUMBIA
One Judiciary Square
441 4th Street, N.W., 6th Floor
Washington, D.C. 20001

> **Re:** _**McGaughey v. District of Columbia, et al.**_, **No. 1:07-cv-01498 (RJL)**

Dear Dwayne:

Pursuant to our oral requests at Sergeant Reid's July 9, 2008 deposition, as well as other requests made throughout the discovery process, including Plaintiff's First Set of Requests for Production of Documents to the District of Columbia ("Requests") (served March 12, 2008), we request that you immediately provide documents that Plaintiff has long requested in this matter, as specified below and in Plaintiff's Requests. In addition, as detailed below, we request clarification and complete responses concerning several of the District's Responses to Plaintiff's First Set of Production Requests ("Responses"), which you served on April 25, 2008. We are available to meet and confer with you regarding these matters any day this week, or any day, Monday through Thursday, of next week.

**MPD Policies and Procedures**

In the District's initial disclosures (served February 1, 2008), the District indicated that it may rely on certain Metropolitan Police Department ("MPD") policies and procedures as support for its defenses in this action. _See_ District's Initial Disclosures at 4. In addition to naming three particular policies and procedures, the District also disclosed the "[i]nternal, unpublished guidelines governing the Metropolitan Police Department Sex Assault Unit." _Id._ Those internal guidelines have never been produced, despite Plaintiff's repeated requests, including by my emails to you dated April 11 and 29, 2008. We hereby request that you produce those internal, unpublished guidelines immediately, or state in writing that such guidelines do not exist and explain why they were listed in the District's initial disclosures.

# SPIVA & HARTNETT LLP

Dwayne C. Jefferson, Esq.
July 29, 2008
Page 2 of 10

In addition to the District's Rule 26(a)(1) obligations, Plaintiff's Requests specifically sought MPD policies and procedures related to the issues in this case:

- Request No. 8 sought "[a]ll documents pertaining to the MPD policies, procedures, practices, and/or criteria for classifying a police report as a Miscellaneous Report."

- Request No. 9 sought "[a]ll documents pertaining to the MPD policies, procedures, practices, and/or criteria for classifying a police report as an alleged sexual assault."[1]

- Request No. 10 sought "[a]ll documents embodying, referring or relating to the policies, procedures and/or practices of the MPD's Sex Assault Unit, including but not limited to any General Orders (including but not limited to G.O. 304.6); Special Orders; and internal, unpublished guidelines (such as those referenced in the District's initial disclosures at page 4)."[2]

- Request No. 11 sought "[a]ll documents embodying, referring or relating to the policies, procedures and/or practices of the MPD's Victim Specialists Unit, including but not limited to any General Orders (including but not limited to G.O. 304.6); Special Orders; and internal, unpublished guidelines (such as those referenced in the District's initial disclosures at page 4)."

- Request No. 12 sought "[a]ll documents (whether specific to sexual assault cases or generally applicable, including to sexual assault cases) embodying, referring or relating to the policies, procedures and/or practices of the MPD regarding MPD employees' investigation and reporting of a potential victim's complaint of an alleged sexual assault."

- Request No. 13 sought "[a]ll documents embodying, referring or relating to the policies, procedures, practices and/or role of the MPD, including but not limited to

---

[1] The District's Responses claim that "it is unclear as to what is meant by the question." This Request is not unclear, as the depositions and documents in this case have made clear a distinction between police reports of sexual assaults and police reports of other crimes. To the extent this Request requires any additional clarification, Plaintiff seeks documents, as described, related to classifying a police report or the underlying incident as an alleged sexual assault.

[2] You have objected to this Request by stating that it is "not related to any specific time period." As with all Requests related to policies, procedures and/or practices, Plaintiff seeks documents related to the time of the incident in this case (December 9-10, 2006); all prior policies referenced by policies in effect as of December 2006; and documents related to all subsequent policies, procedures and/or practices (which bear on the MPD's capabilities with respect to sexual assault victims, as well as the MPD's defenses in this case).

# Spiva & Hartnett llp

Dwayne C. Jefferson, Esq.
July 29, 2008
Page 3 of 10

the Sex Assault Unit and the Victim Specialists Unit, regarding the administration of and/or payment for forensic sexual assault examinations in the District of Columbia."

