IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEXANDRIA McGAUGHEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:07-cv-01498 (RJL) |
| v. ) | |
| ) | |
| DISTRICT OF COLUMBIA, *et al.*, ) | |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFF'S REPLY TO THE HOWARD DEFENDANTS' AND
THE DISTRICT OF COLUMBIA'S OPPOSITIONS TO PLAINTIFF'S
MOTION TO MODIFY SCHEDULING ORDER AND INCREASE
NUMBER OF DEPOSITIONS PLAINTIFF MAY TAKE**

Plaintiff respectfully submits this Reply to the Oppositions of Defendants Howard University, Howard University d/b/a Howard University Hospital ("HUH"), Wendie Williams, M.D., and Dawit Yohannes, M.D. (collectively, "the Howard Defendants"), and of Defendant the District of Columbia ("the District"), to Plaintiff's Motion to Modify Scheduling Order and Increase Number of Depositions Plaintiff May Take. Plaintiff's Motion was filed on July 14, 2008 and oppositions were due on July 28, 2008. On July 29, 2008, Plaintiff replied to Defendant Lang's opposition that had been filed on July 17, 2008. The District's and the Howard Defendants' oppositions were filed on July 30, 2008. Defendants District Hospital Partners, L.P. d/b/a George Washington University Hospital ("GWUH") and The George Washington University ("GWU") have not filed opposition briefs.

As explained below, the oppositions of the District and the Howard Defendants should be disregarded because they are untimely and not properly filed. Although these oppositions were filed two days late, they are not accompanied by motions for leave to late file, as the Federal

1

Rules require. *See* Fed. R. Civ. P. 6(b). Furthermore, as authorized by the Local Rules, Plaintiff's Motion should be treated as conceded with respect to all Defendants other than Dr. Lang, because those Defendants have failed to file, or failed to timely file, opposition briefs. *See* LCvR 7(b). In her July 29, 2008 Reply to Dr. Lang's Opposition, Plaintiff alerted all Defendants of the July 28 deadline and the untimeliness of any forthcoming oppositions. Yet neither the District nor the Howard Defendants have moved for leave to late file, or have even acknowledged the untimeliness of their filings.

Furthermore, Plaintiff's Motion should be granted on the merits because it seeks a reasonable extension of the deadlines in this matter – as the Howard Defendants (who initially opposed this relief) now concede. Plaintiff also should be permitted the additional depositions she seeks because all are central to this matter and expressly authorized by the Federal Rules. The Howard Defendants and the District fail to respond to Plaintiff's detailed explanations of need for these depositions, mainly of District and Howard witnesses. Instead, these Defendants rely on rhetoric and exaggeration, as well as inaccurate statements concerning the discovery to date. In particular, the District simply ignores that its own tactics have obstructed Plaintiff's depositions to date; that the District's witnesses to date have professed ignorance about key topics in this case despite their direct involvement with Plaintiff's complaint of sexual assault; and that the depositions of District witnesses will be required regardless whether the District's Motion for Judgment on the Pleadings is granted (which it should not be, as Plaintiff argues elsewhere). Thus, although these Defendants' oppositions should be disregarded, they also provide no reason for the Court to reject Plaintiff's detailed showing and requested relief.

I.  **ALL DEFENDANTS OTHER THAN DR. LANG HAVE FAILED TO SUBMIT TIMELY OR PROPERLY FILED OPPOSITIONS TO PLAINTIFF'S MOTION, WHICH THEREFORE SHOULD BE TREATED AS CONCEDED.**

On July 14, 2008, Plaintiff filed her Motion requesting a ninety-day extension of all deadlines in this matter (other than for amending pleadings and joining parties), and requesting leave of court to take 16 additional depositions beyond those previously authorized. Pursuant to Local Rule 7(b), Defendants were required to submit oppositions to that Motion "[w]ithin 11 days of the date of service or at such other time as the Court may direct." The Court has not directed any other time for the filing of oppositions. Because the prescribed period is not less than 11 days, intervening weekends and holidays are counted in calculating the deadline. *See* Fed. R. Civ. P. 6(a)(2). However, because Plaintiff filed and served her Motion via the Court's ECF system, "3 days are added after the period would otherwise expire under Rule 6(a)." Fed. R. Civ. P. 6(d). Accordingly, oppositions to Plaintiff's Motion were due on Monday, July 28, 2008. *See* 2005 Advisory Committee Notes to Rule 6 (explaining that "[i]ntermediate Saturdays, Sundays, and legal holidays are included in counting these added three days," and thus where, as here, "[t]he period prescribed expires on a Friday, the three added days are Saturday, Sunday, and Monday, which is the third and final day to act").

