# Exhibit I

**7/29/08 Letter from K. Hartnett**

**To Plaintiff's Motion to Compel Defendant the District of Columbia to Produce Documents**

*McGaughey v. District of Columbia, et al.*, **No. 1:07-cv-01498 (RJL)**

# SPIVA & HARTNETT LLP

1776 MASSACHUSETTS AVENUE, N.W., SUITE 600
WASHINGTON, D.C. 20036
(202) 785-0601   (202) 785-0697 (FAX)

KATHLEEN R. HARTNETT
KHARTNETT@SPIVAHARTNETT.COM

July 29, 2008

**BY EMAIL AND U.S. MAIL**

Dwayne C. Jefferson, Esq.
OFFICE OF THE ATTORNEY GENERAL
 OF THE DISTRICT OF COLUMBIA
One Judiciary Square
441 4th Street, N.W., 6th Floor
Washington, D.C. 20001

Re:   *McGaughey v. District of Columbia, et al.*, No. 1:07-cv-01498 (RJL)

Dear Dwayne:

Pursuant to our oral requests at Sergeant Reid's July 9, 2008 deposition, as well as other requests made throughout the discovery process, including Plaintiff's First Set of Requests for Production of Documents to the District of Columbia ("Requests") (served March 12, 2008), we request that you immediately provide documents that Plaintiff has long requested in this matter, as specified below and in Plaintiff's Requests. In addition, as detailed below, we request clarification and complete responses concerning several of the District's Responses to Plaintiff's First Set of Production Requests ("Responses"), which you served on April 25, 2008. We are available to meet and confer with you regarding these matters any day this week, or any day, Monday through Thursday, of next week.

**MPD Policies and Procedures**

In the District's initial disclosures (served February 1, 2008), the District indicated that it may rely on certain Metropolitan Police Department ("MPD") policies and procedures as support for its defenses in this action. *See* District's Initial Disclosures at 4. In addition to naming three particular policies and procedures, the District also disclosed the "[i]nternal, unpublished guidelines governing the Metropolitan Police Department Sex Assault Unit." *Id.* Those internal guidelines have never been produced, despite Plaintiff's repeated requests, including by my emails to you dated April 11 and 29, 2008. We hereby request that you produce those internal, unpublished guidelines immediately, or state in writing that such guidelines do not exist and explain why they were listed in the District's initial disclosures.

SPIVA & HARTNETT LLP

Dwayne C. Jefferson, Esq.
July 29, 2008
Page 2 of 10

In addition to the District's Rule 26(a)(1) obligations, Plaintiff's Requests specifically sought MPD policies and procedures related to the issues in this case:

- Request No. 8 sought "[a]ll documents pertaining to the MPD policies, procedures, practices, and/or criteria for classifying a police report as a Miscellaneous Report."

- Request No. 9 sought "[a]ll documents pertaining to the MPD policies, procedures, practices, and/or criteria for classifying a police report as an alleged sexual assault."[1]

- Request No. 10 sought "[a]ll documents embodying, referring or relating to the policies, procedures and/or practices of the MPD's Sex Assault Unit, including but not limited to any General Orders (including but not limited to G.O. 304.6); Special Orders; and internal, unpublished guidelines (such as those referenced in the District's initial disclosures at page 4)."[2]

- Request No. 11 sought "[a]ll documents embodying, referring or relating to the policies, procedures and/or practices of the MPD's Victim Specialists Unit, including but not limited to any General Orders (including but not limited to G.O. 304.6); Special Orders; and internal, unpublished guidelines (such as those referenced in the District's initial disclosures at page 4)."

- Request No. 12 sought "[a]ll documents (whether specific to sexual assault cases or generally applicable, including to sexual assault cases) embodying, referring or relating to the policies, procedures and/or practices of the MPD regarding MPD employees' investigation and reporting of a potential victim's complaint of an alleged sexual assault."

- Request No. 13 sought "[a]ll documents embodying, referring or relating to the policies, procedures, practices and/or role of the MPD, including but not limited to

---

[1] The District's Responses claim that "it is unclear as to what is meant by the question." This Request is not unclear, as the depositions and documents in this case have made clear a distinction between police reports of sexual assaults and police reports of other crimes. To the extent this Request requires any additional clarification, Plaintiff seeks documents, as described, related to classifying a police report or the underlying incident as an alleged sexual assault.

