## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ALEXANDRIA McGAUGHEY,    )
    )
    Plaintiff,    )
    )    Case No. 1:07-cv-01498 (RJL)
v.    )
    )
DISTRICT OF COLUMBIA, *et al.*,    )
    )
    Defendants.    )
_____)

**PLAINTIFF'S MOTION TO DETERMINE THE SUFFICIENCY OF DEFENDANT THE
GEORGE WASHINGTON UNIVERSITY'S RESPONSES TO PLAINTIFF'S
REQUESTS FOR ADMISSION, AND TO COMPEL INTERROGATORY
<u>RESPONSES AND THE PRODUCTION OF DOCUMENTS</u>**

Pursuant to Federal Rules of Civil Procedure 26, 36(a)(6), 37(a), and 37(c), Plaintiff

respectfully moves for an order determining the sufficiency of Defendant The George

Washington University's ("GWU's") Responses to Plaintiff's First Set of Requests for

Admission ("RFAs").  Plaintiff also moves to compel GWU with respect to Plaintiff's

Interrogatories and Supplemental Requests for Production ("RFPs") that were served in

conjunction with and in the same document as Plaintiff's RFAs.  For the following reasons, the

Court should deem the RFAs at issue to be admitted.  *See* Fed. R. Civ. P. 36(a)(6).  The Court

also should compel GWU to respond to the Interrogatories and RFPs discussed below.  In

addition, Plaintiff should be awarded attorneys' fees and costs related to her Motion.[1]

Plaintiff already has filed a Motion to Compel with respect to GWU's deficient response

to Plaintiff's First Set of Requests for Production.  *See* Doc. No. 84.[2]  That Motion sets forth in

_____

[1] Plaintiff has met and conferred with GWU over the issues raised herein, and specifically sought
GWU's consent to the relief requested in this motion pursuant to Local Rule 7(m).  GWU does
not consent.

[2] Plaintiff incorporates by reference the more extensive factual background provided in that

detail GWU's improper approach to discovery and, perhaps most disturbing, GWU's alteration

of a key document on its Police Department website during the discovery period in this case.

Prior to GWU's alteration, that website contained the critical admission that George Washington

University Hospital ("GWUH") does in fact perform sexual assault medical forensic

examinations – contrary to GWU's position in this case.[3] Not only did GWU alter this critical

document while Plaintiff's discovery requests were pending, but GWU has failed to produce the

pre-altered version, based on its claim that the prior version of the website has been destroyed.

   Although GWU's discovery responses with respect to its police website are particularly

troubling, GWU's other responses to Plaintiff's RFAs and accompanying Interrogatories and

RFPs also are deficient. Indeed, during the meet and confer process, GWU's counsel admitted

that many of GWU's discovery responses were not based on reasonable investigation (or any

investigation), as the Rules require. Counsel for GWU assured counsel for Plaintiff after the

parties' meet and confer that he would take back the issues discussed to his client and that GWU

would provide supplementary responses as appropriate. However, in an about face, GWU now

has taken the position that Plaintiff must seek relief from the Court. GWU's refusal to make a

good-faith effort at supplementing its admittedly deficient discovery responses is unreasonable

and has required Plaintiff needlessly to incur the cost of this Motion.

   Below, Plaintiff presents the issues topically, as opposed to addressing the RFPs,

Interrogatories and RFAs respectively in separate sections. Although several of GWU's

responses are simply false and Plaintiff notes this fact where relevant, Plaintiff focuses on the

---

Motion. *See* Doc. No. 84.
[3] As explained in Plaintiff's previous filings, her allegations against the GW Defendants include
that she was improperly denied a sexual assault medical forensic examination at GWUH by those
defendants. *See* Doc. No. 84.

requests to which GWU has not responded (or fully responded), or for which GWU has not made the reasonable inquiry required by the Rules.[4]

Plaintiff respectfully submits that the presentation below demonstrates that GWU approached Plaintiff's discovery requests exactly backwards. Rather than making a good-faith reading of the requests, undertaking a reasonable investigation, and providing as complete of responses as possible, GWU responded to the requests as minimally as possible, without the required investigation, and then refused to conduct such an investigation or provide supplementary responses when alerted to these deficiencies. GWU's actions are contrary to the fundamental principles of the Federal Rules concerning discovery. GWU has prevented Plaintiff from receiving basic information to which she is entitled and from narrowing the issues for trial. Thus, the Motion should be granted and Plaintiff should be awarded her fees and costs.

## BACKGROUND

Plaintiff served her First Set of Requests for Admission and Interrogatories, and Supplemental Requests for Production to GWU on September 12, 2008. *See* Ex. A. GWU responded on October 13, 2008. *See* Ex. B. Because GWU did not respond fully or properly to nearly all of the discovery requests, Plaintiff sought to meet and confer with GWU, and the parties met and conferred on November 20 and 24, 2008.

In light of the parties' conference, GWU agreed to provide supplemental responses by December 12, 2008. *See* Ex. C. However, when Plaintiff inquired about the status of these supplemental responses on December 17, 2008, GWU stated that it would provide no further supplementation. *See id.* According to GWU's counsel: "I didn't think that there was much that

---

[4] *Cf.* Fed. R. Civ. P. 37(c)(2) (permitting an award of fees and expenses upon later proof that responses to request for admission are not accurate).

was ever going to make Bruce and you happy. I will just respond to your motion instead of any attempt at further supplemention [sic]." *Id.*

Because of the global deficiency of GWU's discovery responses and GWU's refusal to make a reasonable inquiry or provide supplemental responses, Plaintiff brings this Motion.

<u>**ARGUMENT**</u>

I. **GWU'S OBLIGATIONS FOR RESPONDING TO PLAINTIFF'S RFAs, INTERROGATORIES AND SUPPLEMENTAL RFPs.**

A. **Requirements For Responding To Requests For Admission.**

Federal Rule 36 sets forth specific requirements for responding to requests for admission. *See* Fed. R. Civ. P. 36; *Tequila Centilela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 242 F.R.D. 1, 13 (D.D.C. 2007). "If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4). Moreover, "[a] denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." *Id.* "While it is permissible under the rule to qualify answers which are only partly correct, hair-splitting disingenuous distinctions are inappropriate." *Tequila Centilela*, 242 F.R.D. at 14. "Vague" and "evasive" answers are improper. *Id.*; *Green v. Blazer Diamond Prods. Inc.*, No. 92-1385, 1994 U.S. Dist. LEXIS 21346, at *10 (D.D.C. Dec. 8, 1994); *see* Fed. R. Civ. P. 37(a)(4) ("an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond").

A response based on lack of knowledge must include a statement that the party "has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed. R. Civ. P. 36(a)(4). "[A] duty to make 'reasonable inquiry' includes both an investigation of officers, administrators, agents and employees who may have

information which may lead to a response and a review of relevant documents and regulations." *Tequila Centilela*, 242 F.R.D. at 15.

