UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEXANDRIA McGAUGHEY, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) Civil Case No. 07-1498 (RJL) |
| DISTRICT OF COLUMBIA, *et al.*, | ) ) ) ) |
| Defendants. | ) |

MEMORANDUM OPINION
(August 25, 2010) [#189]

Plaintiff Alexandria McGaughey ("plaintiff" or "McGaughey") has filed this diversity action against eight defendants, including the District of Columbia ("District"), for the events stemming from her attempts to receive medical treatment at various hospitals in the District of Columbia following her alleged drugging and sexual assault in December 2006.

McGaughey has filed three negligence claims against the District: Count VII, which alleges negligent hiring, training, and supervision of Metropolitan Police Department ("MPD") officers; Count VIII, which alleges negligent interference in McGaughey's medical treatment; and Count IX, which alleges negligent failure to investigate McGaughey's alleged sexual assault. *See* Amend. Compl. ¶¶ 107-120. On August 5, 2009, the District moved for summary judgment on these claims. Def.'s Mot. Summ. J. ("Def. Mot.") [#189]. On December 31, 2009, the instant motion, among others, was referred to Magistrate Judge Deborah A. Robinson for report and

1

recommendation pursuant to Local Civil Rule 72.3. *See* Order [#239]. On February 24, 2010, Magistrate Judge Robinson issued her Report & Recommendation, recommending that the District's motion for summary judgment be denied. *See* Report & Recommendation [#245]. On March 10, 2010, the District objected to Magistrate Judge Robinson's recommendation. *See* Def.'s Objection ("Def. Obj.") [#253].

Local Civil Rule 72.3(c) provides that the Court "shall make a *de novo* determination of those portions of a magistrate judge's findings and recommendations to which objection is made." LCvR 72.3(c). The Court "may accept, reject, or modify, in whole or in part, the findings and recommendations of the magistrate judge." *Id.* Though not precise in its objections, the District appears to object to all aspects of Magistrate Judge Robinson's report.[1] Accordingly, this Court reviews the entire Motion for Summary Judgment *de novo*. After careful consideration of the pleadings, the relevant law, and the entire record herein, the Court GRANTS the District's Motion for Summary Judgment for the following reasons.

---

[1] Specifically, the District argues that Magistrate Judge Robinson's "most fundamental error" was her finding that punitive damages were to be determined by the factfinder. Def. Obj. 7. Second, the District contends that Magistrate Judge Robinson erred in resting her recommendation of denial on the finding whether McGaughey had reported sexual assault to the MPD was disputed. *Id.* 9. The District also objects to her failure to address whether McGaughey proffered facts supporting the existence of a "special relationship" between herself and the police, contending that she also erroneously applied the law on this issue, *id.* 10-11, and to her failure to address the District's standing and discretionary function arguments, *id.* 15. It also objects to her finding that causation is a question for the jury. *Id.* 14. Finally, the District claims that her failure to address plaintiff's damages claims—or what it contends is a lack thereof—is further basis for the Court to reject Magistrate Judge Robinson's report and recommendation. *Id.* 17-18.

2

## BACKGROUND

Because the facts of this case are complicated and involve many defendants, the following is a summary of those facts that pertain to the District as a defendant. All inferences are drawn, as they must be, in favor of the plaintiff.