- Request No. 14 sought "[a]ll documents embodying, referring or relating to the policies, procedures and/or practices of any District agency or entity other than the MPD, including the Office of Victim Services, regarding the administration of and/or payment for forensic sexual assault examinations in the District of Columbia."

- Request No. 15 sought "[a]ll documents related to the District's, the MPD's, or any District entity's or employee's role, if any, in 'authorizing' forensic sexual assault examinations in the District of Columbia."[3]

- Request No. 16 sought "[a]ll documents related to the assertion that hospitals in the District, including Howard University Hospital or George Washington University Hospital, may not provide treatment for sexual assault (other than a forensic sexual assault examination) absent the 'authorization' of the District, the MPD, or some other District entity or employee."[4]

- Request No. 26 sought "[a]ll documents embodying, referring or relating to the policies, procedures and/or practices of the District's Sexual Assault Response Team ("SART"), and/or the District's involvement in and/or relationship to SART."

- Request No. 27 sought "[a]ll documents embodying, referring or relating to the policies, procedures and/or practices of the Sexual Assault Nurse Examiner ("SANE") Program at Howard University Hospital, and/or the District's involvement in and/or relationship to the SANE program."

---

[3] The District's Response to this Request stated that "this defendant does not have documents that are responsive at this time" and that "the answer will be supplemented as necessary." Obviously this Request pertains to an issue central to this case – *i.e.*, the District's role, if any, in the so-called "authorization" of sexual assault medical forensic examinations. Please search for and produce responsive documents, and if none exist, please state so in writing, and explain the extent of the search conducted.

[4] The District has objected to this Request as vague because it supposedly relates to assertions "made by persons other than Defendant." This Request is not vague: it seeks documents related to the assertion (*i.e.*, the proposition) set forth in the Request, and it does not attribute the assertion at issue to anyone, including the District. Please search for and produce any responsive documents, and if the District has no responsive documents, please state so in writing, and explain the extent of the search conducted.

# SPIVA & HARTNETT LLP

Dwayne C. Jefferson, Esq.
July 29, 2008
Page 4 of 10

- Request No. 28 sought "[a]ll documents embodying, referring or relating to the policies, procedures and/or practices of the D.C. Rape Crisis Center and/or the District's involvement in and/or relationship to the D.C. Rape Crisis Center."

Despite these numerous and specific Requests, prior to Sergeant Reid's deposition on July 9, 2008, the District had produced only two MPD policy and procedure documents that appeared to be related to the MPD's handling of sexual assault cases: "General Order 304-06: Adult Sexual Assault Investigations" (dated December 22, 2006) and "Special Order SO-07: Handling of Sexual Abuse Cases" (dated April 11, 2000). As we previously pointed out to you months ago, the first of these documents does not appear to have been in effect as of December 9-10, 2008 (the dates at issue in this case), and thus we specifically requested the policy in effect as of those dates. See, e.g., Green Dep. at 183-84 (May 8, 2008). We also requested all documents referred to as rescinded by the December 22, 2006 version of General Order 304-06. See id. Furthermore, according to Sergeant Reid (although there are indications in the document to the contrary), Special Order SO-07 "was designed around juveniles," Reid Dep. at 125, and thus may not be fully (or at all) applicable to this case.

As you are aware, at the lunch break of Sergeant Reid's deposition, you provided two critical MPD policies and procedures that had not been disclosed previously to Plaintiff, despite their obviously central relevance to this case. These documents are entitled "General Order 304-6: Investigation of Sex Crimes" (dated November 14, 1973), and "Special Order SO-01-06: Sexual Assault Nurse Examiners Program (SANE)" (dated April 2, 2001). Both of these key documents appear to have been in effect as of December 9-10, 2006, which, as you know, are the dates during which Plaintiff was allegedly sexually assaulted and sought the assistance of MPD. Sergeant Reid, despite being one of the supervisors of the sexual assault unit, see http://mpdc.dc.gov/mpdc/cwp/view,a,1232,q,556783,mpdcNav_GID,523,mpdcNav,|31417|.asp, claimed to be unable to testify as to whether any other MPD policies or practices exist with respect to sexual assault cases. See Reid Dep. at 130.