On July 17, 2008, after Dr. Lang submitted his pre-deadline opposition to Plaintiff's Motion, the District filed a "Notice of Intent to Oppose Motion," expressly citing Federal Rule 6, but incorrectly stating that the District's opposition "is not due until July 30, 2008, and the District shall file its opposition on or before that date."[1] Plaintiff replied to Dr. Lang's

---

[1] Plaintiff did not check the District's calculation until she prepared her reply to Dr. Lang's opposition. At that point, she realized the error in the District's calculation and alerted the District and all other Defendants of that error. It was of course the Defendants' responsibility to accurately calculate the due date for their oppositions, and, once aware of their error, to file the required motions for leave to late file and establish good cause and excusable neglect.

3

opposition on July 29, 2008, and therein informed all Defendants of the July 28, 2008 deadline. *See* Reply to Lang Opp. at 1. Plaintiff also alerted all Defendants that she intended to argue that oppositions submitted after the July 28, 2008 deadline were untimely. *See id.* Despite that Plaintiff expressly brought the July 28, 2008 deadline to the attention of the District and the Howard Defendants prior to the filing of these Defendants' oppositions, the District and the Howard Defendants simply have ignored the untimeliness of their filings and have not submitted motions for leave to late file their opposition briefs.

      A.    **The Oppositions Of The Howard Defendants And The District Must Be Stricken And Disregarded Pursuant To Federal Rule 6(b) Because They Are Untimely And Unaccompanied By A Motion For Leave To Late File Establishing Excusable Neglect.**

Because the oppositions of the District and the Howard Defendants were not timely filed, and because none of these Defendants sought leave of Court for their late filings, those oppositions are not properly filed and should be stricken from the record and disregarded. *See* Fed. R. Civ. P. 6(b).[2] As the Federal Rules make clear, where, as here, a party wishes to submit a filing after the expiration of the relevant time period, that party must move for leave of court to make that filing and must establish good cause. *See* Fed. R. Civ. P. 6(b)(1). Moreover, where, as here, a party has not moved to extend the time for filing prior to the expiration of the period, that party must make a showing of excusable neglect. *See* Fed. R. Civ. P. 6(b)(1)(B).

As noted, Defendants' oppositions were due on July 28, 2008. The District and the Howard Defendants did not file their oppositions until July 30, 2008. Plaintiff expressly advised

---

[2] *See also* Case Management Order (Aug. 24, 2007), ¶ 6 ("[c]ounsel seeking an extension of time must file a written motion and a proposed order," including "the specific ground(s) for the motion" and "a statement of opposing counsel's position on the motion"; "[f]ailure to comply with the Local Civil Rules or this Order may result in rejection of the request").

all Defendants of the due date prior to the attempted filing of these oppositions.[3] Yet neither the District nor the Howard Defendants have made the required motion for leave to late file, and none of these Defendants has made a showing of good cause or excusable neglect. Because their submissions were not properly filed with the Court, they must be rejected and not considered.

The D.C. Circuit, following Supreme Court precedent, has ruled conclusively that under Rule 6(b), submissions such as those of the Howard Defendants and the District must be stricken. In *Smith v. District of Columbia*, 430 F.3d 450 (D.C. Cir. 2005), the Court of Appeals explained that the Supreme Court has "emphasized that post-deadline extensions may be granted only 'for cause shown' and 'upon motion'" under Federal Rule 6(b). *Id.* at 456 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 896 (1990)). Moreover, as the Court of Appeals has recognized, "[a]ny post-deadline motion 'must contain a high degree of formality and precision, putting the opposing party on notice that a motion is at issue and that he therefore ought to respond.'" *Smith*, 430 F.3d at 456 (quoting *Lujan*, 497 U.S. at 896 n.5). Thus, in *Smith*, where "the District concede[d] that it never moved for an extension of the deadline," the Court of Appeals ruled that there was "no basis on which to exercise . . . discretion" and refused to consider the District's submission. *Smith*, 430 F.3d at 457; *accord, e.g.*, *D.L. v. District of Columbia*, 450 F. Supp. 2d 11, 19-20 (D.D.C. 2006) (holding that because "Defendants did not request leave to file their Supplemental Reply nor did they request an extension of time within which to file this Supplemental Reply," the "Supplemental Reply will be struck as untimely and filed without leave of the Court"). *Smith* and *Lujan* are controlling here, as is Rule 6(b), and all