[2] You have objected to this Request by stating that it is "not related to any specific time period." As with all Requests related to policies, procedures and/or practices, Plaintiff seeks documents related to the time of the incident in this case (December 9-10, 2006); all prior policies referenced by policies in effect as of December 2006; and documents related to all subsequent policies, procedures and/or practices (which bear on the MPD's capabilities with respect to sexual assault victims, as well as the MPD's defenses in this case).

SPIVA & HARTNETT LLP

Dwayne C. Jefferson, Esq.
July 29, 2008
Page 3 of 10

- the Sex Assault Unit and the Victim Specialists Unit, regarding the administration of and/or payment for forensic sexual assault examinations in the District of Columbia."

- Request No. 14 sought "[a]ll documents embodying, referring or relating to the policies, procedures and/or practices of any District agency or entity other than the MPD, including the Office of Victim Services, regarding the administration of and/or payment for forensic sexual assault examinations in the District of Columbia."

- Request No. 15 sought "[a]ll documents related to the District's, the MPD's, or any District entity's or employee's role, if any, in 'authorizing' forensic sexual assault examinations in the District of Columbia."[3]

- Request No. 16 sought "[a]ll documents related to the assertion that hospitals in the District, including Howard University Hospital or George Washington University Hospital, may not provide treatment for sexual assault (other than a forensic sexual assault examination) absent the 'authorization' of the District, the MPD, or some other District entity or employee."[4]

- Request No. 26 sought "[a]ll documents embodying, referring or relating to the policies, procedures and/or practices of the District's Sexual Assault Response Team ("SART"), and/or the District's involvement in and/or relationship to SART."

- Request No. 27 sought "[a]ll documents embodying, referring or relating to the policies, procedures and/or practices of the Sexual Assault Nurse Examiner ("SANE") Program at Howard University Hospital, and/or the District's involvement in and/or relationship to the SANE program."

---

[3] The District's Response to this Request stated that "this defendant does not have documents that are responsive at this time" and that "the answer will be supplemented as necessary." Obviously this Request pertains to an issue central to this case – *i.e.*, the District's role, if any, in the so-called "authorization" of sexual assault medical forensic examinations. Please search for and produce responsive documents, and if none exist, please state so in writing, and explain the extent of the search conducted.

[4] The District has objected to this Request as vague because it supposedly relates to assertions "made by persons other than Defendant." This Request is not vague: it seeks documents related to the assertion (*i.e.*, the proposition) set forth in the Request, and it does not attribute the assertion at issue to anyone, including the District. Please search for and produce any responsive documents, and if the District has no responsive documents, please state so in writing, and explain the extent of the search conducted.

**SPIVA & HARTNETT LLP**

Dwayne C. Jefferson, Esq.
July 29, 2008
Page 4 of 10

- Request No. 28 sought "[a]ll documents embodying, referring or relating to the policies, procedures and/or practices of the D.C. Rape Crisis Center and/or the District's involvement in and/or relationship to the D.C. Rape Crisis Center."

Despite these numerous and specific Requests, prior to Sergeant Reid's deposition on July 9, 2008, the District had produced only <u>two</u> MPD policy and procedure documents that appeared to be related to the MPD's handling of sexual assault cases: "General Order 304-06: Adult Sexual Assault Investigations" (dated December 22, 2006) and "Special Order SO-07: Handling of Sexual Abuse Cases" (dated April 11, 2000). As we previously pointed out to you months ago, the first of these documents does not appear to have been in effect as of December 9-10, 2008 (the dates at issue in this case), and thus we specifically requested the policy in effect as of those dates. *See, e.g.*, Green Dep. at 183-84 (May 8, 2008). We also requested all documents referred to as rescinded by the December 22, 2006 version of General Order 304-06. *See id.* Furthermore, according to Sergeant Reid (although there are indications in the document to the contrary), Special Order SO-07 "was designed around juveniles," Reid Dep. at 125, and thus may not be fully (or at all) applicable to this case.