"The party who has requested the admissions may move to determine the sufficiency of the answers or objections." *Id.* at 13; Fed. R. Civ. P. 36(a)(6). Upon a determination of insufficiency, "the court may order either that the matter is admitted or that an amended answer be served." Fed. R. Civ. P. 36(a)(6); *see Tequila Centilela*, 242 F.R.D at 13; Fed. R. Civ. P. 36(a)(6). If a party prevails on a motion to determine sufficiency, an award of fees and expenses is appropriate under Federal Rule 37(a)(5). *See* Fed. R. Civ. P. 36(a)(6) ("Rule 37(a)(5) applies to an award of expenses."); Fed. R. Civ. P. 37(a)(5).

**B.      Standards Governing Plaintiff's Motion To Compel Responses To Plaintiff's Interrogatories And Supplemental RFPs.**

With respect to GWU's deficient responses to Plaintiff's Interrogatories and Supplemental RFPs, Plaintiff moves to compel complete responses. *See* Fed. R. Civ. P. 37(a). Plaintiff also moves for an award of fees and costs. *See* Fed. R. Civ. P. 37(a)(5). As this Court has held, "'the language of the rule itself is mandatory, dictating that the Court must award expenses upon granting a motion to compel disclosure unless one of the specific bases for refusing to make such an award is found to exist." *D.L. v. District of Columbia*, 251 F.R.D. 38, 47 (D.D.C. 2008) (quoting *Cobell v. Norton*, 226 F.R.D. 67, 90 (D.D.C. 2005)).[5]

---

[5] Plaintiff has previously made a Motion to Compel GWU To Produce Documents, pertaining to Plaintiff's First Set of Requests for Production. *See* Doc. No. 84. Plaintiff incorporates by reference the legal standards for motions to compel as discussed at greater length in that Motion.

II. **GWU'S RESPONSES TO PLAINTIFF'S REQUESTS FOR ADMISSION AND RELATED INTERROGATORIES AND PRODUCTION REQUESTS ARE DEFICIENT IN MULTIPLE RESPECTS.**

A. **GWU's Responses To Plaintiff's Discovery Requests Concerning GWU's Altered Police Website Are Insufficient And Lacking In Candor (RFAs 7-12, Supplemental RFP 5).**

1. **Background Of GWU's Alteration Of Its Police Department Website.**

Plaintiff's briefing on her first Motion to Compel regarding GWU's document production contains a detailed discussion of GWU's improper alteration of its police department website while Plaintiff's discovery requests were outstanding. *See* Doc. No. 84 at 11-14, 21-22; Doc. No. 100 at 11-13. In brief, between the time that Plaintiff's RFAs were served on GWU on September 12, 2008 and the time that GWU responded on October 13, 2008, GWU had <u>deleted</u> the key representation on the GWU Police Department website that GWU students could receive sexual assault medical forensic examinations at GWUH (for a fee). *See id.* This representation was an admission by GWU that – contrary to its position in this case – GWUH can and does regularly perform sexual assault medical forensic examinations and holds itself out as adhering to the national standard of care for such examinations. *See id.* Whereas Plaintiff's first Motion to Compel pertained to GWU's deficient document production regarding this and other GWU Police Department documents, the present Motion pertains to GWU's inadequate, evasive and misleading responses to Plaintiff's RFAs, Interrogatories and Supplemental RFPs on this topic.

To briefly remind the Court of the website alteration at issue, before GWU's alteration, and as documented as Exhibit A to Plaintiff's September 12, 2008 RFAs to GWU, *see* Ex. A at Ex. A (9/12/08 website printout), the "GW and DC Area Information and Services for Survivors of Sexual Assault" webpage on the GWU Police Department website stated:

**Immediate Emergency Services**

A special exam should be conducted as soon as possible following an assault to ensure of your physical well-being and to collect evidence that may be useful in criminal proceedings.

\*\*\*

GW students can receive the exam for a fee at The George Washington University Hospital Emergency Unit (715-4911). Students can receive the exam for free by going to the Howard University Emergency Unit (865-1121). The Hospital's emergency unit follows the national standard for victim care, rape exams, and evidence collection procedures.

Ex. A at Ex. A. Thus, as this GWU website made clear – and contrary to GWU's position in this case, *see* Ex. B at 2 – GWUH performs sexual assault medical forensic examinations (at least for its own students), purportedly pursuant to the "national standard for victim care." Ex. A at Ex. A. GWU's website also made the separate point that HUH provides the examinations for free, as part of the SANE Program.

Incredibly, between the time that Plaintiff served her Requests for Admission on September 12, 2008 and the time GWU served its responses on October 13, 2008 (the day before the close of fact discovery), GWU altered this website and, according to counsel, did not retain preexisting versions of the website. The new language, first brought to Plaintiff's attention as Exhibit A to GWU's RFA Responses, *see* Ex. B at Ex. A (10/7/08 website printout), stated:

**Immediate Emergency Services**

A special exam should be conducted as soon as possible following an assault to ensure of your physical well-being and to collect evidence that may be useful in criminal proceedings.

\*\*\*

GW students can receive the exam for free by going to the Washington Hospital Center (202-742-1720) or the Lighthouse Center for Healing (202-333-RAPE). These locations follow the national standards for victim care, rape exams, and evidence collection procedures.

Ex. B to Mot. (Ex. A to GWU's Responses to Plaintiff's Requests for Admission).

As these excerpts demonstrate, GWU made two changes to its website between the time of Plaintiff's RFAs and the time of GWU's responses. First, GWU changed the information concerning where individuals can receive examinations for free as part of the District's SANE Program, as that program had moved from HUH to Washington Hospital Center or the Lighthouse Center (i.e., D.C. Rape Crisis Center). Second, GWU deleted the separate reference to the availability of examinations at GWUH for a fee – a change which, contrary to GWU's claims in the context of Plaintiff's first Motion to Compel, has nothing to do with the SANE Program's move from HUH to other locations in the District. See Doc. No. 100 at 11-13. No one disputes that the SANE Program was never located at GWUH, and thus any move in the SANE Program has nothing to do with GWUH. Instead, as the actual alteration of the website demonstrates, GWU's revisions were made, in part, to delete GWU's admission that GWUH performs these examinations.

### 2. GWU's Deficient RFA Responses Related To Its Altered Website.

These undisclosed changes made by GWU between the time Plaintiff served her RFAs and the time of GWU's responses render several of GWU's RFA responses evasive, misleading and lacking in good faith. Specifically, GWU's responses to RFAs 7, 8, 9, 10, 11, 12 all deny various RFAs regarding representations that GWU made on its police website and base those denials entirely on GWU's altered version of the website, rather than the version of the website in effect as of the time that Plaintiff served her requests (a copy of which was attached to Plaintiff's RFAs). The following examples are illustrative:

**Request 7:** Admit that the GWU Police Department's website represents that GW students can receive a sexual assault medical forensic examination at GWUH.