On December 9, 2006, McGaughey visited Howard University Hospital ("HUH") to be seen for her alleged sexual assault the night before and to have a rape kit performed. Pl.'s Ex. 46, McGaughey's HUH Medical Records. This was her second visit to HUH since the alleged assault. *Id.* At some time during her visit, an MPD officer responded in person to HUH. Pl.'s Ex. 22, Alexandria McGaughey Dep. 141:2-9, Apr. 1, 2008 ("A. McGaughey Dep."). The officer then called a Sexual Assault Unit ("SAU") detective, who spoke with McGaughey over the phone. Pl.'s Ex. 37, Vincent Spriggs Dep. 224:13-225:13, Oct. 23, 2008 ("Spriggs Dep."); A. McGaughey Dep. 330:2-13. The detective informed either (or both) McGaughey and/or the officer at the scene that no rape kit would be brought to the hospital. Spriggs Dep. 225:16-226:7; A. McGaughey Dep. 123:22-124:8. An MPD Special Order required detectives responding to reports of sexual assault to respond in person at the scene. Pl.'s Ex. 67, Sexual Assault Nurse Examiners Program (SANE), Special Order, Metropolitan Police, Apr. 2, 2001; *see also* Pl.'s Opp'n Ex. 8, MPD, Sexual Assault Unit, Standard Operating Procedures, Jan. 14, 2003; Pl.'s Opp'n Ex. 5, Ginette Leveque Dep. 39:5-13, Apr. 14, 2008. Plaintiff's sister, Raegen, who was present at HUH, then called MPD again, and was instructed to call 911, which she did. Pl.'s Ex. 23, Raegan McGaughey Dep. 135:20-136:20, Mar. 31, 2008. Two different officers then responded to HUH in person, where they proceeded to contact

the SAU, reaching a different SAU detective. Pl.'s Ex. 42, Elgin Wheeler Dep. 115:1-13, Oct. 3, 2008 ("Wheeler Dep."). That SAU detective then contacted his squad supervisor, and informed him that the officers at the scene reported that McGaughey was unsure if she was assaulted, that she was giving "hypothetical answers to the uniform officer to get a sexual assault kit done," and that a prior SAU detective had interviewed her and determined that no crime was reported. Wheeler Dep. 116:8-117:5; Pl.'s Ex. 31, Kevin Rice Dep. 181:14-182:7, Oct. 14, 2008 ("Rice Dep."). Based on this information, the squad supervisor determined that the SAU would not open a case, and that message was relayed, through the detective and officers, to plaintiff. Rice Dep. 184:22-185:14; A. McGaughey Dep. 343:5-8. The officers then took a report of the encounter. Pl.'s Opp'n Ex. 4, Dec. 9, 2006 Police Report.

After failing to obtain a rape kit at HUH, plaintiff then sought treatment at George Washington University Hospital ("GWUH"). A. McGaughey Dep. 151:10-12. There, McGaughey spoke to yet another MPD detective over the phone, who told her that she had contacted her supervisor but McGaughey's case had been closed, and that therefore McGaughey could not receive a rape kit. *Id.* 344:1-345:6.

## DISCUSSION

Summary judgment is proper where the evidence shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing same). The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. A party

opposing a motion for summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Though the Court must draw all justifiable inferences in favor of the non-moving party in deciding whether there is a disputed issue of material fact, "[t]he mere existence of a scintilla of evidence in support of the [non-movant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

The District argues that it is protected from suit on McGaughey's negligence claims by the public duty doctrine. Plaintiff contends that because she has not alleged failure to protect, but instead has alleged affirmative harm by the police, the public duty doctrine is inapposite, and furthermore, that even if the public duty doctrine does apply, she has established a "special relationship" with the police sufficient to be owed a special duty from them. I disagree.

Under the public duty doctrine, the District "owe[s] no duty to provide public services to particular citizens as individuals. Instead, . . . the District's duty is to provide public services to the public at large." *Hines v. District of Columbia*, 580 A.2d 133, 136 (D.C. 1990) (citations omitted). Because an officer's duty is to the public, his subsequent "failure to perform it, or an inadequate or erroneous performance, must be a public and not an individual injury, and must be redressed, if at all, in some form of public