In light of this troubling discovery history, during which the District has failed to provide – let alone in a timely manner – key policies and procedures at issue in this case – we request immediate production of all documents related to the District's policies and procedures concerning the issues in this case, as delineated by the Requests reprinted above, as well as Plaintiff's other Requests. The District's initial disclosures made clear that the General and Special Orders are available electronically, and thus determining whether responsive materials exist and providing those materials to Plaintiff would appear to entail the most minimal of burdens. Moreover, it was the District's obligation to perform a comprehensive, good-faith inquiry prior to responding to Plaintiff's Requests.

In addition, and particularly in light of the issues to date, we request that you expeditiously provide us with a complete index of all General Orders, Special Orders, and any other types of policies created by the MPD, so that we are able to determine if other relevant policies exist but have not been produced.

# Spiva & Hartnett llp

Dwayne C. Jefferson, Esq.
July 29, 2008
Page 5 of 10

Finally, in addition to the above requests, we specifically request documents related to any changes in the MPD's policies and practices related to alleged sexual assaults that postdate December 9-10, 2006. Such documents are clearly relevant to this case, as they will illuminate by contrast the MPD's practice as of December 2006 and they also will demonstrate the capabilities of the MPD. Specifically, we request documents related to the claimed changes in SANE/SART policy in the District of Columbia as of January 1, 2008, as described by Mary Pinn in her deposition, *see, e.g.*, Pinn Dep. at 54-56. Ms. Pinn specifically referenced a working group run by the D.C. Mayor's office, and attended by MPD representatives, and we specifically request all documents related to that working group and its formation and implementation of any policies related to sexual assault victims. Furthermore, we specifically request all documents related to MPD policies regarding the preparation of police reports in sexual assault cases, and particularly all documents related to any supposed change in policy since December 2006 whereby all sexual assault cases receive written reports.

## **MPD Training Materials and Documents**

At Sergeant Reid's July 9, 2008 deposition, we reiterated our request for MPD training documents related to sexual assault cases – including the many such documents referred to by Sergeant Reid during his deposition. You stated that you had not performed "any kind of inquiry about documents, training documents in particular," and thus you were "not going to even begin to be in a position to respond to a request of that sort." Reid Dep. at 66-67.

The Federal Rules require that discovery responses be based upon a reasonable inquiry. *See, e.g.*, Fed. R. Civ. P. 26(g)(1). Our Requests specifically sought documents related to training by and of MPD personnel concerning sexual assault cases. The District's April 25, 2008 Reponses, which you signed, did not indicate that an inquiry into such documents had not been made, but instead stated that the Responses were "accurate to the best of Defendant's knowledge as of this date." Responses at 3. Moreover, you purported to produce training documents responsive to our Requests, *see* Responses to Request Nos. 17-19, but these documents do not pertain to the topics at issue. Indeed, Sergeant Reid confirmed at his deposition that, as an MPD employee with significant experience training in the area of sexual assault, he was unfamiliar with the "training" documents produced by the District to date.

Now that it appears that the District's Responses to Plaintiff's Requests regarding training materials were not based upon any "any kind of inquiry" whatsoever, let alone a reasonable inquiry, we request that you conduct a reasonable inquiry into all of Plaintiff's Requests and provide responsive documents. We specifically request that you produce all responsive documents regarding training of or by MPD personnel regarding the handling of sexual assault cases, which are responsive to the following Requests, among others:

- Request No. 17 sought "[a]ll documents referring or relating to the training of MPD employees, including but not limited to employees of the Sex Assault Unit and the

# Spiva & Hartnett llp

Dwayne C. Jefferson, Esq.
July 29, 2008
Page 6 of 10

Victim Specialists Unit, in handling alleged sexual assault complaints and/or alleged sexual assault victims."

- Request No. 18 sought "[a]ll documents referring or relating to the training of MPD employees, including but not limited to employees of the Sex Assault Unit and the Victim Specialists Unit, in handling potential victims of date rape drugs or drug- or alcohol-induced sexual assault."