---

[3] In addition, Plaintiff previously placed all Defendants in this matter on express notice of the operation of Rule 6 due to the District's previous, unsuccessful attempt at late filing a reply brief. *See generally* Plaintiff's Opposition to Defendant District of Columbia's Motion for Leave to Late File Reply (filed Jan. 28, 2008).

of these authorities require that the untimely oppositions of the District and the Howard Defendants be stricken and disregarded.

### B. Pursuant To Local Rule 7(b), Plaintiff's Motion Should Be Treated As Conceded With Respect To All Defendants Other Than Doctor Lang.

As noted, the oppositions of the Howard Defendants and the District are untimely and not properly filed. In addition, Defendants GWUH and GWU have not filed oppositions, despite representing to undersigned counsel that they do not consent to the relief sought by Plaintiff. Thus, pursuant to Local Civil Rule 7(b), the Court should "treat the motion as conceded" with respect to all of Defendants other than Dr. Lang, because "a memorandum of points and authorities in opposition to the motion" was "not filed within the prescribed time." LCvR 7(b). Under the settled application of this Local Rule, a motion should be treated as conceded where, as here, a party fails to respond, fails to respond in a timely manner, and/or fails to move for leave to late file for good cause and excusable neglect.[4]

As Plaintiff explained in her prior reply filing, Dr. Lang's arguments made in his timely filed opposition lack merit. Thus, the Court should grant her Motion and the requested relief.

---

[4] As the Court of Appeals and this Court have repeatedly recognized, under the Local Rules, "[a] party who fails to file a timely response 'is deemed to have waived his opposition to the [motion].'" *Fox v. American Airlines, Inc.*, No. 02-cv-2069, 2003 U.S. Dist. LEXIS 13606, at *4 (D.D.C. Aug. 5, 2003) (quoting *Weil v. Seltzer*, 873 F.2d 1453, 1459 (D.C. Cir. 1989)). Affirming this Court's decision in *Fox*, the Court of Appeals emphasized that it will not disturb this Court's exercise of its discretion to treat motions as conceded where, as here, a "straightforward application of Local Rule 7(b)" is at issue. *Fox v. American Airlines, Inc.*, 389 F.3d 1291, 1294-95 (D.C. Cir. 2004); *see, e.g.*, *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997) (explaining that "we we have yet to find that a district court's enforcement of this rule constituted an abuse of discretion"); *Twelve John Does v. District of Columbia*, 117 F.3d 571, 577 (D.C. Cir. 1997) ("Where the district court relies on the absence of a response as a basis for treating the motion as conceded, we honor its enforcement of the rule.").

## II. AS THE HOWARD DEFENDANTS CONCEDE, THE DEADLINES IN THIS CASE SHOULD BE EXTENDED BY 90 DAYS, AS PROPOSED BY PLAINTIFF.

Prior to Plaintiff's filing, the Howard Defendants opposed the relief she seeks. Now, the Howard Defendants concede that they "do not oppose extending discovery to complete factual discovery" Howard Opp. at 2. They also now apparently agree to all of "the new deadlines proposed by Plaintiff." *Id.* at 2 n.1. This shift in position is not surprising, in light of the fact that the Howard Defendants have been improperly sending out third-party subpoenas both before and *after* the close of fact discovery with return dates that postdate the present close of the discovery. The Howard Defendants' submission confirms the arguments that Plaintiff has made for the necessity of the reasonable extensions she had proposed.[5] Plaintiff is not engaged in a "fishing expedition," *id.* at 1, 2 – as the Howard Defendants assert without support (and needlessly, in light of their consent). Plaintiff also disagrees that "all parties have acted diligently in seeking to complete factual discovery," *id.* at 2, as set forth in Plaintiff's Motion.[6] Regardless, Plaintiff appreciates that the Howard Defendants also recognize the need for the requested 90-day extension of deadlines.