As you are aware, at the lunch break of Sergeant Reid's deposition, you provided two critical MPD policies and procedures that had not been disclosed previously to Plaintiff, despite their obviously central relevance to this case. These documents are entitled "General Order 304-6: Investigation of Sex Crimes" (dated November 14, 1973), and "Special Order SO-01-06: Sexual Assault Nurse Examiners Program (SANE)" (dated April 2, 2001). Both of these key documents appear to have been in effect as of December 9-10, 2006, which, as you know, are the dates during which Plaintiff was allegedly sexually assaulted and sought the assistance of MPD. Sergeant Reid, despite being one of the supervisors of the sexual assault unit, *see* http://mpdc.dc.gov/mpdc/cwp/view,a,1232,q,556783,_mpdcNav_GID,523,mpdcNav,|31417|.asp, claimed to be unable to testify as to whether any other MPD policies or practices exist with respect to sexual assault cases. *See* Reid Dep. at 130.

In light of this troubling discovery history, during which the District has failed to provide – let alone in a timely manner – key policies and procedures at issue in this case – we request immediate production of all documents related to the District's policies and procedures concerning the issues in this case, as delineated by the Requests reprinted above, as well as Plaintiff's other Requests. The District's initial disclosures made clear that the General and Special Orders are available electronically, and thus determining whether responsive materials exist and providing those materials to Plaintiff would appear to entail the most minimal of burdens. Moreover, it was the District's obligation to perform a comprehensive, good-faith inquiry <u>prior</u> to responding to Plaintiff's Requests.

In addition, and particularly in light of the issues to date, we request that you expeditiously provide us with a complete index of <u>all</u> General Orders, Special Orders, and any other types of policies created by the MPD, so that we are able to determine if other relevant policies exist but have not been produced.

Finally, in addition to the above requests, we specifically request documents related to any changes in the MPD's policies and practices related to alleged sexual assaults that postdate December 9-10, 2006. Such documents are clearly relevant to this case, as they will illuminate by contrast the MPD's practice as of December 2006 and they also will demonstrate the capabilities of the MPD. Specifically, we request documents related to the claimed changes in SANE/SART policy in the District of Columbia as of January 1, 2008, as described by Mary Pinn in her deposition, *see, e.g.*, Pinn Dep. at 54-56. Ms. Pinn specifically referenced a working group run by the D.C. Mayor's office, and attended by MPD representatives, and we specifically request all documents related to that working group and its formation and implementation of any policies related to sexual assault victims. Furthermore, we specifically request all documents related to MPD policies regarding the preparation of police reports in sexual assault cases, and particularly all documents related to any supposed change in policy since December 2006 whereby all sexual assault cases receive written reports.

**MPD Training Materials and Documents**

At Sergeant Reid's July 9, 2008 deposition, we reiterated our request for MPD training documents related to sexual assault cases – including the many such documents referred to by Sergeant Reid during his deposition. You stated that you had not performed "any kind of inquiry about documents, training documents in particular," and thus you were "not going to even begin to be in a position to respond to a request of that sort." Reid Dep. at 66-67.

The Federal Rules require that discovery responses be based upon a reasonable inquiry. *See, e.g.*, Fed. R. Civ. P. 26(g)(1). Our Requests specifically sought documents related to training by and of MPD personnel concerning sexual assault cases. The District's April 25, 2008 Reponses, which you signed, did not indicate that an inquiry into such documents had not been made, but instead stated that the Responses were "accurate to the best of Defendant's knowledge as of this date." Responses at 3. Moreover, you purported to produce training documents responsive to our Requests, *see* Responses to Request Nos. 17-19, but these documents do not pertain to the topics at issue. Indeed, Sergeant Reid confirmed at his deposition that, as an MPD employee with significant experience training in the area of sexual assault, he was unfamiliar with the "training" documents produced by the District to date.

Now that it appears that the District's Responses to Plaintiff's Requests regarding training materials were not based upon any "any kind of inquiry" whatsoever, let alone a reasonable inquiry, we request that you conduct a reasonable inquiry into all of Plaintiff's Requests and provide responsive documents. We specifically request that you produce all responsive documents regarding training of or by MPD personnel regarding the handling of sexual assault cases, which are responsive to the following Requests, among others:

- Request No. 17 sought "[a]ll documents referring or relating to the training of MPD employees, including but not limited to employees of the Sex Assault Unit and the

**SPIVA & HARTNETT LLP**

Dwayne C. Jefferson, Esq.
July 29, 2008
Page 6 of 10

> Victim Specialists Unit, in handling alleged sexual assault complaints and/or alleged sexual assault victims."