8

**RESPONSE:** Denied. The website represents that GW students can receive, among other things, "medical treatment," but does not state where such treatment should take place. In addition, the website currently indicates that a "special exam" should be conducted as soon as possible following an assault, but specifically references the reader to the Washington Hospital Center or the Lighthouse Center for Healing and again, does not reference GWUH. See Exhibit A [*i.e.*, new, altered version of website].

**Request 8:** Admit that the GWU Police Department's website represents that GW students are charged a fee for the sexual assault medical forensic examinations that they receive at GWUH.

**RESPONSE:** Denied. The website currently does not mention a fee or a "sexual assault medical forensic examination" but rather, directs the reader to two phone numbers of places where they may receive a "special exam" for free. See Exhibit A [*i.e.*, new, altered version of website].

Ex. B at 3.

Plaintiff respectfully submits that good faith and the Federal Rules required GWU to admit these RFAs, as the pre-altered version of the website served by Plaintiff with her RFAs plainly makes the representations at issue. At the very least, good faith and the duty of candor required that GWU (1) admit in its responses that the GWU website had made the representations at issue at the time of Plaintiff's Requests and (2) then state that the website had been changed since the time of Plaintiff's RFAs. *See* Fed. R. Civ. P. 26(g); Fed. R. Civ. P. 36(a)(4); Fed. R. Civ. P. 37(a)(4).

Plaintiff conferred with counsel for GWU regarding these improper responses. Counsel for GWU informed Plaintiff that he would take the issue back to his client and provide supplemental responses. Counsel represented that the changes had been made to the website initially without his knowledge. Now, GWU has refused to provide supplemental responses. In

light of GWU's insufficient and evasive responses and refusal to amend, the Court should deem

RFAs 7-12 admitted.[6]

**B.    GWU's Failure To Supplement Regarding MPD's Alleged Role In "Authorizing" Sexual Assault Medical Forensic Examinations (Interrogatory 7, Supplemental RFP 7).**

GWU has refused to admit that "authorization" by the Metropolitan Police Department

("MPD") is <u>not</u> required for a patient to receive a sexual assault medical forensic examination at

GWUH.  Ex. B at 5.  Accordingly, Plaintiff requested in Interrogatory 7 that GWU "identify and

describe all information and/or documents supporting the proposition that MPD 'authorization'

is required."  Ex. A at 8.  Plaintiff also requested in Supplemental RFP 7 "[a]ll documents

referred to in your response to Interrogatory 7."  *Id.*

With respect to both of these requests, GWU made no objections, but stated simply

"Defendant GWU will supplement this answer."  Ex. B at 5.  During the parties' meet and confer

in early December 2008, GWU agreed to supplement.  *See* Ex. C.  Since that time, counsel for

GWU has informed Plaintiff that "I will just respond to your motion instead of any attempt at

further supplemention [sic]."  *Id.*  GWU should be compelled to respond to these requests, both

of which pertain to the GW Defendants' central claim in this lawsuit – that, absent police

"authorization," they cannot and need not perform a sexual assault medical forensic examination.

**C.    GWU's Responses Concerning The Availability Of Sexual Assault Medical Forensic Examinations At GWUH Are Evasive (Interrogatories 3-4).**

Responding to RFAs 5 and 6, respectively, GWU denied that GWUH patients (including

GWU students) "can receive a sexual assault medical forensic examination at GWUH."  Ex. B at

---

[6] GWU also improperly referenced the altered website in response to Plaintiff's Supplemental RFP 5.  GWU should be compelled to respond to this Supplemental RFP as well, although that relief also has been requested in substance by Plaintiff's first Motion to Compel GWU regarding GWU's deficient responses to Plaintiff's First Set of Production Requests.

2.  In light of these denials, Plaintiff asked GWU in Interrogatories 3-4 to "describe the basis for your denial, including the identification and description of any documents that support your denial." Ex. A at 5-6. GWUH responded to Interrogatory 3 (pertaining to GWUH patients generally): "At the time of the incident in question, sexual assault medical forensic examinations are provided at GWUH with MPD authorization, if the patient is not stable to be transferred to Howard University Hospital." Ex. B at 2. GWUH responded to Interrogatory 4 (pertaining to GWU students): "See Defendant's Answer to Interrogatory No. 3." *Id.* at 3.

GWU's responses to Interrogatories 3 and 4 are incomplete and insufficient. Both Interrogatories were not limited to the time of Plaintiff's sexual assault in December 2006. However, GWU responded only with respect to "the time of the incident in question." Ex. B at 2-3. GWU should be ordered to respond completely, *see* Fed. R. Civ. P. 37(a)(4), both with respect to the practice at the time of GWU's responses, as well as the time of Plaintiff's RFAs and December 2006, if there are any differences in practice.

### D. GWU's Hairsplitting Responses Concerning GWU's Legal Relationship With GWUH Are Improper (RFA 30, Interrogatory 10).

Plaintiff's first Motion to Compel addressed GWU's unjustified refusal to provide basic documents concerning GWU's relationship with GWUH that pertain to which GW entities and individuals bear responsibility for the negligence of the GW Defendants alleged by Plaintiff. *See* Doc. No. 84 at 23-24; Doc. No. 100 at 7-11. Here, Plaintiff addresses GWU's evasive and incomplete responses to Plaintiff's related discovery requests on this topic – RFA 30 and Interrogatory 10. Although GWU's responses to these requests, standing alone, warrant relief from the Court, they also further underscore the unfairness of the GW Defendants' refusal to provide Plaintiff with basic documents concerning the GW Defendants' interrelationship.

First, in response to RFA 30, GWU incredibly <u>denied</u> "that GWU is a part-owner of GWUH." Ex. B at 8. In contrast, co-defendant GWUH has <u>admitted</u> this incontrovertible fact, both in its RFA responses, *see* Ex. I to Doc. No. 85 at 18, as well as on the GWUH website, *see* http://www.gwhospital.com/index.php?PageID=1859 ("Since July 1997, The George Washington University Hospital has been jointly owned and operated by a partnership between George Washington University and a subsidiary of Universal Health Services Inc. (UHS).").

Apparently, GWU's hairsplitting – which was not disclosed in its RFA Responses, but only later in GWU's response to Plaintiff's first Motion to Compel – is due to GWU's claim that "it is a limited partner in the DHP partnership," which "is the legal entity that wholly owns the hospital." Doc. No. 92. at 4. However, RFA 30 did not ask whether GWU was a <u>direct</u> part-owner of GWUH; it simply asked whether GWU is a part-owner of GWUH, which is clearly true. Moreover, even assuming that GWU unreasonably read Plaintiff's RFA 30 as to refer to direct ownership, it was GWU's obligation to admit what it could (*i.e.*, that it is an indirect part-owner of GWUH via DHP) and explain the basis for its partial denial. *See* Fed. R. Civ. P. 36(a)(4). As this Court has held, "[w]hile it is permissible under the rule to qualify answers which are only partly correct, hair-splitting disingenuous distinctions are inappropriate." *Tequila Centilela*, 242 F.R.D. at 14. In no event should GWU simply have "denied" this Request, in light of the explanation subsequently offered by GWU in its Motion to Compel briefing. This Request should be deemed admitted.