5

prosecution." *Morgan v. District of Columbia*, 468 A.2d 1306, 1310-11 (D.C. 1983) (en banc) (quotations omitted). The public duty doctrine does not extend to mere "ordinary" negligence—for example, mishandling of a police dog, or reckless driving of a police car—for which any person would be answerable. *Warren/Nichol v. District of Columbia*, 444 A.2d 1, 7-8 (D.C. 1981) (en banc). Instead, it covers instances where the plaintiff contends that a defendant police officer "failed to do what reasonably prudent police employees would have done in similar circumstances. *Id.* at 8. The doctrine thus protects government officials against a "novel sort of professional malpractice" by shielding their discretionary decisions and actions taken in an official capacity from suit. *Id.*

There are, however, limited instances where the public duty doctrine does not protect the District from suit. First, where the government is affirmatively responsible for injury through ordinary negligence resulting from the use of its police powers, the public duty doctrine will not apply. *Lisner v. Smith*, 254 F. Supp. 2d 89, 102 (D.D.C. 2003) (finding public duty doctrine inapplicable where claim was that police negligently issued a press release and negligently arrested plaintiff); *see also District of Columbia v. Evans*, 644 A.2d 1008, 1017 n.8 (D.C. 1994) (finding public duty doctrine inapplicable where plaintiff alleged that police negligently shot and killed her epileptic son).

Second, the public duty doctrine does not protect the District from suit if a special relationship between the government and the individual creates a specific legal duty to that individual. *Powell v. District of Columbia*, 602 A.2d 1123, 1128 (D.C. 1992). A special relationship may be established by a "statute prescribing 'mandatory acts clearly

for the protection of a particular class of persons rather than the public as a whole.'" *Id.* at 1129 (quoting *Morgan*, 468 A.2d at 1314); *see Turner v. District of Columbia*, 532 A.2d 662 (D.C. 1987). However, because "[a]gency protocols and procedures, like agency manuals, do not have the force or effect of a statute or an administrative regulation," they are insufficient to give rise to a special relationship. *Wanzer v. District of Columbia*, 580 A.2d 127, 133 (D.C. 1990). Alternatively, a plaintiff can demonstrate a special relationship by showing: (1) direct or continuing contact between the plaintiff and the governmental agency; and (2) justifiable reliance by the plaintiff. *Powell*, 602 A.2d at 1130 (citing *Platt v. District of Columbia*, 467 A.2d 149, 151 (D.C. 1983)). For example, "[a] special relationship undoubtedly exists where an individual assists law enforcement officials in the performance of their duties" or where police otherwise "make 'active use' of a private citizen" in executing their official duties. *Morgan*, 468 A.2d at 1312, 1313. By contrast, however, "a special relationship does not come into being simply because an individual requests assistance from the police." *Id.* at 1313 (citations omitted). "Even a series of contacts over a period of time between a public agency and an injured or endangered person is not enough to establish a special relationship, absent some showing that the agency assumed a greater duty to that person than the duty owed to the public at large." *Wanzer*, 580 A.2d at 132.

  McGaughey argues in the alternative that both instances apply to her case. First, she argues that her claims against the MPD (and therefore, against the District) do not allege a failure to protect her from criminal acts or harm caused by a third party, and therefore, that the public duty doctrine does not apply. Pl.'s Opp'n 25-26. Instead,

McGaughey alleges that the MPD affirmatively harmed her by "improperly insert[ing] themselves into [p]laintiff's treatment and the collection of evidence at the hospital, thereby 'worsening' her injury." *Id.* 28.

However, McGaughey misstates the requirements for application of the public duty doctrine. Though a duty to protect the public from criminal conduct is *one* duty of the MPD, it is not their only duty. For example, providing emergency rescue services is one public duty. *See Miller v. District of Columbia*, 841 A.2d 1244 (D.C. 2004) (applying public duty doctrine to negligent rescue from fire); *Allison Gas Turbine v District of Columbia*, 642 A.2d 841 (D.C. 1994) (applying public duty doctrine to negligent underwater rescue). Responding to reports of alleged crime and making judgment calls about how to allocate investigate resources are two others. *See, e.g., Morgan*, 468 A.2d at 1311. McGaughey's interactions with the police occurred in the police officers' regular performance of their official duties; that is, responding to reports of alleged crime and deciding whether to open an investigation.[2] Though they may have negligently responded to her report of sexual assault, and negligently determined that her case was not a sexual assault case, thereby preventing her from receiving a rape kit, that