- Request No. 19 sought "[a]ll documents referring or relating to the training of MPD employees, including but not limited to employees of the Sex Assault Unit and the Victim Specialists Unit, in handling potential crime victims, including victims of alleged sexual assault, who appear to be intoxicated."

- Request No. 25 sought "[a]ll documents relied upon as a basis for the statements made on the MPD Sex Assault Unit's webpage (http://mpdc.dc.gov/mpdc/cwp/view, a,1232,q,556783,mpdcNav_GID,1523,mpdcNav,|31417|.asp 17), including but not limited to the following statements: '[t]he members of the Sex Assault Unit are specially trained in the investigation of sexual assault'; 'the detectives recognize and understand the sensitive, personal and invasive nature of sexual assault crimes'; and '[s]exual assault crimes are investigated with respect for the rights of the accused and the victim.'"  (emphasis added)

- Request No. 31 sought "[a]ll documents embodying, referring or relating to training regarding sexual assault cases, forensic sexual assault examinations, and/or date rape drugs, received by Officer Michael Minor, Officer Ginette Leveque, Officer Tandreia Green, Detective Dana Spriggs, Detective Elgin Wheeler, Detective Kevin Rice, Sergeant Ronald Reid, Detective Marshall, Detective Arnita Briggs, Officer Fields, Officer Tracy Hughes, Sergeant Hayes, Victim Specialist Esther Thomas, and/or any other MPD employee who had any contact from December 9, 2006 through the present with Plaintiff, Ms. Evangeline Allen, Ms. Raegen McGaughey, Ms. Sade Diké, Ms. Kerston Reid, or Ms. Amanda Lockett."

In addition, other Requests (including those described above concerning MPD's policies and procedures) also cover documents related to trainings apparently given by Sergeant Reid (and perhaps by others in the MPD's sex assault unit or outside consultants) concerning the MPD's policies and procedures for responding to and investigating sexual assault complaints. Such documents may include PowerPoints, agendas, handouts, or any other documents used by Sergeant Reid and others in preparing and conducting such trainings.[5]

---

[5] Sergeant Reid's deposition transcript describes many of the trainings at issue, but our Requests are not limited to trainings involving Sergeant Reid.  With respect to Sergeant Reid, the training documents at issue include PowerPoints that he has used for his many presentations regarding sexual assault policies and procedures (including at Howard University and George Washington

# SPIVA & HARTNETT LLP

Dwayne C. Jefferson, Esq.
July 29, 2008
Page 7 of 10

At Sergeant Reid's July 9 deposition, we requested that you immediately produce all documents related to trainings described by Sergeant Reid (both those that he has attended and those that he has administered), as well as all trainings that he has been involved with but was unable to specifically recollect. You have not responded since that time and have not produced any additional documents. We request that you immediately search for and produce all documents responsive to Plaintiff's Requests regarding MPD training, as described in our Requests and as we have subsequently requested. Regardless of the disposition of our pending motion to extend the discovery period, it is the District's obligation to supply complete responses to our pending Requests. To the extent that you have retrieved some but not all responsive documents, we request a rolling production. If responsive documents exist but you are claiming privilege, please inform us in writing and supply a privilege log.

## Notes of MPD Personnel

We have repeatedly requested all documents, including email and notes, of MPD personnel pertaining to Plaintiff and/or the events described in the Complaint. *See, e.g.*, Request No. 1. With respect to notes of MPD personnel, to date, you have produced pages from Officer Minor's field notebook but no other such documentation. We reiterate our request that you search for and produce all such documents, which are responsive to several of our Requests. In addition, we request that you produce the field notebooks for the week time period surrounding December 9-10, 2006 for all MPD personnel involved in Plaintiff's case, including all MPD personnel whom Plaintiff has deposed and/or whose depositions Plaintiff has noticed.

## Privilege Log

Many of your Responses to our Requests indicate objections based on claims of privilege, but you have not produced a privilege log. For some of these Responses, you also have referred as part of your response to certain documents that you have produced, leaving it unclear whether you have referenced <u>all</u> responsive documents, or if there are other responsive documents that exist, but over which you are claiming privilege. Moreover, we may object to several of the "privileges" that you claim in paragraph (b) of your General Objections, and thus we are entitled to know which, if any, of these privileges you are claiming. Please indicate in writing whether there are any responsive documents over which you are claiming privilege, and if so, please supply a privilege log so that we are able to assess your claims of privilege.