For its part, the District's continued opposition to the reasonable extension sought by Plaintiff ignores the reality of the discovery to date in this case, and, in particular, the District's leading role in obstructing Plaintiff's orderly and efficient pursuit of written discovery and depositions. *See* Mot. at 2-3, 4-5, 6-8, 14. Plaintiff will not belabor the point here, but reiterates

---

[5] Indeed, the Howard Defendants recognize one of the key difficulties that Plaintiff has faced to date: "the number of defense attorney's offices involved and scheduling difficulties due to both the professional and family obligations of all the attorneys involved." Howard Opp. at 2 n.1.

[6] Plaintiff is willing to schedule Ms. Lockett's deposition, a topic raised by the Howard Defendants months ago, but which they never noticed or pursued further until their Opposition Brief. *Cf.* Howard Opp. at 2. Ms. Lockett is a third-party to the litigation and Plaintiff has agreed to seek her voluntary appearance at a deposition as a courtesy to the Howard Defendants, as Plaintiff did in producing three other third-party witnesses without subpoena.

the basic facts: the District failed to disclose key policy documents until days before the current discovery cut-off of July 16 (during the lunch break at the deposition of Sergeant Reid); the District admittedly has failed to search for or produce other key documents in this matter (as elaborated in undersigned counsel's July 29, 2008 Letter to the District, which the District appended to its opposition as Exhibit B);[7] the District has failed to produce witnesses during the discovery period whom it agreed to produce and who fell within the number of depositions already authorized by the Court; the witnesses that the District has produced to date (nearly all of whom were directly involved with Plaintiff and her case) disclaim critical knowledge about the workings of the Metropolitan Police Department's ("MPD's") Sexual Assault Unit or other key issues related to the claims against the District in this case; and the District has distracted and imposed on Plaintiff's counsel by filing in bad faith a meritless motion for protective order, which it withdrew only after Plaintiff's lengthy and costly efforts to oppose that filing. *See generally* Mot. and Exhibits. The District fails entirely to confront the fact that its own actions have partly necessitated the extension sought by Plaintiff.[8]

---

[7] We note that this letter does not, as the District claims, "threaten[] to seek discovery sanctions against the District if it fails to cure." District Opp. at 6. Plaintiff's letter memorialized a variety of discovery issues (including those recently uncovered based on the depositions and newly disclosed documents) and requested to meet and confer with the District at its convenience. The District has not responded to that letter.

[8] The District incorrectly suggests that Plaintiff did not properly subpoena District witnesses and thus that the District was indulging Plaintiff by producing its witnesses "despite that fact that they were never served with a subpoena for deposition." District Opp. at 3. This claim is yet another example of the District's continuing lack of candor and shifting positions. Throughout this litigation, all institutional Defendants have produced their employees without requiring subpoenas, and the Plaintiff similarly has made her non-party witnesses available even though, unlike Defendants, she had no employer/employee relationship with these witnesses. Prior to its surprise Motion for Protective Order, the District agreed to the depositions of its employees (which it mutually scheduled with Plaintiff's counsel), accepted the Notices of Deposition provided by Plaintiff, and not once suggested that subpoenas would be necessary. On July 14, 2008, at the deposition cancelled by the District based on last-minute witness unavailability,