- Request No. 18 sought "[a]ll documents referring or relating to the training of MPD employees, including but not limited to employees of the Sex Assault Unit and the Victim Specialists Unit, in handling potential victims of date rape drugs or drug- or alcohol-induced sexual assault."

- Request No. 19 sought "[a]ll documents referring or relating to the training of MPD employees, including but not limited to employees of the Sex Assault Unit and the Victim Specialists Unit, in handling potential crime victims, including victims of alleged sexual assault, who appear to be intoxicated."

- Request No. 25 sought "[a]ll documents relied upon as a basis for the statements made on the MPD Sex Assault Unit's webpage (http://mpdc.dc.gov/mpdc/cwp/view, a,1232,q,556783,mpdcNav_GID,1523,mpdcNav,|31417|.asp 17), including but not limited to the following statements: '[t]he members of the Sex Assault Unit are specially trained in the investigation of sexual assault'; 'the detectives recognize and understand the sensitive, personal and invasive nature of sexual assault crimes'; and '[s]exual assault crimes are investigated with respect for the rights of the accused and the victim.'" (emphasis added)

- Request No. 31 sought "[a]ll documents embodying, referring or relating to training regarding sexual assault cases, forensic sexual assault examinations, and/or date rape drugs, received by Officer Michael Minor, Officer Ginette Leveque, Officer Tandreia Green, Detective Dana Spriggs, Detective Elgin Wheeler, Detective Kevin Rice, Sergeant Ronald Reid, Detective Marshall, Detective Arnita Briggs, Officer Fields, Officer Tracy Hughes, Sergeant Hayes, Victim Specialist Esther Thomas, and/or any other MPD employee who had any contact from December 9, 2006 through the present with Plaintiff, Ms. Evangeline Allen, Ms. Raegen McGaughey, Ms. Sade Diké, Ms. Kerston Reid, or Ms. Amanda Lockett."

In addition, other Requests (including those described above concerning MPD's policies and procedures) also cover documents related to trainings apparently given by Sergeant Reid (and perhaps by others in the MPD's sex assault unit or outside consultants) concerning the MPD's policies and procedures for responding to and investigating sexual assault complaints. Such documents may include PowerPoints, agendas, handouts, or any other documents used by Sergeant Reid and others in preparing and conducting such trainings.[5]

---

[5] Sergeant Reid's deposition transcript describes many of the trainings at issue, but our Requests are not limited to trainings involving Sergeant Reid. With respect to Sergeant Reid, the training documents at issue include PowerPoints that he has used for his many presentations regarding sexual assault policies and procedures (including at Howard University and George Washington

Case 1:07-cv-01498-RJL   Document 82-9   Filed 12/03/08   Page 8 of 11

**SPIVA & HARTNETT LLP**

Dwayne C. Jefferson, Esq.
July 29, 2008
Page 7 of 10

At Sergeant Reid's July 9 deposition, we requested that you immediately produce all documents related to trainings described by Sergeant Reid (both those that he has attended and those that he has administered), as well as all trainings that he has been involved with but was unable to specifically recollect. You have not responded since that time and have not produced any additional documents. We request that you immediately search for and produce all documents responsive to Plaintiff's Requests regarding MPD training, as described in our Requests and as we have subsequently requested. Regardless of the disposition of our pending motion to extend the discovery period, it is the District's obligation to supply complete responses to our pending Requests. To the extent that you have retrieved some but not all responsive documents, we request a rolling production. If responsive documents exist but you are claiming privilege, please inform us in writing and supply a privilege log.

### Notes of MPD Personnel

We have repeatedly requested all documents, including email and notes, of MPD personnel pertaining to Plaintiff and/or the events described in the Complaint. *See, e.g.*, Request No. 1. With respect to notes of MPD personnel, to date, you have produced pages from Officer Minor's field notebook but no other such documentation. We reiterate our request that you search for and produce all such documents, which are responsive to several of our Requests. In addition, we request that you produce the field notebooks for the week time period surrounding December 9-10, 2006 for all MPD personnel involved in Plaintiff's case, including all MPD personnel whom Plaintiff has deposed and/or whose depositions Plaintiff has noticed.