GWU's response to Interrogatory 10 is another exercise in evasion, particularly in light of the fact that GWU has denied part-ownership of GWUH and has refused to produce any documents concerning its relationship to GWUH, MFA or these entities' employees. Referring to RFA 30 (just discussed), Interrogatory 10 states: "If you deny this Request, please describe

GWU's legal relationship to GWUH.  Ex. A at 10.  In response, GWU essentially restated the question:  "Defendant GWU has a legal and contractual relationship with District Hospital Partners, L.P."  Ex. B at 9.  GWU's response is plainly insufficient – it does not answer the question, which requests a <u>description</u> of the legal relationship, and which pertains to GWU's legal relationship with <u>GWUH</u>, not DHP.[7]  Plaintiff is entitled to a substantive, good-faith response from GWU, rather than a mere restatement of the question posed.

       **E.**       **GWU's Evasive And Improper Responses Regarding The Conduct Of GWU Entities, Including The GWU Police, The GWU Dean Of Students' Office, And The GWU SACC.**

Plaintiff's independent investigation uncovered that several GWU entities – including the GWU Police Department, the GWU Dean of Students' Office, and the GWU Sexual Assault Crisis Consultation Team ("SACC") – make representations on the Internet concerning the handling of sexual assault cases at GWU, including the role of GWUH in such cases.  As the Court is aware, GWUH's capabilities and role with respect to handling sexual assault patients is a central issue in Plaintiff's case against the GW Defendants.  Thus, in addition to her initial document requests to GWU regarding information from these entities (requests to which GWU has never responded fully), Plaintiff posed several RFAs, Interrogatories and Supplemental RFPs, at issue here, concerning those GWU entities and representations made by them.

Despite that Plaintiff's additional requests largely pertained to basic issues of control and authenticity, GWU generally refused to give straightforward or proper responses.  The failings of GWU's responses are discussed below, first with respect to the GWU Police Department and then the Dean of Students and the SACC.  Because in many cases GWU repeated the same

---

[7] To the extent that GWU's response intends to refer to GWUH synonymously as DHP, GWU has completely undercut its hairsplitting rationale for refusing to admit part-ownership of GWUH in RFA 30.

deficiencies with the requests pertaining to each GWU entity, and in the interest of brevity, Plaintiff cross-references to the initial arguments concerning the GWU Police where possible.

1.     **GWU Police Department (RFAs 1-4; Interrogatories 1-2, Supplemental RFPs 1-2).**

RFA 1, Interrogatory 1, and Supplemental RFP 1.  GWU has "denied" that the GWU Police Department "is an entity owned and controlled by GWU."  Ex. B at 1.  Plaintiff posed this Request to establish the basic and uncontroversial proposition that representations made by the GWU Police Department are in fact representations attributable to GWU.  Although GWU's written RFA response simply states "denied," during the parties' meet and confer, counsel for GWU stated that its denial of RFA 1 was based upon its interpretation of the Request's use of the word "entity" to mean "separate legal entity," and the fact that the Police Department is not a separate legal entity.  *Cf. id.* at 5 (expressly providing this explanation for denying that the GWU Dean of Students office is an entity owned and controlled by GWU).  In light of GWU's explanation during the meet and confer as to the undisclosed basis for its denial, Plaintiff requested that GWU revise its response to RFA 1 to reflect what Rule 36(a)(4) requires:  a qualified denial, based on its claimed interpretation of "entity," and a response to Plaintiff's Request in substance – *i.e.*, that GWU does own and control its Police Department.

Although GWU stated that it would supplement its RFA Responses, GWU has now refused to do so.  Because GWU has admitted in the parties' conference that an outright "denial" of RFA 1 is not accurate and is based only on GWU's undisclosed interpretation of "entity," and thus, at most, should be a qualified denial, the Court should deem this Request admitted.[8]

---

[8] Anticipating a potentially evasive response to RFA 1, Plaintiff asked GWU, in Interrogatory 1, if it denied ownership and control of its Police Department, to "describe the relationship between the GWU Police Department and GWU."  Ex. A at 4.  GWU did not respond in substance, stating that the Police Department "is a department within The George Washington University,"

RFA 2. RFA 2 requested that GWU admit that the domain for the GWU Police Department – http://gwired.gwu.edu/upd/ – "is the GWU Police Department website. Ex. A at 4. GWU refused to admit the basic fact, claiming as follows:

> **RESPONSE:** Denied. It is admitted that http://gwired.gwu.edu/upd/ is a website that provides information about the GWU Police Department, but there are many links and thus, there are many other web sites that similarly provide information. Thus, this web site is not "the" GWU Police Department website.

Ex. B at 1. GWU's response is evasive and not a good-faith response to the substance of Plaintiff's request. Plaintiff respectfully submits that the identified website is in fact "the" homepage and root website for all of the GWU Police Department webpages. In any event, to the extent that GWU took issue with Plaintiff's use of the word "the," it should have explained its objection and then admitted what it could admit in good faith – *i.e.*, that the identified URL is in fact "a" GWU Police Department website. *See* Fed. R. Civ. P. 36(a)(4).

During the parties' conference, counsel for GWU expressly stated that he would speak to his client about this response and consider supplementing to make clear that the identified web domain is in fact a GWU website. GWU has refused to supplement. In light of GWU's evasive and hairsplitting response, RFA 2 should be deemed admitted.

RFA 3. RFA 3 asked GWU to admit what should be the uncontroversial fact that the specific GWU Police webpage discussing the availability of sexual assault medical forensic

---

but not addressing whether GUW owns and controls its Police Department. Ex. B at 1. To the extent that the Court does not deem RFA 1 admitted, the Court should order GWU to respond to Interrogatory 1 in a non-evasive manner that addresses whether GWU in fact owns and controls its Police Department. In addition, to the extent that the Court does not deem RFA 1 admitted, it also should order GWU to respond to Supplemental RFP 1, which requested documents supporting GWU's description of its relationship to the GWU Police Department. To the extent that GWU is claiming that it somehow does not own and control its own Police Department, and thus is not responsible for official representations made by the GWU Police Department, Plaintiff is entitled to test GWU's claims, including through this Supplemental RFP.

examinations at GWUH (before the alteration by GWU), attached as Exhibit A to Plaintiff's Requests, "is a webpage controlled by GWU." Ex. A at 5. Incredibly, GWU denied this fact. Ex. B at 2.