---

[2] Magistrate Judge Robinson recommended denial of the District's summary judgment motion because she found a genuine dispute of material fact: namely, whether "any officer of the Metropolitan Police Department receive[d] a report that the Plaintiff had been sexually assaulted[]." Report & Recommendation 7. However, this Court finds that, as argued by the District, this fact was not in dispute, as the District has conceded for the purposes of this motion that the MPD did in fact receive a report that the plaintiff had been sexually assaulted. *See* Def. Obj. 9 ("In seeking dismissal by summary judgment, the District made no material argument to refute [p]laintiff's claim that MPD responded to Howard University Hospital, met with her, and received her sex assault report."); Def.'s Stmt of Facts ¶ 13 ("MPD arrived at Howard University Hospital during plaintiff's second visit, and spoke with her about the sex assault allegations.").

negligence arose in the performance of a police duty. The District's liability is therefore limited by the public duty doctrine.

McGaughey attempts to distinguish her claim from those barred by the public duty doctrine by stating that the police *affirmatively* inserted themselves into her medical treatment. She claims that "MPD's egregious mishandling of [p]laintiff's case also contributed to the delay of her care and treatment by the hospitals (during which time she suffered extreme pain and distress), and to [p]laintiff's severe and longstanding emotional distress from being treated so horribly by MPD." Pl.'s Opp'n 39. However, though the officers may have acted in violation of MPD policy (*see, e.g.*, Pl.'s Ex. 67, Sexual Assault Nurse Examiners Program (SANE), Special Order of the Metropolitan Police, Apr. 2, 2001), they did nothing to affirmatively *prevent* HUH or GWUH from administering a rape kit. Indeed, plaintiff's continuing position in this case has been that the hospitals she attended—both HUH and GWUH—could have performed rape kits regardless of police involvement. Pl.'s Stmt of Facts ¶158. Thus, unless McGaughey can demonstrate a special relationship engendering a special duty to her, her negligence claims against the MPD are barred by the public duty doctrine.

McGaughey argues that her repeated contacts with the police and subsequent justifiable reliance created a special relationship sufficient to entitle her to a special duty from the police. Pl.'s Opp'n 29-33. But again, McGaughey's argument falls short. As in *Warren*, where the plaintiffs repeatedly contacted the police for assistance from a burglary-in-progress, and, when the police negligently responded, were subsequently

raped and tortured, plaintiff's repeated contact with the MPD does not give rise to a special relationship. 444 A.2d at 2-3; *see also Morgan*, 468 A.2d at 1313 (citing cases).

Unfortunately, this is not the first instance where the MPD is accused of acting with regrettable indifference to potential crime victims. *See, e.g., Warren*, 444 A.2d at 1-3. However, as the D.C. Court of Appeals warned then, "the desire for condemnation cannot satisfy the need for a special relationship out of which a duty to specific persons arises." *Id.* at 4. "Realistically speaking, while public prosecution does little to console those who suffer from the mistakes of police officials, on balance the community is better served by a policy that both protects the exercise of law enforcement discretion and affords a means of review by those who, in supervisory roles, are best able to evaluate the conduct of their charges." *Morgan*, 468 A.2d at 1312. Accordingly, because McGaughey's claim against the MPD arises from alleged negligence in the performance of their police duties, and because she cannot show a special relationship that gives rise to a special police duty to her, the public duty doctrine protects the District from suit, and summary judgment for the District must be GRANTED.

## CONCLUSION

For the foregoing reasons, the District's motion for summary judgment is GRANTED. An appropriate order will accompany this memorandum opinion.

RICHARD J. LEON
United States District Judge