---

University); all materials that he has received at trainings pertaining to the topics at issue in Plaintiff's Requests, both inside and outside of MPD, including those conducted by outside consultants; all documents related to the 80-hour Sexual Assault Training Program and the 4-hour First Responders' course at the D.C. police academy (both discussed during Sergeant Reid's deposition); the First Responder Video for Sexual Assault co-produced by Sergeant Reid as well as all related documents; and all other documents responsive to our Requests.

# SPIVA & HARTNETT LLP

Dwayne C. Jefferson, Esq.
July 29, 2008
Page 8 of 10

## Specific Requests and Responses

In addition to the specific Requests and Responses discussed above, we also have the following requests for clarification or further production with respect to certain Responses.

**Request No. 1.** Your Response to Request No. 1, which sought documents specifically related to Plaintiff's case, cited only two documents: Incident Report No. 167399 and Investigative Report of Citizens Complaint. Subsequently, you produced (at the beginning of Officer Minor's deposition) a portion of Officer Minor's field notebook, but no other responsive documents. Furthermore, several of your other Responses incorporate by reference your Response to Request No. 1. Accordingly, we request that you clarify whether you have produced all responsive documents to Request No. 1 and to the Requests to which you have responded by citing your Response to Request No. 1. If you have additional responsive documents but are claiming privilege, please provide a privilege log. If you have additional responsive documents but are not producing such documents based on an objection, please inform us in writing so that we can address any objection. If you have no additional responsive documents to Request No. 1 or to any of the Requests to which you have responded by citing your Response to Request No. 1, please state so in writing.

**Request No. 20.** You have objected to our request for documents from D.C. Fire and Emergency and Medical Services ("FEMS") based on relevance, because FEMS was "not called upon t[o] investigate the underlying sexual assault allegation" in this case. This objection is misplaced. Plaintiff does not request FEMS documents related to the handling of her case in particular, but rather seeks FEMS training and other documents that reflect the policies, procedures and practices in the District of Columbia for handling alleged sexual assault victims, victims of date-rape drugs, and intoxicated individuals. Such documents are directly relevant to the issues in this case, which include some Defendants' apparent position that only certain hospitals in the District handle sexual assault patients as a matter of course, and that the District must authorize certain treatment and procedures of sexual assault victims at hospitals in the District. Please search for and produce documents responsive to this Request, and if you withhold any documents under a claim of privilege, please produce a privilege log.

**Request No. 21.** You have objected to our request for documents related to actions taken in response to the Rosenbaum investigation based on claims of relevance and privilege. Such documents are plainly reasonably calculated to lead to the discovery of admissible evidence and may not be withheld on the basis of a relevance objection. As we already have explained in our recent letter to counsel for the Howard Defendants, the cited OIG report concerning the Rosenbaum matter bears directly on many of the issues in this case. With respect to the MPD in particular, the OIG report concluded that the MPD officers "did not conduct an adequate preliminary investigation in accordance with MPD General Orders, and did not take adequate steps to determine if a crime had been committed." OIG Rosenbaum Report at 5 (June 2006). Moreover, the OIG concluded that MPD personnel "did not complete a report on the incident

# Spiva & Hartnett llp

Dwayne C. Jefferson, Esq.
July 29, 2008
Page 9 of 10

pursuant to the relevant MPD General Order." *Id.* The OIG recommended that the MPD "immediately review and reissue the pertinent General Orders relating to officer responsibilities at emergency incidents," as well as implement and revise systems related to report completion and tracking. *See id.* These findings and recommendations were described in further detail elsewhere in the OIG's report. *See id.* at 36-37.

As you are aware, Plaintiff's interaction with the MPD occurred approximately a year after the Rosenbaum incident and approximately six months after the OIG's report, which noted MPD's failings and recommended that certain actions be taken. There are striking similarities between MPD's failings in the Rosenbaum matter and the failings alleged by Plaintiff here: the failure of MPD to perform an adequate preliminary investigation, the failure of MPD to determine whether a crime had been committed, and the failure of MPD to prepare proper reports concerning the incident at issue. Thus, the MPD's response to the Rosenbaum matter and the OIG report is relevant to the District's alleged negligence concerning its formulation and implementation of MPD policies on topics related to Plaintiff's case, as well as training with respect to such policies.