8

Moreover, the District attempts to distract from its own inadequate search and response to Plaintiff's written discovery requests by incorrectly suggesting that it was somehow <u>Plaintiff's</u> fault that the District admittedly has failed in its obligations to search for and produce all responsive documents. *E.g.*, District Opp. at 7. For instance, the District claims that because, in the course of Plaintiff's preparation for Sergeant Reid's July 9, 2008 deposition (days before the close of discovery), she discovered a website listing substantial sexual assault training materials created by Sergeant Reid but never disclosed by the District, <u>Plaintiff</u> has exhibited a lack of diligence. *Id.* at 4. The District then chides Plaintiff for memorializing this and other discovery issues (many of which had been raised previously with counsel for the District orally or in writing) in a July 29, 2008 letter to the District. *Id.* at 6-7. As explained further in that July 29, 2008 letter, under the Federal Rules, it is the District's responsibility to make complete discovery responses based on a reasonable inquiry and to supplement those responses as appropriate. *See, e.g.*, Fed. R. Civ. P. 26(g)(1). Yet, at the late date of Sergeant Reid's July 9, 2008 deposition, counsel for the District admitted on the record that he had not performed "any kind of inquiry about documents, training documents in particular" and thus was "not going to even begin to be in a position to respond to a request of that sort." Reid Dep. at 66-67. Although Plaintiff believes that a reasonable extension should be granted due to the scope of this matter and her diligence in prosecuting this action to date, regardless of some Defendants' discovery lapses, the District's own discovery failures further highlight the need for this relief.

---

Plaintiff's counsel expressly inquired whether the District was changing its position and requiring subpoenas, in light of the Motion for Protective Order; no clarification was provided. Fields Dep. at 7-8. Later that day, at another deposition of a District witness, Plaintiff's counsel noted the District's apparent new position that "it's going to require subpoenas for its witnesses" and the District's counsel stated clearly "[t]hat's not our position." Maradiaga Dep. at 8. Now, the District apparently once again claims that subpoenas will be needed for its own employees – further increasing the cost and burden of accomplishing discovery in an efficient manner.

Contrary to the District's claims, the discovery sought by Plaintiff in this case is not unusually "daunting" for a matter of this scope, District Opp. at 6. With respect to the District, this case involves the interactions of many MPD personnel with Plaintiff and her case, as well as fundamental questions of MPD policy and training, and thus necessarily entails a not insubstantial amount of document discovery and depositions. Notably, however, the District has produced fewer than 300 pages of documents; has produced absolutely no MPD training materials regarding sexual assault, despite testimony that many such trainings have taken place (and as Plaintiff has discovered through independent investigation); and has produced many MPD witnesses that, despite their direct involvement in Plaintiff's allegations of sexual assault, claim that they do not have an understanding of critical details of the MPD's practices, including with respect to sexual assault victims. In short, discovery by any objective measure has not been onerous for the District or any other Defendant. If anything, discovery in this case is daunting for Plaintiff because of some Defendants' repeated lack of cooperation.[9]

Finally, the District repeats its claim that it should be immune from all further discovery in this matter because of its Motion for Judgment on the Pleadings, in which the District argues that it should be dismissed from this lawsuit under the public duty doctrine. *E.g.*, District Opp. at 5. As Plaintiff has argued elsewhere, the District is not entitled to Judgment on the Pleadings.

---

[9] The District cites, out of context, a few of undersigned counsel's specific requests in the July 29, 2008 letter in an attempt to create a false picture of overbreadth and burden. *See* District Opp. at 6-7. As the July 29, 2008 letter makes clear, the District has utterly failed in its obligation to search for and produce relevant documents, thereby necessitating the detailed requests reiterated by Plaintiff in that letter. The District also complains that Plaintiff's requests are not tailored to its claimed "public duty" defense. *See id.* at 7 (claiming that the requests "will not bear on any legal issue set forth in the District's pending dispositive motion"). Of course, Plaintiff is permitted to seek information from the District that is relevant to her claims regardless whether it is relevant to the District's claimed defenses. But nearly all of the information sought by Plaintiff is relevant to both her claims and to the District's claimed public duty defense.

*See* Plaintiff's Opposition to District's Motion for Judgment on the Pleadings (filed June 30, 2008). Indeed, the limited discovery to date makes clearer than ever that (1) the public duty doctrine does not apply to the circumstances of this case because the Plaintiff is not alleging a failure to protect, but (2) even if it does, that the "special relationship" exception applies because the MPD inserts itself into the medical treatment and care of sexual assault victims in the District of Columbia who present for treatment at hospitals, like Plaintiff. *See id.* Both in its Motion for Judgment on the Pleadings and in its opposition to Plaintiff's Motion, the District fails to confront these two central points, choosing instead to mischaracterize Plaintiff's claims in an attempt to shoehorn this case within the public duty doctrine.