### Privilege Log

Many of your Responses to our Requests indicate objections based on claims of privilege, but you have not produced a privilege log. For some of these Responses, you also have referred as part of your response to certain documents that you have produced, leaving it unclear whether you have referenced <u>all</u> responsive documents, or if there are other responsive documents that exist, but over which you are claiming privilege. Moreover, we may object to several of the "privileges" that you claim in paragraph (b) of your General Objections, and thus we are entitled to know which, if any, of these privileges you are claiming. Please indicate in writing whether there are any responsive documents over which you are claiming privilege, and if so, please supply a privilege log so that we are able to assess your claims of privilege.

---

University); all materials that he has received at trainings pertaining to the topics at issue in Plaintiff's Requests, both inside and outside of MPD, including those conducted by outside consultants; all documents related to the 80-hour Sexual Assault Training Program and the 4-hour First Responders' course at the D.C. police academy (both discussed during Sergeant Reid's deposition); the First Responder Video for Sexual Assault co-produced by Sergeant Reid as well as all related documents; and all other documents responsive to our Requests.

SPIVA & HARTNETT LLP

Dwayne C. Jefferson, Esq.
July 29, 2008
Page 8 of 10


**Specific Requests and Responses**

In addition to the specific Requests and Responses discussed above, we also have the following requests for clarification or further production with respect to certain Responses.

**Request No. 1.** Your Response to Request No. 1, which sought documents specifically related to Plaintiff's case, cited only two documents: Incident Report No. 167399 and Investigative Report of Citizens Complaint. Subsequently, you produced (at the beginning of Officer Minor's deposition) a portion of Officer Minor's field notebook, but no other responsive documents. Furthermore, several of your other Responses incorporate by reference your Response to Request No. 1. Accordingly, we request that you clarify whether you have produced all responsive documents to Request No. 1 and to the Requests to which you have responded by citing your Response to Request No. 1. If you have additional responsive documents but are claiming privilege, please provide a privilege log. If you have additional responsive documents but are not producing such documents based on an objection, please inform us in writing so that we can address any objection. If you have no additional responsive documents to Request No. 1 or to any of the Requests to which you have responded by citing your Response to Request No. 1, please state so in writing.

**Request No. 20.** You have objected to our request for documents from D.C. Fire and Emergency and Medical Services ("FEMS") based on relevance, because FEMS was "not called upon t[o] investigate the underlying sexual assault allegation" in this case. This objection is misplaced. Plaintiff does not request FEMS documents related to the handling of her case in particular, but rather seeks FEMS training and other documents that reflect the policies, procedures and practices in the District of Columbia for handling alleged sexual assault victims, victims of date-rape drugs, and intoxicated individuals. Such documents are directly relevant to the issues in this case, which include some Defendants' apparent position that only certain hospitals in the District handle sexual assault patients as a matter of course, and that the District must authorize certain treatment and procedures of sexual assault victims at hospitals in the District. Please search for and produce documents responsive to this Request, and if you withhold any documents under a claim of privilege, please produce a privilege log.

**Request No. 21.** You have objected to our request for documents related to actions taken in response to the Rosenbaum investigation based on claims of relevance and privilege. Such documents are plainly reasonably calculated to lead to the discovery of admissible evidence and may not be withheld on the basis of a relevance objection. As we already have explained in our recent letter to counsel for the Howard Defendants, the cited OIG report concerning the Rosenbaum matter bears directly on many of the issues in this case. With respect to the MPD in particular, the OIG report concluded that the MPD officers "did not conduct an adequate preliminary investigation in accordance with MPD General Orders, and did not take adequate steps to determine if a crime had been committed." OIG Rosenbaum Report at 5 (June 2006). Moreover, the OIG concluded that MPD personnel "did not complete a report on the incident

**SPIVA & HARTNETT LLP**

Dwayne C. Jefferson, Esq.
July 29, 2008
Page 9 of 10

pursuant to the relevant MPD General Order." *Id.* The OIG recommended that the MPD "immediately review and reissue the pertinent General Orders relating to officer responsibilities at emergency incidents," as well as implement and revise systems related to report completion and tracking. *See id.* These findings and recommendations were described in further detail elsewhere in the OIG's report. *See id.* at 36-37.