During the parties' meet and confer, counsel for GWU claimed that it was possible that unauthorized persons placed content on the GWU Police website at issue, and that this was the supposed basis for GWU's denial. Plaintiff reminded GWU's counsel of the duty of reasonable investigation under Rule 36, and GWU's counsel thereafter acknowledged that he needed to revisit this issue with his client, so that a reasonable investigation could be performed as to whether this webpage is controlled by GWU or not. GWU has refused to provide any supplementation concerning RFA 3. GWU's response to this Request is a perfect example of how GWU has obstructed Plaintiff's efforts to obtain the most straightforward admissions in order to narrow the contested issues for trial. Moreover, GWU's response is belied by its own recent actions in directly controlling the webpage at issue by materially altering that webpage while Plaintiff's Requests were pending. Accordingly, this Request should be deemed admitted.

RFA 4, Interrogatory 2, and Supplemental RFP 2. Finally, Plaintiff posed three related discovery requests concerning any changes made "between December 9-10, 2006 and the date of these Requests" to the key GWU Police Department webpage concerning the availability of sexual assault medical forensic examinations at GWUH. Ex. A at 5.

These are the requests and responses at issue:

**Request 4:** Admit that http://gwired.gwu.edu/upd/index.gw/Site_ID/24/Page_ID/1644 has not changed between December 9-10, 2006 and the date of these Requests.[9]

**RESPONSE:** Denied.

---

[9] The title of this webpage is: "GW and DC Area Information and Services for Survivors of Sexual Assault."

**Interrogatory 2:** If you deny this Request, please describe how this website has changed in the time period designated.

**ANSWER:** Objection. This Interrogatory is ambiguous, vague, overly broad and unduly burdensome. Defendant GWU cannot begin to describe the multiple ways that the above-referenced website has changed from December 9, 2006 to present.

**Supplemental Request for Production 2:** All documents supporting your Response to Interrogatory 2.

**RESPONSE:** Objection. <u>See</u> Answer to Interrogatory No. 2.

Ex. B. at 2.

During the parties' meet and confer, Plaintiff explained to counsel for GWU that these responses did not appear to be based on reasonable investigation or good faith, as required by Federal Rule 36(a)(4), among others. Indeed, after receiving GWU's responses, using an Internet website called the "Wayback Machine" that stores old versions of webpages, *see* http://www.archive.org/index.php, counsel for Plaintiff was able to compare the September 2008 version of the GWU website identified in RFA 4 (and attached to Plaintiff's Requests) with a version of that same website from September 8, 2006. Ex. D (September 2006 version: http://web.archive.org/web/20060908201156/http://gwired.gwu.edu/upd/index.gw/Site_ID/24/Page_ID/1644/). A comparison of those two versions demonstrates that there were only a few minor changes to that website between December 2006 and the date of Plaintiff's Requests – mostly changes regarding contact information. Indeed, the only significant changes that took place on the website since September 2006 were the key alterations made by GWU that <u>postdated</u> Plaintiff's Requests.

In any event, what Plaintiff's independent investigation made clear – as counsel for Plaintiff informed GWU's counsel during the parties' conference – is that the webpage at issue changed minimally during the time period indicated in these requests. Thus, GWU's statement

in its response to Interrogatory 2 that "Defendant GWU cannot begin to describe the multiple ways that the above-referenced website has changed from December 9, 2006 to the present," Ex. B at 2, is false and not based on reasonable investigation. Similarly, GWU has no good faith basis for refusing to produce documents concerning the few alterations to the website at issue from December 9, 2006 until the time of Plaintiff's Requests, as well as documents related to GWU's subsequent alterations after Plaintiff's Requests. *See* Ex. B at 2 (GWU Response to Supplemental RFP 2). Although GWU's counsel represented in the parties' conferences that GWU maintains no documents or records regarding changes to its websites, that is simply impossible to believe. Corporate websites do not just appear and disappear without any correspondence, backup material and other documentation. Moreover, GWU had a clear duty to retain any such documentation that existed since this lawsuit was filed, and certainly since Plaintiff's specific discovery requests relating to such documentation have been outstanding.

GWU has turned the discovery rules on their head by responding falsely and without reasonable investigation to Interrogatory 2 and Supplemental RFP 2, both of which seek information readily available to GWU. GWU's improper conduct has unfairly forced Plaintiff to incur the needless costs of demonstrating, through complicated Internet searches, that GWU's answers concerning its own websites and documents are demonstrably wrong. GWU should be ordered to perform a reasonable investigation and respond substantively and in good faith to Interrogatory 2 and Supplemental Request for Production 2.

>    **2. GWU Dean of Students' Office (RFAs 16-22, Interrogatory 8, Supplemental RFP 8).**

RFAs 16-19, Interrogatory 8 and Supplemental RFP 8. Plaintiff propounded RFAs 16 through 19, Interrogatory 8 and Supplemental RFP 8 to GWU regarding the GWU Dean of Students' website (http://gwired.gwu.edu/dos) and, in particular, a webpage within that website

showing that GWU students are transported to GWUH in cases involving sexual assault (http://gwired.gwu.edu/dos/Policies/ResourcesforRespondingtoViolence/). *See* Ex. A at 8-9. These discovery requests precisely paralleled Plaintiff's discovery regarding the GWU Police website just discussed, and GWU's responses were similarly incomplete, evasive and not based on reasonable investigation. *See* Ex. B at 5-6. In the interest of brevity, Plaintiff incorporates by reference her arguments concerning the GWU Police website discovery requests, *see supra* Section II.E.1, and here addresses two slight differences in GWU's responses.

First, for RFA 16, GWU did not simply deny that the GWU Dean of Students' Office "is an entity owned and controlled by GWU" – as GWU did with respect to its Police Department – but instead denied the Request and then stated that the Dean of Students' Office "is not a separate legal entity, but rather an office or department within the university." Ex. B at 5. During the parties' meet and confer, Plaintiff informed GWU that this response was inadequate, first of all, because the Request used the term "entity," not "separate legal entity," as GWU unreasonably chose to interpret the RFA. Moreover, even assuming GWU's unreasonable interpretation, its response to RFA 16 is inadequate because it is a partial denial that does not admit the portion of the RFA that GWU could admit, and because it does not meet the substance of Plaintiff's Request – *i.e.*, whether GWU owns and controls its Dean of Students' Office. *See* Fed. R. Civ. P. 36(a)(4).

Second, with respect to RFA 19, Interrogatory 8 and Supplemental RFP 8 – which request information concerning any changes made to a key GWU Dean of Students' website concerning sexual assault – GWU's responses are even more egregious than with respect to the GWU Police Department. First, GWU has <u>denied</u> that the key website at issue – http://gwired. gwu.edu/dos/Policies/ResourcesforRespondingtoViolence/ – "has not changed between

December 9-10, 2006 and the date of these Requests." Ex. B at 6. However, the GWU Police webpage discussed above (which did have a few minor changes in that time period), Plaintiff's counsel's independent investigation through the Wayback Machine website has shown that the Dean of Students' website at issue has not changed between September 2006 and the present time. *See* Ex. E (September 2006 version: http://web.archive.org/web/20060903165732/ http://gwired.gwu.edu/dos/Policies/ResourcesforRespondingtoViolence/). Thus, not only should GWU have admitted RFA 19 because there were in fact no changes to the GWU website at issue, but there can be no good-faith basis for GWU's contention, in response to Interrogatory 8, that "Defendant GWU cannot begin to describe the multiple ways that the above-referenced website has changed from December 9, 2006 to the present," Ex. B at 6, when, in fact, that website had not changed during that time period.