Accordingly, please search for and produce documents responsive to this Request. If responsive documents exist but you are claiming privilege, please produce a privilege log.

**Request Nos. 22-24.** These Requests seek critical data regarding sexual assault forensic medical examinations conducted in the District in recent years, as well as the funding of such exams. The requested documents bear directly on issues central to this case, such as the District's role in authorizing and funding such exams, and the number of examinations that have been conducted relative to the number of complaints of sexual assault that have been made. You have objected based on privilege and invasion of privacy, but have not provided a privilege log so that Plaintiff can assess your claims of privilege. You also have not explained why minimal redaction could not alleviate any privacy issue. Finally, for two of these Requests, you have stated that you will produce non-privileged responsive documents, but that none were as yet available. Please search for and produce responsive documents, and if there are responsive documents over which you are claiming privilege, please supply a privilege log.

**Request No. 25.** Plaintiff seeks documents relied upon for certain assertions made by the MPD on its sex assault unit webpage – assertions with clear relevance to the issues in this case, contrary to your unexplained relevance objection. You have cited only one document in response. Please confirm that the cited document is the only document relied upon by MPD as a basis for the assertions at issue on the sex assault unit webpage. If other responsive documents exist, please produce them immediately. If you are claiming privilege over any responsive documents (which is not clear from your Response), please supply a privilege log.

**Request Nos. 29-30.** These Requests seek documents related to any complaints received by MPD related to either (1) cases like Plaintiff's case, involving alleged sexual assault and/or date rape drugs, or (2) cases handled by MPD personnel who were involved in handling

# SPIVA & HARTNETT LLP

Dwayne C. Jefferson, Esq.
July 29, 2008
Page 10 of 10

Plaintiff's case. Such documents are of obvious relevance to this matter. With respect to complaints regarding the handling of other sexual assault cases (Request No. 29), Plaintiff is entitled to know whether the MPD has previously been alerted to the failings alleged in the Complaint and what, if any, action MPD took to address any such failings. Such information is relevant to the MPD's negligence with respect to the foreseeable and preventable nature of the failings alleged by Plaintiff, as well as to the MPD's formulation and implementation of its policies and procedures, and its training on such policies. With respect to complaints regarding the handling of other cases by personnel involved in Plaintiff's case (Request No. 30), Plaintiff is entitled to know the disciplinary history of personnel who handled her case, in order to determine whether those personnel were properly supervised and trained by MPD, and whether the failings alleged in the Complaint were foreseeable and preventable. Accordingly, please search for and produce all responsive documents. If you are asserting a claim of privilege (which appears to be the case), please produce redacted versions of the documents at issue as well as a privilege log indicating the basis for your claim of privilege.

**Request No. 32.** You have stated that you have not determined what documents the District will use to support its defenses in this action, other than the two documents identified in your Response to Request No. 1. However, this Request does not seek the documents that you will use to support your defenses, but the documents that you may use to support your defenses. This Request is precisely the disclosure required by Federal Rule of Civil Procedure 26(a)(1)(A): "a copy – or description by category and location – of all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses unless the use would be solely for impeachment." Plaintiff's Requests make clear that she is not seeking privileged or otherwise protected documents, but do require that a privilege log be supplied so that Plaintiff can assess any claim of privilege. Please clarify whether there are additional documents responsive to this Request, and if you are asserting a claim of privilege over any such documents, please produce a privilege log.

We look forward to your prompt attention to these matters, and we hope to resolve these issues without court intervention. Please do not hesitate to contact me if you have any questions or would like to discuss further.

Sincerely yours,

Kathleen R. Hartnett

cc:    Peter J. Nickles, Interim Attorney General (by email only)
       George C. Valentine, Deputy Attorney General, Civil Litigation Division (by email only)
       Patricia A. Jones, Chief, General Litigation Section IV (by email only)
       All Other Defense Counsel of Record (by email only)