Moreover, the District's claim that its Motion for Judgment on the Pleadings forecloses any additional discovery is based on two fundamentally flawed premises. First, the District incorrectly claims that additional factfinding is irrelevant to the "public duty" issue. District Opp. at 5. To the contrary, as discovery to date indicates, and as Plaintiff expects to show further once the District produces additional documents and witnesses with greater knowledge about the MPD's policies and practices as well as the District's negligent treatment of Plaintiff in this matter, the factual record will be critical to Plaintiff's showing that, in this case and as a matter of policy and practice, the District regularly inserts itself into sexual assault victims' care and treatment, thereby establishing the "special relationship" exception to the public duty doctrine for Plaintiff. Second, and even more fundamentally, the District incorrectly claims that if its Motion for Judgment on the Pleadings is granted, it will be immune from the discovery sought by Plaintiff. *See id.* As Plaintiff has explained to the District's counsel, the evidence sought from the District and MPD personnel will be needed in this case regardless whether the District is a party – particularly in light of the other Defendants' apparent claim that they have no

independent duty to administer sexual assault medical forensic examinations to victims like Plaintiff absent "authorization" by the District or the MPD. *See, e.g.*, June 20, 2008 Letter from B. Spiva to D. Jefferson (attached to Plaintiff's Motion as part of Exhibit A). Accordingly, the District's Motion for Judgment on the Pleadings provides no reason for the Court to deny the 90-day extension of discovery sought by Plaintiff here.

### III.   THE COURT SHOULD ALLOW THE ADDITIONAL CRITICAL DEPOSITIONS SOUGHT BY PLAINTIFF, NONE OF WHICH DEFENDANTS HAVE SHOWN TO BE IRRELEVANT OR UNNECESSARY.

Both the Howard Defendants and the District oppose Plaintiffs' request for additional depositions. Yet their oppositions, in addition to being untimely, fail to rebut the specific and detailed showing of need set forth in Plaintiff's Motion. They also ignore the reality of this case, which encompasses five institutional defendants and three individual defendants, and in which dozens of witnesses have been listed by Defendants as possessing discoverable information, many having directly interacted with Plaintiff in the course of her attempts to seek care and treatment for sexual assault on December 9-10, 2006. As the Federal Rules expressly contemplate, where, as here, a party requires more than 10 depositions to fairly prepare her case, such a request should be granted.

Federal Rule 30(a)(2) requires parties to seek leave of court if they seek to depose more than 10 witnesses per side and provides that "the court must grant leave to the extent consistent with Rule 26(b)(2)." Fed. R. Civ. P. 30(a)(2).[10] In turn, Federal Rule 26(b)(2) sets forth several

---

[10] The Rule also permits parties to stipulate to additional depositions, *see* Fed. R. Civ. P. 30(a)(2), but Defendants have repeatedly refused to so stipulate. *E.g.*, Howard Opp. at 3 ("Counsel did not acquiesce to Plaintiff's desire to depose triple the number of witnesses the court rules permits then and Counsel does not now."). Defendants' hard line, particularly in light of the scope of this case and the number of witnesses and parties at issue, is contrary to "[t]he best approach," "suggested by the Advisory Committee," that "[t]he parties should stipulate to all the depositions reasonably needed to prepare the case." MOORE'S FEDERAL PRACTICE

12

factors to be considered, including whether the discovery is duplicative, whether the party had opportunity to obtain the discovery elsewhere, the parties' respective resources, "the importance of the issues at stake in the action," and "the importance of the discovery in resolving the issues." Fed. R. 26(b)(2)(C). "Under these principles, it is unlikely that a court would refuse to grant a party leave to take enough depositions to explore the claims of each party simply because numerous parties have been joined in a case." MOORE'S FEDERAL PRACTICE § 30.05[1][b]. Indeed, "[w]hile the plaintiff is the master of its complaint, the plaintiff cannot control the number of parties that do it harm." *Id.* Here, unfortunately, numerous individuals and institutions allegedly caused Plaintiff actionable harm based on the events of December 9-10, 2006. Had Plaintiff sued each of the eight Defendants individually, she would have been allotted 10 depositions for each action – far more than the total of 36 depositions that she now seeks, which is a modest number, given the number of Defendants, witnesses and claims at issue here.