As you are aware, Plaintiff's interaction with the MPD occurred approximately a year after the Rosenbaum incident and approximately six months after the OIG's report, which noted MPD's failings and recommended that certain actions be taken. There are striking similarities between MPD's failings in the Rosenbaum matter and the failings alleged by Plaintiff here: the failure of MPD to perform an adequate preliminary investigation, the failure of MPD to determine whether a crime had been committed, and the failure of MPD to prepare proper reports concerning the incident at issue. Thus, the MPD's response to the Rosenbaum matter and the OIG report is relevant to the District's alleged negligence concerning its formulation and implementation of MPD policies on topics related to Plaintiff's case, as well as training with respect to such policies.

Accordingly, please search for and produce documents responsive to this Request. If responsive documents exist but you are claiming privilege, please produce a privilege log.

**Request Nos. 22-24.** These Requests seek critical data regarding sexual assault forensic medical examinations conducted in the District in recent years, as well as the funding of such exams. The requested documents bear directly on issues central to this case, such as the District's role in authorizing and funding such exams, and the number of examinations that have been conducted relative to the number of complaints of sexual assault that have been made. You have objected based on privilege and invasion of privacy, but have not provided a privilege log so that Plaintiff can assess your claims of privilege. You also have not explained why minimal redaction could not alleviate any privacy issue. Finally, for two of these Requests, you have stated that you will produce non-privileged responsive documents, but that none were as yet available. Please search for and produce responsive documents, and if there are responsive documents over which you are claiming privilege, please supply a privilege log.

**Request No. 25.** Plaintiff seeks documents relied upon for certain assertions made by the MPD on its sex assault unit webpage – assertions with clear relevance to the issues in this case, contrary to your unexplained relevance objection. You have cited only one document in response. Please confirm that the cited document is the only document relied upon by MPD as a basis for the assertions at issue on the sex assault unit webpage. If other responsive documents exist, please produce them immediately. If you are claiming privilege over any responsive documents (which is not clear from your Response), please supply a privilege log.

**Request Nos. 29-30.** These Requests seek documents related to any complaints received by MPD related to either (1) cases like Plaintiff's case, involving alleged sexual assault and/or date rape drugs, or (2) cases handled by MPD personnel who were involved in handling

SPIVA & HARTNETT LLP

Dwayne C. Jefferson, Esq.
July 29, 2008
Page 10 of 10

Plaintiff's case. Such documents are of obvious relevance to this matter. With respect to complaints regarding the handling of other sexual assault cases (Request No. 29), Plaintiff is entitled to know whether the MPD has previously been alerted to the failings alleged in the Complaint and what, if any, action MPD took to address any such failings. Such information is relevant to the MPD's negligence with respect to the foreseeable and preventable nature of the failings alleged by Plaintiff, as well as to the MPD's formulation and implementation of its policies and procedures, and its training on such policies. With respect to complaints regarding the handling of other cases by personnel involved in Plaintiff's case (Request No. 30), Plaintiff is entitled to know the disciplinary history of personnel who handled her case, in order to determine whether those personnel were properly supervised and trained by MPD, and whether the failings alleged in the Complaint were foreseeable and preventable. Accordingly, please search for and produce all responsive documents. If you are asserting a claim of privilege (which appears to be the case), please produce redacted versions of the documents at issue as well as a privilege log indicating the basis for your claim of privilege.

**Request No. 32.** You have stated that you have not determined what documents the District will use to support its defenses in this action, other than the two documents identified in your Response to Request No. 1. However, this Request does not seek the documents that you *will* use to support your defenses, but the documents that you *may* use to support your defenses. This Request is precisely the disclosure required by Federal Rule of Civil Procedure 26(a)(1)(A): "a copy – or description by category and location – of all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses unless the use would be solely for impeachment." Plaintiff's Requests make clear that she is not seeking privileged or otherwise protected documents, but do require that a privilege log be supplied so that Plaintiff can assess any claim of privilege. Please clarify whether there are additional documents responsive to this Request, and if you are asserting a claim of privilege over any such documents, please produce a privilege log.

We look forward to your prompt attention to these matters, and we hope to resolve these issues without court intervention. Please do not hesitate to contact me if you have any questions or would like to discuss further.

Sincerely yours,

Kathleen R. Hartnett

cc:   Peter J. Nickles, Interim Attorney General (by email only)
      George C. Valentine, Deputy Attorney General, Civil Litigation Division (by email only)
      Patricia A. Jones, Chief, General Litigation Section IV (by email only)
      All Other Defense Counsel of Record (by email only)