During the parties' conference, counsel for Plaintiff informed GWU of the results of her independent investigation and the clear implication that GWU's responses to these discovery requests were false and not based on reasonable investigation. Counsel for GWU agreed to review the issue with his client and supplement if needed, but now has refused to supplement. GWU's responses are plainly insufficient, evasive and unsupported by reasonable investigation, and thus the RFAs should be deemed admitted and GWU should be ordered to respond to the other Requests.

RFAs 20-22. These three RFAs all pertain to certain statements made or not made by the GWU Dean of Students' office. *See* Ex. A at 9. For all of these RFAs, GWU claimed to be "without sufficient information to admit or deny this request," and thus denied the RFAs, further stating that "[i]t is unknown what, if any, statements GWU's Dean of Students personally has made regarding" the topics at issue. Ex. B at 6-7. During the parties' meet and confer, Plaintiff

explained that these responses were inadequate and not based on reasonable investigation. GWU claimed that there was some confusion as to whether Plaintiff was inquiring about the Dean of Students as an individual, or the Dean of Students' Office. Although Plaintiff explained that the supposed confusion did not justify GWU's incomplete responses, Plaintiff also stated that the Request pertained to both the Dean of Students and his or her Office. GWU has refused to supplement these responses.

RFAs 20 through 22 should be deemed admitted because GWU has responded based on a claimed lack of knowledge but has not stated that GWU "has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed. R. Civ. P. 36(a)(4). Notably, the "duty to make 'reasonable inquiry' includes both an investigation of officers, administrators, agents and employees who may have information which may lead to a response and a review of relevant documents and regulations." *Tequila Centilela*, 242 F.R.D. at 15. Plainly, GWU should be able determine what representations were or were not made by its own Dean of Students Office (including by the Dean of Students) regarding the handling of sexual assault cases, particularly where, as here, the Dean of Students has a website addressing the topic of responding to sexual assault. Because GWU's responses are insufficient and because GWU has refused to supplement, RFAs 20 through 22 should be deemed admitted.

### 3. GWU SACC (RFAs 23-29, Interrogatory 9, Supplemental RFP 9).

RFAs 23 through 29, Interrogatory 9 and Supplemental RFP 9 all pertain to GWU's Sexual Assault Crisis Consultation Team ("SACC") – both the SACC website and statements made by SACC. *See* Ex. A at 9-10. These requests (and GWU's responses) are nearly identical to those concerning the GWU Dean of Students. *See* Ex. B at 7-8. For the reasons discussed in the two preceding subsections, GWU's responses to RFAs 23 through 29, Interrogatory 9 and

Supplemental RFP 9 are improper and insufficient. *See supra* Section II.E.1-2. (Note that, like the Dean of Students' website at issue above, the SACC website at issue in Plaintiff's requests – which GWU claims has changed in "multiple ways" such that "GWU cannot begin to describe" such changes, Ex. B at 8 – appears <u>not to have changed</u> since December 2006. Ex. F (September 2006 version from Wayback Machine, http://web.archive.org/web/20060909025931/http://gwired.gwu.edu/saccteam/support/medical/.). Thus, for the reasons discussed above, RFAs 23 through 29 should be deemed admitted and GWU should be ordered to respond to Interrogatory 9 and Supplemental RFP 9.

F.     **GWU Has Refused To Correct Through Supplemental Responses Its False And Evasive Responses Regarding Doctors Lang And Khozeimeh.**

Several of GWU's responses with respect to the role of Doctors Lang and Khozeimeh and GWU's relationship to those individuals are incomplete and evasive. Others are facially inconsistent with GWU's Responses to other Requests and therefore plainly wrong. Plaintiff brought these inconsistencies to GWU's attention during the meet and confer process, but rather than supplementing in good faith (as counsel for GWU promised to do), GWU has now refused to supplement. Plaintiff should be granted relief with respect to all requests at issue.

1.     **Supplemental RFP 11 (Documents Concerning GWU's Relationship With Dr. Lang).**

GWU has denied that Dr. Lang was an employee of GWU in December 2006. Ex. B at 9. Then, in response to Interrogatory 13 (requesting a description of the relationship between GWU and Dr. Lang), GWU stated that Dr. Lang was an employee of Medical Faculty Associates ("MFA"), "a professional group that among other things provides physicians to GWUH for the purpose of training George Washington University residents, and in some cases, teaching its medical students." *Id.* at 9-10. Plaintiff's Supplemental RFP 11 requested "[a]ll documents

supporting your response to Interrogatory 13" – *i.e.*, documents regarding GWUH's description of its relationship with Dr. Lang.  Ex. A at 11.

GWU did not object to Supplemental RFP 11, but stated "Defendant GWU will supplement this response."  Ex. B at 10.  GWU has not supplemented this response.  Although GWU confirmed that it would provide a supplement during the parties' meet and confer, counsel for GWU has since stated that it "will just respond to [Plaintiff's] motion instead of any attempt at further supplementation [sic]."  Ex. C.  Moreover, as Plaintiff explained in her first Motion to Compel briefing, GWU has refused to provide any documents related to its relationship with MFA or Dr. Lang.  *See* Doc. No. 84 at 23-24; Doc. No. 100 at 7-11.  These documents are plainly relevant and GWU has made no objection to their production with respect to Supplemental RFP 11.  It should therefore be ordered to produce responsive documents.

## 2.    RFA 36 (Dr. Lang's Supervision Of Dr. Khozeimeh).

RFA 36 asked GWU to admit that "Dr. Christopher Lang was acting within the scope of his employment with GWU on December 9-10, 2006, in supervising Dr. Khozeimeh's rendering of medical care to Plaintiff."  Ex. A at 12.  GWU denied this RFA and stated that "Defendant Lang <u>may have been</u> acting within the scope of his employment with MFA and within the scope of MFA's contract with GWU when he supervised Dr. Khozeimeh's care of the plaintiff."  Ex. B. at 10 (emphasis added).

GWU's response does not meet the requirements of the Federal Rules.  GWU could not in good-faith simply deny this RFA because, although it may not directly employ Dr. Lang, GWU apparently does pay Dr. Lang (via MFA) for his work with GWU medicals residents like Dr. Khozeimeh.  Thus, GWU has made a qualified denial.  However, its qualification does not directly state whether Dr. Lang was acting within his contract with GWU or not, but states

instead that he "may have been" so acting – a failure to respond fully, evidently based on a claimed lack of knowledge. However, GWU has not stated, as it must for this incomplete response, that it "has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed. R. Civ. P. 36(a)(4). Plainly, a reasonable investigation by GWU – including a review of the various contractual documents that GWU refuses to produce to Plaintiff concerning its relationship with MFA and Dr. Lang – would have permitted GWU to state whether or not Dr. Lang was acting within the scope of his contract with GWU. Because GWU's response to RFA 36 is insufficient and because GWU has refused to supplement, this Request should be deemed admitted.