As Plaintiff alerted the Court at the initial status hearing in this case, because of the number of witnesses and Defendants at issue in this case, she expected that she would need considerably more than the 10 depositions allotted per side. In her previous motion to obtain additional depositions, Plaintiff sought thirty-two depositions total. On April 16, 2008, the Court allowed the Plaintiff a total of 20 depositions, but also contemplated that Plaintiff could renew her request for additional depositions "if necessary, at a later date." Plaintiff diligently attempted to complete all 20 depositions prior to the present discovery cut-off, as set forth in her Motion. In addition to seeking additional time to complete those depositions, Plaintiff now seeks leave to depose 16 other specifically identified witnesses – all of whom possess critical information in this matter and whose testimony is thus necessary for Plaintiff to be able to present her claims.

---

§ 30.05[1][b].

As set forth in Plaintiff's Motion, Plaintiff seeks leave to depose: 30(b)(6) representatives of the institutional defendants, many of whose individual witnesses have been unable to speak to institutional policies and practices; additional police officers and medical personnel who directly interacted with Plaintiff and/or made decisions about the treatment she received; personnel of the Howard Defendants who will have information relevant not only to institutional policy, but to the Howard Defendants' now apparent claim that Dr. Williams was not in fact Plaintiff's attending physician; and a representative of the D.C. Rape Crisis Center, which discovery indicates has a substantial role in the policies at issue in this case and to whom many of the Defendants have pointed Plaintiff for responsive information. *See* Mot. at 9-13 (describing proposed deponents).

Neither the District nor the Howard Defendants have demonstrated that the depositions requested by Plaintiff are not necessary and proper under the principles set forth in Federal Rules 30(a)(2) and 26(b)(2). To the contrary, they have failed altogether to rebut Plaintiff's detailed showing of need or to substantiate their claims of unfair burden.

The Howard Defendants' opposition is based largely on misstatements of fact, none of which respond to Plaintiff's detailed and specific submission. First, the Howard Defendants suggest that Plaintiff's proposed depositions are improper because they are not "newly identified or newly discovered." Howard Opp. at 3. But, as Plaintiff's Reply to Dr. Lang's Opposition made clear, this is neither the basis for Plaintiff's request nor a requirement for additional depositions. *See* Reply to Lang Opp. at 3 n.6. It does bear mention, however, that many witnesses deposed to date surprisingly have claimed a lack of knowledge concerning key topics at issue (such as institutional policies and practices, the experiences of anyone other than the

14

witnesses themselves, and sometimes even the experiences of the witnesses themselves), further necessitating the additional depositions that Plaintiff seeks.

Second, the Howard Defendants suggest – incorrectly and without support – that Plaintiff has obtained the information she seeks through written discovery and thus is not entitled to additional depositions, citing Plaintiff's allegedly "innumerable written interrogatories and document requests" and use of "countless other discovery tools." Howard Opp. at 3, 4. To begin with, Plaintiff – in the interest of streamlining this case and not imposing needless burdens – has not yet propounded interrogatories on any party, in contrast to the literally hundreds of interrogatories that she received from Defendants in this case (many of which were duplicative and cumulative). In addition, Plaintiff has served carefully tailored document requests, although, as noted above, some Defendants have failed to respond properly. Yet, due to the number of witnesses listed by Defendants as possessing critical knowledge in this matter, and out of a concern for avoiding trial by surprise, Plaintiff has found it necessary to notice and take depositions of more than the 10 witnesses that the Federal Rules provide as a default. These depositions have not been taken out of "curiosity," *id.* at 4, but out of a need to learn critical information about witnesses' interaction with Plaintiff and the polices, practices and procedures of the five institutional Defendants at issue, as well as three Defendant doctors.