### 3. Interrogatories 14-15 (Training Of GWU Medical Students And Residents Regarding Sexual Assault).

GWU has denied, in response to RFAs 37 and 38, that it does not train its medical students and residents "with respect to the proper care of sexual assault victims." Ex. B at 10, 11. Accordingly, Plaintiff posed the following Interrogatories 14 and 15, with respect to GWU medical students and residents, respectively: "If you deny this request, please describe the training that GWU provides to its medical students[/residents] with respect to the proper care of sexual assault victims." Ex. A at 12. For each of these Interrogatories, GWU responded:

> Without waiving said objection, The George Washington University Medical School is a duly accredited medical school that teaches its students generally[/has a duly accredited residency program for the training of its residents] in all aspects of caring for patients who have been assaulted. Such teaching is not necessarily specific to sexual assault, but rather all types of physical and/or mental assaults. The specific curricula setting forth such general teaching in assault care and treatment is too voluminous to delineate in this answer.

Ex. B at 10, 11.

GWU's responses to Interrogatories 14 and 15 are evasive and incomplete. They do not, as the Interrogatory requests, <u>describe</u> the training provided with respect to <u>sexual assault</u>.

Rather, these answers merely restate the premise of the question – *i.e.*, that GWU allegedly provides training to its medical students and residents concerning sexual assault patients.[10] GWU's claims of burden are unsubstantiated and difficult to credit, particularly because they do not appear to have been based on any reasonable investigation, and, in any event, do not excuse GWU's failure to provide any substantive response whatsoever to Plaintiff's request for a description of training. Plaintiff did not ask GWU to delineate each and every curricular item, *cf.* Ex. B at 10-11, but rather asked GWU for a good-faith description of its supposed training.

GWU's refusal to answer the questions posed and <u>describe</u> the training allegedly provided is all the more troubling because GWU has refused to provide documents concerning such training and curricula, as Plaintiff has long requested. *See* Doc. No. 84 at 19-21; Doc. No. 100 at 16-17. Based on GWU's stonewalling regarding these documents and its refusal to give a complete, non-evasive answer to Interrogatories 14 and 15 (or to supplement, as promised), Plaintiff is left with no way to test GWU's repeated assertion that it does in fact train its medical students and residents such as Dr. Khozeimeh regarding sexual assault cases. That issue is of plain relevance to this case, which, among other things, includes a claim of negligent <u>training</u> against the GW Defendants. GWU should be compelled to respond to these Interrogatories and produce responsive documents.

> **4.      RFAs 39, 41-42, 47 and Interrogatory 16 (Training Of GWU Medical Residents Regarding Specific Sexual Assault Topics).**

GWU's responses to Plaintiff's RFA 39 and Interrogatory 16 are as follows:

**Request 39:** Admit that GWU does not train its medical residents (including its emergency medicine residents) to conduct sexual assault medical forensic examinations.

---

[10] In fact, GWU's answers suggest that it may have improperly denied RFAs 37 and 38, as GWU states in its responses to these Interrogatories that the training it provides "is <u>not</u> necessarily specific to sexual assault." Ex. B at 10, 11 (emphasis added).

**RESPONSE:** Defendant GWU does not train residents, but rather contracts with MFA and other attending physicians to provide such training. Consequently, this request is denied as phrased.

**Interrogatory 16:** If you deny this Request, please describe the training that GWU provides to its medical residents with respect to conducting sexual assault medical forensic examinations.

**ANSWER:** <u>See</u> response above.

Ex. B at 11.

GWU's responses to these Requests are improper, incomplete and evasive. With respect to RFA 39, which asks GWU to admit that it does <u>not</u> train its medical residents concerning sexual assault medical forensic examination, GWU's own response shows that GWU should have <u>admitted</u> – not denied "as phrased" – this Request. As GWU itself states, "GWU <u>does not train</u> residents." Ex. B at 11 (emphasis added). Thus, GWU should have admitted RFA 39. GWU's response is contrary to Rule 36's requirement that "the answer must specify the part admitted and qualify or deny the rest." Fed. R. Civ. P. 36(a)(4). GWU's response to RFA 39 also does not "fairly respond to the substance of the matter," as the Rules require. *See id.* Finally, although GWU's explanation indicates that it should have admitted this Request, for other materially similar Requests, GWU denied the Requests (rather than denying "as phrased"). *See, e.g.*, Ex. B at 10-11 (Responses to RFAs 37-38). Thus, if in fact GWU's position is that it <u>does</u> provide training, it should have simply denied RFA 39 and provided Plaintiff the clear record to which the Rules entitle her.[11]

When Plaintiff's counsel conferred with counsel for GWU regarding RFA 39, GWU counsel appeared to recognize the internal inconsistency of GWU's response and stated that

---

[11] In addition, RFA 39 specifically concerns training regarding sexual assault medical forensic examinations. However, GWU's general answer and qualified denial is non-responsive to the specific type of training at issue in this Request.

GWU would make a good-faith effort to supplement. Because GWU's response is deficient and GWU has refused to supplement, this Request should be deemed admitted.

GWU's response to Interrogatory 16 is equally deficient. It contains no substance, but apparently cross-references some unspecified "response above." To the extent GWU is purporting to reference its responses to Interrogatories 14 and 15, for the reasons discussed above, those responses are evasive and deficient. Moreover, neither of those responses pertain to sexual assault medical forensic examinations – the subject of Interrogatory 16.

Finally, for RFAs 41, 42 and 47 – which ask GWU to admit that GWU did not train Dr. Khozeimeh in particular (rather than medical residents, in general) regarding certain sexual assault issues – GWU cross-references its responses to RFAs 38 and 39. *See* Ex. B at 12. However, as just noted, GWU's response to RFA 39 is deficient and, in fact, indicates that GWU should be admitting – not denying – Requests 41, 42 and 47, because GWU has stated that "it does not train residents." *Id.* at 11. In any event, Plaintiff is entitled to a clear record, and thus GWU should have simply admitted or denied RFAs 41, 42 and 47. Because GWU has failed to provide a clear record and failed to supplement, these RFAs should be deemed admitted.