Although Plaintiff lacks the significant resources of the Defendants in this matter, *see* Fed. R. Civ. P.26(b)(2)(C) (noting the relevance of "the parties' resources"), she nonetheless has pursued the depositions necessary to prepare her case. Indeed, as recently as the July 10 deposition of Defendant Dr. Wendie Williams, Plaintiff learned that Dr. Williams is now taking the position that she never was Plaintiff's attending physician at HUH – despite conflicting representations made to Plaintiff by other Howard personnel whom Plaintiff seeks to depose. In

light of factual revelations like this at many of the depositions to date, coupled with many witnesses' professed inability to speak to anything other than their own personal experiences (and sometimes not even that), Plaintiff has made a clear showing of need for the additional depositions sought, whereas the Howard Defendants have no substantive response to <u>any</u> of the specific depositions proposed.[11]

Finally, the District presents no reasoned basis for denying Plaintiff the critical depositions she seeks. Rather than engage Plaintiff's substantive argument, the District's Opposition largely hinges on the faulty premise that its Motion for Judgment on the Pleadings could preclude all further depositions of District witnesses. As explained above, that premise is incorrect. Furthermore, the District's claims that its resources "have already been unnecessarily stretched" and that discovery "has been onerous and costly" to the District, District Opp. at 1, are extremely hard to credit, given the District's paltry document production to date, its admission that it has not conducted a reasonable search, its repeated about-faces with respect to making its witnesses available, and its refusal to produce key personnel for deposition. If anything, it has been the District's obstructionist tactics – not Plaintiff's good-faith effort to complete discovery in this multi-defendant case of public importance – that have created onerous and costly burdens primarily for Plaintiff. Particularly in light of the District's actions to date, as well as the standards of Federal Rules 26 and 30 and basic fairness, the Court should grant the additional depositions sought by Plaintiff here.

---

[11] The Howard Defendants also make the unfounded suggestion that Plaintiff has spent an excessive amount of time deposing witnesses. *See* Howard Opp. at 4 & n.2. Not only do the times reported by Howard omit some shorter depositions, but they also fail to account for considerable breaks and lunch recesses and include depositions that lasted well under four hours. Contrary to the Howard Defendants' representation, not one of the depositions taken by Plaintiff has lasted seven hours. Plaintiff has no desire to prolong depositions and has conducted all depositions as efficiently as possible.

## **CONCLUSION**

For the above reasons, as well as those in Plaintiff's Motion and her Reply to Defendant Lang's Opposition, Plaintiff respectfully requests that the Court grant Plaintiff's Motion to Modify Scheduling Order and Increase Number of Depositions Plaintiff May Take.

Dated:  August 4, 2008                                   Respectfully submitted,

/s/ Bruce V. Spiva
Bruce V. Spiva, D.C. Bar. No. 443754
  bspiva@spivahartnett.com
Kathleen R. Hartnett, D.C. Bar. No. 483250
  khartnett@spivahartnett.com
SPIVA & HARTNETT LLP
1776 Massachusetts Avenue, N.W.
Suite 600
Washington, D.C. 20036
Telephone:  (202) 785-0601
Facsimile:  (202) 785-0697

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Plaintiff's Reply to the Howard Defendants' and the District of Columbia's Oppositions to Plaintiff's Motion to Modify Scheduling Order and Increase Number of Depositions Plaintiff May Take, was served on August 4, 2008, by electronic filing with the Court's ECF system, upon:

Thomas V. Monahan, Jr.
  tvm@gdldlaw.com
Adam Kelley
  axk@gdldlaw. com
GOODELL, DEVRIES, LEECH & DANN, LLP
One South Street, Suite 2000
Baltimore, MD 21202

Dwayne Jefferson
  dwayne.jefferson@dc.gov
OFFICE OF THE ATTORNEY GENERAL
  FOR THE DISTRICT OF COLUMBIA
441 4th Street, N.W., 6th Floor South
Washington, D.C. 20001

Larry D. McAfee
  lmcafee@gleason-law.com
GLEASON, FLYNN, EMIG & FOGLEMAN,
  CHARTERED
11 North Washington Street, Suite 400
Rockville, MD 20850

Robert W. Goodson
  robert.goodson@wilsonelser.com
Deidre L. Robokos
  deidre.robokos@wilsonelser.com
Christine M. Costantino
  chrissy.costantino@wilsonelser.com
WILSON ELSER MOSKOWITZ EDELMAN &
  DICKER, LLP
1341 G Street, NW, Suite 500
Washington, D.C. 20005-3105

Karen R. Turner
  karen.turner@hacdlaw.com
HAMILTON ALTMAN CANALE & DILLON LLC
4600 East-West Highway, Suite 201
Bethesda, MD 20814


/s/ Bruce V. Spiva
Bruce V. Spiva