### 5. RFAs 43-44, 48 (Training Of Dr. Lang).

GWU's responses to RFAs 43, 44 and 48 appear to be typographical errors and are directly contrary to the RFA response that GWU cross-references. Specifically, RFAs 43, 44 and 48 ask GWU to admit that it did <u>not</u> train Dr. Lang regarding certain sexual assault matters. *See* Ex. A at 13. For each of these RFAs, GWU responded: "Denied. <u>See</u> Response to Request number 40." Ex. B at 12-13. In turn, GWU's response to RFA 40, which asked GWU to admit that it does not train GWUH attending physicians (like Dr. Lang) regarding sexual assault, stated: "Admitted. Defendant GWU does not train attending physicians." *Id.* at 11-12.

It is plainly GWU's position from its admission of RFA 40 that it does not train attending physicians such as Dr. Lang. It is equally clear that GWU's <u>denials</u> of RFAs 43, 44 and 48 – which cross-reference GWU's response to RFA 40 – should have been admissions, just as the response to RFA 40 was an unqualified admission. During the parties' conference, Plaintiff brought this issue to GWU counsel's attention, and he confirmed that the responses to RFAs 43, 44 and 48 appeared to be typographical errors. GWU's counsel stated that GWU would include revised answers in its supplemental responses. However, GWU has not produced any supplemental responses, contrary to its stated intent. In light of the lack of a supplement, the plainly erroneous responses and the admission by GWU's counsel that these responses do appear to be typographical mistakes, the Court should deem RFAs 43, 44 and 48 admitted.

### 6.  RFA 51 (Dr. Khozeimeh's Contact With Police).

RFA 51 asks GWU to admit that Dr. Khozeimeh "did not request of MPD that MPD provide a 'rape kit' for the collection of forensic evidence from Plaintiff on December 9-10, 2006)." Ex. A at 14. GWU responded as follows:

> **RESPONSE:** Denied. According to her deposition testimony, "the police had been contacted for a rape kit." <u>See</u> Transcript of the deposition of Nini Khozeimeh, M.D., at p. 34.

GWU's Response is wholly deficient and not based on reasonable investigation because – as the deposition transcript referenced by GWU makes plain – the portion of Dr. Khozeimeh's deposition cited by GWU in support of its denial <u>did not pertain to Plaintiff's case</u>. *See* Ex. G at 33-34. Rather, GWU quotes from Dr. Khozeimeh's testimony involving her handling of a <u>completely different patient</u> at GWUH whom Dr. Khozeimeh treated in <u>April 2008</u>. *Id.*[12]

---

[12] Equally disturbing, the portion of the deposition cited by GWU makes clear that with respect to the April 2008 patient, Dr. Khozeimeh had no contact with the police and did not request a forensic kit from the police. *See* Ex. G at 33-34. ("Q: Did you in that case personally speak to

Plaintiff's counsel brought this error to the attention of GWU's counsel during the parties' conference, and GWU's counsel stated that GWU would review the issue and provide a supplemental response.  However, GWU's counsel has subsequently refused to do so.  Accordingly, the Court should deem GWU's insufficient and this Request admitted.[13]

## III.  THE COURT SHOULD GRANT THE MOTION AND AWARD PLAINTIFF HER FEES AND COSTS.

As explained, GWU either failed to respond or failed to respond fully and non-evasively to the discovery requests at issue, and GWU's objections lack merit.  *See* Fed. R. Civ. P. 37(a).  What is more, after the parties' meet and confer, counsel for GWU agreed to take nearly all of these issues back to the client, but then, on December 17, 2008, counsel for GWU made an abrupt about-face that forced Plaintiff to file this Motion:  "I will just respond to your motion instead of any attempt at further supplementation [sic]."  Ex. C.

For the reasons explained above, the Court should order the RFAs at issue admitted and should order GWU to respond to the Interrogatories and Supplemental RFPs identified above.  Moreover, the Court should award Plaintiff her fees and costs related to her Motion.  *See* Fed. R. Civ. P. 37(a)(5); *D.L.*, 251 F.R.D. at 47 ("the Court must award expenses upon granting a motion to compel disclosure unless one of the specific bases for refusing to make such an award is found to exist").

---

the police?  A:  I did not.").  Thus, even had this testimony pertained to Plaintiff – which it clearly does not – that testimony does not support GWU's denial of Plaintiff's RFA.

[13] As the relevant portions of Dr. Khozeimeh's testimony demonstrate, she did not request a forensic kit from the police and did not even speak to the police directly.  *See* Ex. G at 148, 201-02.  Accordingly, GWU should have simply admitted this Request in the first place.

## CONCLUSION

For the above reasons, Plaintiff respectfully requests that the Court grant the Motion,

deem the RFAs at issue to be admitted, compel GWU to respond to the Interrogatories and RFPs

at issue, and award Plaintiff her fees and costs related to this Motion.

Dated:  February 12, 2009                     Respectfully submitted,

                                              /s/ Kathleen R. Hartnett
                                              Bruce V. Spiva, D.C. Bar. No. 443754
                                                 bspiva@spivahartnett.com
                                              Kathleen R. Hartnett, D.C. Bar. No. 483250
                                                 khartnett@spivahartnett.com
                                              SPIVA & HARTNETT LLP
                                              1776 Massachusetts Avenue, N.W.,
                                              Suite 600
                                              Washington, D.C. 20036
                                              Telephone:  (202) 785-0601
                                              Facsimile:  (202) 785-0697

                                              *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Plaintiff's Motion to Determine the Sufficiency of Defendant The George Washington University's Responses to Plaintiff's First Set of Requests for Admission and Interrogatories, and Supplemental Requests for Production was served on February 12, 2009, by electronic filing with the Court's ECF system, upon:

Thomas V. Monahan, Jr.
  tvm@gdldlaw.com
Adam Kelley
  axk@gdldlaw. com
GOODELL, DEVRIES, LEECH & DANN, LLP
One South Street, Suite 2000
Baltimore, MD 21202

Dwayne Jefferson
  dwayne.jefferson@dc.gov
OFFICE OF THE ATTORNEY GENERAL
  FOR THE DISTRICT OF COLUMBIA
441 4th Street, N.W., 6th Floor South
Washington, D.C. 20001

Larry D. McAfee
  lmcafee@gleason-law.com
Damien Banks
  dbanks@gleason-law.com
GLEASON, FLYNN, EMIG & FOGLEMAN,
  CHARTERED
11 North Washington Street, Suite 400
Rockville, MD 20850

Robert W. Goodson
  robert.goodson@wilsonelser.com
Deidre L. Robokos
  deidre.robokos@wilsonelser.com
Christine M. Costantino
  chrissy.costantino@wilsonelser.com
Rachel Viglianti
  rachel.viglianti@wilsonelser.com
WILSON ELSER MOSKOWITZ EDELMAN &
  DICKER, LLP
700 11th Street, N.W., Suite 400
Washington, D.C. 20001

Karen R. Turner
  karen.turner@hacdlaw.com
Ami Specktor
  ami.spector@hacdlaw.com
HAMILTON ALTMAN CANALE & DILLON LLC
4600 East-West Highway, Suite 201
Bethesda, MD 20814



/s/ Kathleen R. Hartnett
Kathleen R. Hartnett