# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ALEXANDRIA McGAUGHEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:07-cv-01498 (RJL/DAR) |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PRETRIAL STATEMENT

Pursuant to L.Cv.R. 16.5 and the Court's Order of January 29, 2013, Plaintiff Alexandria McGaughey submits this pretrial statement.

### 1. Statement of the Case

### A. Overview

Plaintiff Alexandria McGaughey was a student at Howard University when the events underlying this action arose. In December 2006, Ms. McGaughey likely experienced a drug-facilitated sexual assault and sought assistance from Howard University Hospital, George Washington University Hospital, and from the District's Metropolitan Police Department ("MPD"). Through their improper actions and inaction, the defendants in this case engaged in medical malpractice, negligence, negligent hiring/training/supervision, and/or violations of the Emergency Medical Treatment and Active Labor Act (EMTALA). Defendants' actions and inaction caused Plaintiff both physical pain and suffering as well as mental and emotional harm. In 2008, Ms. McGaughey filed this action against Defendants Howard University Hospital ("HUH"); Howard University ("HU"); HUH doctors Wendie Williams and Dawit Yohannes;

1

District Hospital Partners d/b/a/ George Washington University Hospital ("GWUH"); George Washington University ("GWU"); GWUH doctor Christopher Lang; and the District's Metropolitan Police Department ("MPD").

The District Court has jurisdiction over the federal claim against certain defendants in this case pursuant to 28 U.S.C. §1331 and 42 U.S.C. §1395dd(e)(1). The matter in controversy exceeds $75,000 and was brought between citizens of different states. The District Court had supplemental jurisdiction over claims against the District of Columbia pursuant to 28 U.S.C. § 1367(a). On August 25, 2010, this Court granted summary judgment in favor of the District of Columbia and thus the District of Columbia is no longer a defendant in the case.

### B. The Nature of the Case

In the early morning hours of December 9, 2006, Plaintiff – then a sophomore at Howard University – was brought by her friends directly from an off-campus house party to Howard University Hospital ("HUH"). Plaintiff was vomiting uncontrollably, could not walk unassisted, could not speak discernibly, and was going in and out of consciousness. Plaintiff's friends feared for her life and, based on Plaintiff's condition and suspicious events that had taken place at the party, they believed that Plaintiff had been sexually assaulted and likely drugged. At the time, HUH held itself out as the premiere location for the treatment of sexual assault patients in the District and hosted the District's Sexual Assault Nurse Examiner ("SANE") program. However, instead of treating Plaintiff as an urgent patient and sexual assault victim in desperate need of care, the Howard Defendants told Plaintiff's friends to take Plaintiff home and have her "sleep it off." By sending Plaintiff home in such a vulnerable state, contrary to the most basic standards of care, HUH endangered Plaintiff's life and prolonged her physical pain and suffering.

Later on December 9, Plaintiff returned to HUH - as HUH had directed - after waking with severe rectal, leg and hip pain that made it difficult for her to walk, and with unexplained discharge in her underwear. HUH denied her care for hours and again failed to treat Plaintiff properly. During this visit HUH contacted the MPD and an officer came to HUH to take Plaintiff's complaint. Plaintiff and her friend told the officer about the suspected sexual assault, the pain Plaintiff was experiencing, and information about the likely assailant. The officer then contacted a Detective in the MPD's Sexual Assault Unit. Contrary to MPD policy, however, the Detective did not respond to the hospital in person but merely conducted a brief phone interview, after which he told Plaintiff she could not receive a Sexual Assault Medical Forensic Examination (SAMFE) – a specialized exam for sexual assault victims with a dual medical and forensic purpose – because she could not provide the name of the suspect.

After Plaintiff's sister contacted the MPD again, two other MPD officers reported to the scene. They questioned Plaintiff as if she were lying or had done something wrong and appeared not to believe Plaintiff's account of what happened at the party.

The MPD failed to follow its own policies in responding to Plaintiff's complaint and failed to conduct even a minimal investigation. HUH then refused to administer a SAMFE. The hospital discharged Plaintiff with only a cursory and inadequate physical exam, without any collection of evidence or testing for the presence of a date rape drug, and without addressing her needs. The hospital and doctors had a duty to provide a SAMFE, regardless of police authorization, and to collect and preserve evidence from Plaintiff's body.

Fearing for her physical well-being, desperate to receive proper care, and wanting to have evidence from her body collected and preserved, Plaintiff sought a complete SAMFE and treatment at the George Washington University Hospital ("GWUH") Emergency Department on

the evening of December 9, 2006, following her two unsuccessful visits to HUH. GWUH had a written sexual assault policy in 2006 that required GWUH Emergency Department physicians and nurses to provide SAMFEs to sexual assault patients who presented at GWUH. Nevertheless, despite this fact, and the fact that SAMFEs were offered to others at GWUH in 2006, the GW defendants declined to provide one for Plaintiff, citing the fact that HUH did not conduct a SAMFE on Plaintiff and the police had suggested one was not warranted. GWUH and Dr. Lang had a duty to provide a SAMFE but failed to do so.

At GWUH, neither Dr. Lang, the attending physician assigned to plaintiff, nor Dr. Khozeimeh, the first year resident at GWU who handled her care, had experience or training in caring for sexual assault patients or was familiar with the GWUH sexual assault policy. Nor were the GWUH nurses who handled Plaintiff's case familiar with the written sexual assault policy. Rather, all of these GWUH personnel operated under the misconception that SAMFEs did not take place at GWUH and that sexual assault patients should be routed for treatment to HUH. The GW Defendants made Plaintiff wait for hours in the public waiting room rather than treating her case with the urgency required, during which time her injuries, including severe physical and emotional pain and suffering, were untreated and, in fact, exacerbated, and during which time she feared for her physical health and safety. Further, when GWUH finally treated Plaintiff, not only was she denied a SAMFE, but nearly her entire care (including her physical examination) was delegated to Dr. Khozeimeh – a first-year resident who had just begun her Emergency Department rotation. Dr. Khozeimeh had never before handled a sexual assault patient, was unqualified to detect and treat Plaintiff's injuries, failed to collect evidence or conduct drug testing, and failed to resolve Plaintiff's complaints of injury and pain.

On December 9, 2007, Defendant Dr. Lang, who was paid to teach GWU's medical residents through a contract between GWU and his employer Medical Faculty Associates, was responsible for the direct supervision of Dr. Khozeimeh.  Defendant GWU employed Dr. Khozeimeh and had ultimate supervisory authority over her.  Defendant GWUH granted privileges to attending physicians and resident physicians who practice in the GWUH Emergency Department, including Drs. Lang and Khozeimeh, and had the right to exercise significant control over them.  GWUH also employed all the nurses who interacted with Plaintiff. All three defendants – Dr. Lang, GWU, and GWUH – had a duty to ensure that the attention and treatment Plaintiff received on December 9, 2006 met the applicable standards of care with respect to provision of a SAMFE and otherwise and failed to do so.

Plaintiff is prepared to present evidence that all defendants in this action violated the standard of care in their dealings with plaintiff, and that plaintiff suffered injury as a result, including prolonged physical suffering, significant emotional harm, and the loss of the opportunity to obtain important information and evidence relevant to her sexual assault and likely drugging that could have potentially been useful in a criminal prosecution, civil lawsuit, or university disciplinary proceeding.  In addition to presenting testimony from fact witnesses and an expert witness on date rape drugs, Plaintiff will present testimony from two experts in the care and treatment of sexual assault survivors who have opined that both the Howard Defendants and the GW defendants breached the standard of care and caused Plaintiff great harm. One, Dr. Michael Weaver, is an emergency medicine physician with nearly thirty years of experience treating sexual assault patients who has worked in one of the leading hospitals in the nation with a specialized program for handling sexual assault victims.  He is co-chair of the Forensics Section of the American College of Emergency Physicians and has instructed nationwide and internationally

regarding the proper handling of sexual assault patients by hospital emergency departments. Dr. Weaver will testify about the treatment of sexual assault victims by emergency physicians and departments; the applicable standards of care and appropriate protocols; and deviations from the standard of care by emergency department personnel in this case.

Dr. Linda Ledray is a licensed Ph.D. clinical psychologist and a SANE nurse with over thirty five years of experience working on the issue of sexual assault and with sexual assault victims. Dr. Ledray founded one of the first SANE programs in the U.S., has written or co-authored several books and guidebooks and over 60 published articles regarding sexual assault, sexual assault victims, and the medical and law enforcement responses to sexual assault (including manuals published by the U.S. Department of Justice). Dr. Ledray instructs nationally and internationally regarding proper procedures for the care and treatment of sexual assault survivors and is considered one the of the leading experts in the world on the topics at issue in this case. Dr. Ledray will testify about SANE and SART programs; the nature and purposes of Sexual Assault Medical and Forensic examinations (SAMFEs); the applicable standards of care for medical professionals and hospitals in responding to sexual assault; and her assessment of Defendants' responses to Plaintiff in this case. Dr. Ledray, who conducted a psychological examination of the Plaintiff in this case, will also testify about the psychological injuries suffered by Plaintiff and the link between those injuries and the conduct of Defendants. Dr. Ledray had a clinical psychology practice for many years and has evaluated and provided therapy to thousands of sexual assault survivors.

## 2. Statement of Plaintiff's Claims

Plaintiff has filed claims against both defendant hospitals - HUH and GWUH (DHP) - and both defendant universities - HU and GWU - for negligence, medical malpractice, and negligent hiring/training/supervision.  With respect to HUH and HU, Plaintiff also claims that these defendants violated her rights under the Emergency Medical Treatment and Active Labor Act (EMTALA) and engaged in unlawful medical malpractice/abandonment.   Plaintiff has also filed claims alleging negligence and medical malpractice against the three defendant doctors – Dr. Wendie Williams, Dr. Dawit Yohannes, and Dr. Christopher Lang.  With respect to Dr. Wendie Williams, Plaintiff also claims that she engaged in unlawful medical malpractice/abandonment.

## 3. Statement of Defenses Raised by Party

As there are no claims or counterclaims asserted against Plaintiff, Plaintiff does not intend to assert any defenses.

## 4. Plaintiff's Witnesses

A schedule of witnesses is attached as Attachment A, and includes witnesses Plaintiff expects to call at trial and witnesses Plaintiff may call if the need arises.  Plaintiff also reserves the right to call any witness listed on any other party's witness list.

## 5. List of Exhibits to be Offered in Evidence

A list of exhibits is attached as Attachment B, and includes exhibits Plaintiff expects to introduce at trial and exhibits Plaintiff may introduce if the need arises.

**6. Designation of Depositions, or Portions, to be Offered into Evidence**

A list of the portions of depositions Plaintiff expects to offer into evidence is attached as Attachment C.

**7. Plaintiff's Damages**

Plaintiff suffered extreme pain and suffering, both physical and emotional, during her visits to HUH and GWUH and afterwards, which were caused in large part by Defendants' actions and their treatment of her. Plaintiff's physical and mental injuries, which are supported by expert evidence, resulting from Defendants' conduct are described in court documents previously filed under seal in this case.[1] Plaintiff seeks the following types of damages from defendants HUH, HU, Dr. Wendie Williams, Dr. Dawit Yohannes, GWU, DHP, and Dr. Christopher Lang: compensatory damages for physical injury, pain and suffering, and mental and emotional harm caused by these defendants; compensatory damages for Plaintiff's lost opportunity to bring her assailant(s) to justice; and compensatory damages of approximately $2560 for out-of-pocket costs incurred by Plaintiff due to the inadequate medical treatment by these defendants and/or to attempt to remedy the harm caused by these defendants. Plaintiff also seeks punitive damages against all defendants in this action except District Hospital Partners and Dr. Lang, whose motions for summary judgment regarding Plaintiff's claims for punitive damages were granted by this court. Finally, Plaintiff seeks costs as well as interest on all damages.

---

[1] *See e.g.* Pl.'s Statement of Material Facts in Opp'n to Defs'. Mot. for Summ. J., Ex. A to Pl.'s Opp'n to the Howard Defs'. Refiled Mot. for Partial Dismissal or in the Alternative, for Partial Summ. J., filed August 10, 2009.

**8. Request for Other Relief**

Other than the relief described above, Plaintiff does not seek other relief at this time.

Respectfully Submitted,

/s/ Bruce V. Spiva
Bruce V. Spiva,  D.C. Bar No. 443754
  bspiva@spivafirm.com
Catherine A. Bendor,  D.C. Bar No. 442437
  cbendor@spivafirm.com
THE SPIVA LAW FIRM PLLC
1776 Massachusetts Avenue, N.W.,
Suite 601
Washington, D.C. 20036
Telephone:  (202) 785-0601
Facsimile:  (202) 785-0697

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Plaintiff's Pretrial Statement was served on April 5, 2013, by electronic filing with the Court's ECF system, upon:

James P. Gleason
  jgleason@gleason-law.com
Larry D. McAfee
  lmcafee@gleason-law.com
GLEASON, FLYNN, EMIG & FOGLEMAN, CHARTERED
11 North Washington Street, Suite 400
Rockville, MD 20850

Steven Hamilton
shamilton@gleason-law.com
GLEASON, FLYNN, EMIG & FOGLEMAN, CHARTERED
11 North Washington Street, Suite 400
Rockville, MD 20850

Thomas V. Monahan, Jr.
  tvm@gdldlaw.com
Adam Kelley
  axk@gdldlaw.com
GOODELL, DEVRIES, LEECH & DANN, LLP
One South Street, Suite 2000
Baltimore, MD 21202

Robert W. Goodson
  robert.goodson@wilsonelser.com
WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
700 11th Street, N.W., Suite 400
Washington, D.C. 20001

/s/  Bruce V. Spiva

Bruce V. Spiva

# Attachment A

# Schedule of Witnesses

The following is a list of the witnesses Plaintiff expects to call and/or may call at trial. Plaintiff reserves the right to call any witness listed on any other party's witness list. To the extent that deposition testimony of any witness Plaintiff seeks to introduce through deposition excerpts is excluded, Plaintiff reserves the right to call that witness as a live witness.

(Time estimates are for direct examination only.)

**Witnesses Plaintiff Expects to Call**

**1.  Alexandria McGaughey (3 hours)**

Plaintiff is currently living in Los Angeles, California and can be contacted through counsel.

Ms. McGaughey, the Plaintiff in this action, will testify regarding events immediately before, during, and after the party on 12/08/06 at which the likely sexual assault occurred; events that transpired during her two visits to HUH, and her visit to GWUH; her follow up efforts, including efforts to obtain subsequent care; results of complaints filed with HUH and MPD; her condition before, during, and after this period; and the effects of the Defendant's responses to her or lack thereof, including physical, emotional, and other injuries she has suffered.

**2.  Raegen McGaughey (2.5 hours)**

5917 Tamar Drive, Unit 5
Columbia, MD 21045

Raegen McGaughey, Plaintiff's sister, will testify regarding her involvement in this matter and attempts to assist her sister after the sexual assault; events that transpired at HUH during Plaintiff's second visit; her and Plaintiff's efforts to seek a Sexual Assault Medical Forensic Examination for Plaintiff; Raegen McGaughey's interactions with hospital and police personnel; the McGaugheys' visit to GWUH; follow up efforts, including efforts to obtain subsequent care; follow-up meeting with HUH; Plaintiff's condition, and the effects of the Defendants' treatment on Plaintiff while these events transpired and afterwards.

**3.  Kerston Reid (2.5 hours)**

13500 Laughter Court
Chester, VA 23831

Kerston Reid, a friend of Plaintiff who was with her on 12/08/06 at the party, during her two visits to HUH, and in between, will testify regarding events immediately before, during, and after

1

the party on 12/08/06; Plaintiff's first and second visits to HUH; Plaintiff's condition throughout this period; effects on Plaintiff of response to her efforts to seek assistance/treatment in response to the assault.

**4.  Sade Dike (2.5 hours)**

P.O. Box 1094
Suitland, MD 20752

Sade Dike, a friend of Plaintiff who was with her on 12/08/06 at the party and during her first visit to HUH, will testify about events immediately before, during, and after the party on 12/08/06; Plaintiff's first visit to HUH; Plaintiff's condition throughout this period; effects on Plaintiff of responses to her efforts to seek assistance/treatment in response to the assault.

**5.  Amanda Lockett (45 minutes)**

586 Lynn Valley Road SW
Atlanta, GA 30311

Amanda Lockett, Plaintiff's classmate at Howard University, will testify regarding events during and after the party on 12/08/06 that Plaintiff and her friends attended; Plaintiff's condition and the decision to go to HUH; Plaintiff's condition the following morning.

**6.  HUH Nurse Betty Brown (45 minutes)**

770 Oglethorpe Street NE
Washington, DC 20011

Nurse Brown was the triage nurse in the HUH Emergency Room during Plaintiff's first visit to HUH in the early morning of December 9, 2006.  Nurse Brown is expected to testify about Plaintiff's visit to the HUH; Plaintiff's apparent condition and the triage process; HUH records reflecting Plaintiff's first visit to HUH; HUH training on sexual assault patients and related topics that she received; HUH standards and policies for treating patients in the Emergency Department.

**7.  HUH Nurse Lillie Bryant (45 minutes)**

7605 Swan Terrace
Landover, MD 30785

Nurse Bryant was the triage nurse in the HUH Emergency Room during Plaintiff's second visit to HUH on December 9, 2006.  Nurse Bryant is expected to testify about Plaintiff's visit to the HUH emergency room, including the triage process; HUH records reflecting Plaintiff's visits to HUH; HUH's training of nurses; HUH standards, policies, and practices for treating patients in the Emergency Department; and her practices as a triage nurse.

**8. Nurse Mary Pinn (45 minutes)**

2220 Kearny Street NE
Washington, DC 20018

Nurse Pinn was the primary Sexual Assault Nurse Examiner (SANE) at HUH in December, 2006, and was involved in Plaintiff's second visit to HUH. Nurse Pinn is expected to testify about the SANE program at HUH; her work and role as a SANE nurse; HUH's policies and practices regarding treatment of patients complaining of sexual assault; HUH's policies and practices regarding charges, payment, and reimbursement related to sexual assault patients, SANE exams, and SANE nurses; the nature of SAMFE exams; and her involvement in Plaintiff's visits to HUH on December 6, 2006.

**9. *Dr. Linda Ledray (4 hours)**

SANE-SART Resource Service
Shapiro Bldg, Room 923
914 South 8th Street
Minneapolis, MN 55404-1228

Dr. Ledray will testify about the nature and purposes of Sexual Assault Medical Forensic Examinations (SAMFE); the nature and background of SANE and SART programs; the applicable standards of care for medical professionals and hospitals in responding to sexual assault; and her assessment of Defendants' responses and Defendants' violations of the standard of care in this case. Dr. Ledray is a Nurse, Ph.D. clinical psychologist, and adjunct faculty member at the University of Minnesota with over 35 years of experience who is an internationally recognized expert on sexual assault and responses to it and their impact on victims. She is the founder of first SANE program in the U.S., which has served as model throughout the country and overseas. Dr. Ledray has written 4 books and 2 guidebooks on recovery from and responses to rape, has written over 60 published articles pertaining to sexual assault, and has served as an editor of journals on forensic and emergency nursing. Dr. Ledray also serves as a consultant to the U.S. Department of Justice and is an author of the Department's *National Protocol for Sexual Assault Medical Forensic Examinations* (2004).

In this case, Dr. Ledray also conducted a psychological examination and evaluation of the Plaintiff. She will testify about the psychological testing she did of the Plaintiff and results of the testing, including the effects on Plaintiff and injuries caused by Defendants' treatment of her. Dr. Ledray has many years of experience examining, evaluating, and providing therapy to sexual assault survivors and has evaluated thousands of survivors in her clinical psychology practice.

**10. *Dr. Michael Weaver (2 hours)**

4505 Headwood Drive, #1
Kansas City, MO 64111

Dr. Weaver will testify about the importance of the SAMFE exam with respect to medical treatment of a sexual assault survivor; the standards of care and appropriate protocols for the treatment of sexual assault victims by emergency physicians and departments; and deviations from that standard of care by the medical professionals who interacted with Plaintiff in this case. Dr. Weaver is an emergency room physician with over thirty years of experience who is Medical Director of the Forensic Care Program at St. Luke's Hospital in Kansas City, Missouri; is the Medical Director of the St. Luke's System SANE Program; and was the Medical Director for St. Luke's Hospital Level 1 Trauma Emergency Services for 17 years. Dr. Weaver also serves as co-chair of the Forensics Section of the American College of Emergency Physicians and is a member of the faculty of University of Missouri, Kansas City's School of Medicine.

## 11. *<u>Trinka Porrata</u> (45 minutes)

2753 E. Broadway, Ste. 101 PMB 434
Mesa, AZ 85204

Ms. Porrata will testify on the physical effects of drugs typically used in Drug Facilitated Sexual Assaults (DFSA); how the facts of this case are consistent with commission of a DFSA; methods of testing for drugs typically used in DFSAs, the connection between the types of drugs typically used in DFSAs and Plaintiff's presentation at HUH and GWUH hospitals (including the types of information Plaintiff gave to medical professionals and police officers; the fact that MPD didn't recognize this as a likely case of DFSA and the inadequacy of the police response to Ms. McGaughey's complaint (on which the hospitals should not have relied to any degree); the connection between drugs typically used in DFSAs and a person's ability to consent to sexual activity; and instructions patient should be given to preserve evidence on one's body for testing for likely drugs. Ms. Porrata is also an expert on the contents of sexual assault kits and will testify regarding the fact that the hospitals could have done the necessary testing and evidence collection even in the absence of a formal sexual assault kit. Ms. Porrata is a former narcotics detective with over 25 years of experience who is an internationally recognized expert on drug facilitated sexual assault and the drugs typically used in such assaults. She has trained many law enforcement and medical professionals regarding the proper response to suspected sexual assault, particularly drug facilitated sexual assault.

**Witnesses Plaintiff May Call**

**1. MPD Police Officer Michael Minor** (20 minutes)

Metropolitan Police Department
750 Park Road NW
Washington, DC 20010

Officer Michael Minor is the officer who first responded to HUH during Plaintiff's second visit when the MPD was called. Officer Minor is expected to testify about Plaintiff's reporting of a sexual assault complaint to the MPD and his actions in responding to her complaint.

**2. MPD Detective Vincent Spriggs** (20 minutes)

Metropolitan Police Department
300 Indiana Avenue NW
Washington, DC 20001

Detective Spriggs is the MPD Sexual Assault Unit detective who Officer Minor contacted regarding handling Plaintiff's complaint and who "cleared" her case without a report, investigation, or future action by the MPD. He is expected to testify about his actions in responding to Plaintiff's complaint and the MPD's response.

**3. MPD Police Officer Tandria Green** (20 minutes)

Metropolitan Police Department, Third District
1620 V Street NW
Washington, DC 20009

Officer Green is one of the MPD officers who responded to HUH during Plaintiff's second visit (second MPD response) and met with Plaintiff. She is expected to testify about her actions in responding to Plaintiff's complaint.

**4. MPD Police Officer Ginette Leveque** (20 minutes)

Metropolitan Police Department, Third District
1620 V Street NW
Washington DC 20009

Officer Leveque is one of the MPD officers who responded to HUH during Plaintiff's second visit (second MPD response) and met with Plaintiff. She is expected to testify about her actions in responding to Plaintiff's complaint.

**5. <u>MPD Detective Elgin Wheeler</u> (20 minutes)**

Metropolitan Police Department
300 Indiana Avenue NW
Washington, DC 20001

Detective Wheeler is the MPD Sexual Assault Unit detective who officers Green and Leveque contacted regarding their handling of Plaintiff's complaint of sexual assault. Detective Wheeler is expected to testify about his actions in responding to Plaintiff's complaint and the MPD's response.

**6. <u>MPD Sergeant Kevin Rice</u> (20 minutes)**

Metropolitan Police Department
300 Indiana Avenue NW, Room 3042
Washington, DC 20001

Sgt. Rice was a supervisor in the MPD's Sexual Assault Unit who Detective Wheeler contacted regarding Plaintiff's complaint. Sgt. Rice is expected to testify regarding his actions in responding to Plaintiff's complaint and the MPD's response.

**7. <u>Denise Snyder</u> (30 minutes)**

DC Rape Crisis Center
P.O. Box 34125
Washington, DC 20043

Ms. Snyder is the Executive Director of the DC Rape Crisis Center. She is expected to testify about the SANE program at HUH and HUH's role on the SART team.

**8. <u>Custodian of records and/or Corporate Designee for HUH and/or HU</u> (30 minutes)**

**9. <u>Custodian of records and/or Corporate Designee for GWUH and/or GWU</u> (30 minutes)**

**10. <u>Custodian of Records/Representative and/or Corporate Designee of District of Columbia</u> (30 minutes)**

# Attachment B

# List of Exhibits to Be Offered in Evidence

<u>**Exhibits Plaintiff Expects to Offer in Evidence**</u>

**Howard Defendants**

| | | |
|---|---|---|
| 1. | Plaintiff's HUH Registration Sheet (first visit to HUH - 4:13 a.m.) | 12/9/2006 |
| 2. | Plaintiff's HUH Emergency Department Nursing Report (4:30am "LWOT" ("Left without Treatment") notation) | 12/9/2006 |
| 3. | Plaintiff's HUH Emergency Department Signed Nursing Report | 10/5/2007 |
| 4. | Plaintiff's HUH Emergency Department LWOT Note | 10/5/2007 |
| 5. | Plaintiff's HUH Facility ED Visit Level Form (Billing Copy) (first visit to HUH) | 12/9/2006 |
| 6. | Plaintiff's HUH Registration Sheet (second visit to HUH - 13:08 p.m.) | 12/9/2006 |
| 7. | Plaintiff's HUH Emergency Department Nursing Report with History | 2/28/2007 |
| 8. | Plaintiff's HUH Physician's Orders Form | 12/9/2006 |
| 9. | Plaintiff's HUH Physician's Orders Form | 12/9/2006 |
| 10. | Plaintiff's HUH Point of Care Test Results and Quality Control Log | 12/9/2006 |
| 11. | Plaintiff's HUH Electronic Physician's Treatment Form | 10/5/2007 |
| 12. | Plaintiff's HUH Discharge Instructions | 12/9/2006 |

| 13. | Plaintiff's HUH Facility ED Visit Level Form (Billing Copy) (second visit to HUH) | 12/9/2006 |
|---|---|---|
| 14. | Plaintiff's HUH Consent for Medical and Surgical Treatment and/or Operation | 12/9/2006 |
| 15. | Plaintiff's HUH Consent for Medical and Surgical Treatment and/or Operation | 12/9/2006 |
| 16. | HUH Administrative Standard Practice Manual: Scope of Care/Medical/Forensic Examination | 2/28/2006 |
| 17. | SANE Nurse Mary Pinn's SANE Program Power point Presentation | |
| 18. | HUH Administrative Standard Practice Manual: SANE Plan for Staffing | 3/8/2006 |
| 19. | Howard Emergency Department Triage Policy | 1/1/2005 |
| 20. | HUH Administrative Standard Practice Manual: Triage for Patients with Complaint of Sexual Assault by HUH Triage Nurse or other Emergency Nursing Staff | 3/8/2006 |
| 21. | HUH SANE Application | |
| 22. | Email messages among HUH personnel and SART team re: gaps in coverage in SANE program at HUH – July 2007 – October 2008 (from Ex. 84 to Pl's. Statement of Material Facts in Opp'n to Defs'. Mot. For Summ. J, Ex. A to Pl's. Opp'n to the Howard Defs'. Refiled Mot. For Partial Dismissal of in the Alternative, for Partial Summ. J., filed August 10, 2009 [hereinafter "PSOF"]). | 10/11/2008 |
| 23. | Excerpt of Howard University Campus Police Department 2006 Annual Security Report | 2006 |
| 24. | Howard Defendants' Opposition to Plaintiff's Motion to Compel, (Doc. 122, filed 2/26/09) | 2/26/2009 |
| 25. | Letter of August 19, 2009 from Howard Counsel Karen Turner to Counsel re: list of patient who left without treatment on 12/8/06 - 12/10/06 | 9/19/2009 |

| 26. | List of LWOTs processed at HUH 12/8/06 -12/10/06 (printed 12/19/2008) | 12/19/2008 |
| 27. | Howard Defendants' Statement of Material Facts, Doc 177 – 7/6/09  page 39-40 | 7/6/2009 |
| 28 | Email messages among HUH administrators and Nurse Pinn re: SANE program December 11, 2007 – January 3, 2008 (from Ex. 85 to PSOF). | 1/3/2008 |

**George Washington Defendants**

| 29. | Plaintiff's GWUH Emergency Department Patient Induction Form and Registration Worksheet | 12/9/2006 |
| 30. | Plaintiff's GWUH Emergency Flow Sheet Record | 12/11/2006 |
| 31. | Plaintiff's GWUH Patient Face Sheet | 12/9/2006 |
| 32. | Plaintiff's GWUH Visit Record | 12/9/2006 |
| 33. | Plaintiff's GWUH Patient Authorization Form | 12/9/2006 |
| 34. | Plaintiff's GWUH Discharge Instructions | 12/10/2006 |
| 35. | GWUH's Responses to Plaintiff's First Set of Requests for Admission | 10/10/2008 |
| 36. | GWU Responses to Plaintiff's First Set of Requests for Admissions | 10/13/2008 |
| 37. | District Hospital Partners Partnership Agreement | 4/2/1997 |
| 38. | DHP/GWU Academic Affiliation Agreement | 7/21/1997 |
| 39. | MFA/GWU Academic Affiliation Agreement | 7/1/2000 |

| 40. | GWUH Emergency Department Practice Manual: Guidelines for Management of Sexual Assault Victims in Emergency Department (November 1984, Revised March 2003) | Mar. 2003 |

**SART (D.C. Sexual Assault Response Team)**

| 41. | DC Sexual Assault Response Team (SART) Meeting Minutes | 2/20/2008 |
| 42. | DC Sexual Assault Response Team (SART) Meeting Minutes | 3/27/2008 |

**Metropolitan Police Department**

| 43. | Page from MPD Officer Michael Minor's notepad with notes from 12/09/06 interview with Plaintiff | 12/9/2006 |
| 44. | District's Responses to Plaintiff's Requests for Admissions | 10/14/2008 |
| 45. | MPD General Order: Adult Sexual Assault Investigations | 12/22/2006 |

**Plaintiff**

| 46. | HUH Statement of Account for Services Provided to Plaintiff on 12/9/2006 | 8/23/2007 |
| 47 | HUH Statement of Account for Services Provided to Plaintiff on 12/9/2006 | 4/30/2008 |
| 48. | HUH Statement of Account for Services Provided to Plaintiff on 12/9/2006 | 4/30/2008 |
| 49. | GWUH Statement of Account for Services Provided to Plaintiff on 12/09/2006 | 6/3/2007 |
| 50. | Plaintiff's Unicare Explanation of Benefits for Services Provided at GWUH on 12/9/2006 | 3/14/2007 |

| 51. | Medical Faculty Associates Statement of Account for Services Provided to Plaintiff at GWUH on 12/9/2006 | 6/7/2007 |
| 52. | Holy Cross Hospital Statement of Account for Services Provided to Plaintiff on 12/10/2006 | 3/9/2007 |
| 53. | Chicago Women's Health Statement of Account for Service Provided to Plaintiff on 12/15/2006 | 1/15/2007 |
| 54. | Plaintiff's Unicare Explanation of Benefits for Services Provided at Chicago Women's Health on 12/15/2006 | 12/29/2006 |
| 55. | Dr. Robinson-Redway's Statement of Account for Services Provided to Plaintiff on 2/5/2007 | 4/19/2007 |
| 56. | Plaintiff's Unicare Explanation of Benefits for Services Provided by Dr. Robinson-Redway on 2/5/2007 | 4/11/2007 |
| 57. | LabCorp Statement of Account for Services Provided to Plaintiff on 2/5/2007 | 4/27/2007 |

## Exhibits Plaintiff May Offer in Evidence

### Howard Defendants

| 1. | Letter of September 9, 2008 from Howard Counsel Karen Turner to Counsel re: HUH failure to produce registration form completed by Plaintiff's companion | 9/9/2008 |
| 2. | HUH Risk Management Privilege Log | |
| 3. | Email message from HUH Interim Chief Nursing Officer re: discontinuation of responsibility for administration of SANE program (from Ex. 83 to PSOF) | 10/1/2007 |
| 4. | Howard Defendants' Responses to Plaintiff's First Set of Requests for Admission | 10/10/2008 |
| 5. | Excerpt from June 2006 D.C. Inspector General Report re Rosenbaum | 6/1/2006 |
| 6. | HUH Emergency Department Patient Care Standards, Standard of Care: Care of the Patient with Alcohol Intoxication | |

7..     HUH Emergency Department Patient Care Standards, Standard of Care: Care of the Patient with Vomiting/Diarrhea

8..     HUH Processes: Patient Tracking and Electronic Medical Record (includes: Processes for LWOT, LWBA, AMA, and/or Eloped Patients)     10/30/2006

9.     HUH Administrative Standard Practice Manual: Patients Leaving Against Medical Advice and/or Missing Patients     5/17/2005

10.     HUH Department of Emergency Medicine Policy: Patients Leaving Against Medical Advice     Dec. 1998


**George Washington Defendants**

11.     Email from Defense Counsel Chrissy Constantino re: unsuccessful attempts to serve Bilal Curtis re: deposition     10/8/2008

12.     GWU Privilege Log re: Dr. Khozeimeh's file     7/14/2009

13.     GWUH Privilege Log re: Dr. Lang's file     6/15/2009

14.     Excerpt from GWU Pride in Protection and Service, University Police Department 2006-2007 Compliance Information, August 2006     8/1/2006

15.     "GW and DC Area Information and Services for Survivors of Sexual Assault" – excerpt from G.W.U. Police website, archive dated September 8, 2006     9/8/2006

16.     Sexual Assault Crisis Consultation Team – Standard Operating Procedures for Responding to Incidents of Sexual Assault involving GW Students     11/7/2007

17.     Letter of June 5, 2008 from DHP Counsel Adam Kelley to Plaintiff's Counsel re: 1984 GWUH Sexual Assault Policy Still in Effect     6/5/2008

**SART (D.C. Sexual Assault Response Team)**

18.    Letter from SART to HUH outlining questions/concerns re: SANE    3/9/2004
program at HUH, including HUH's failure to attend SART
meetings

19.    DC Sexual Assault Response Team (SART) Meeting Minutes    5/17/2007

20.    DC Sexual Assault Response Team (SART) Meeting Minutes    3/16/2006

21.    DC Sexual Assault Response Team (SART) Meeting Minutes    2/24/2004

**Metropolitan Police Department**

22.    MPD General Order: Investigation of Sex Crimes    11/14/1973

23.    MPD Special Order: SANE Program    4/2/2001

24.    MPD Powerpoint:  Basic Investigator Training for Sex Offenses

25.    Excerpt from MPD Sexual Assault Unit Standard Operating    1/14/2003
Procedures re: Medical Exams/Medical Forms and Sex Kits

26.    Email message from Joseph Trippi to Winston Robinson of the    5/9/2008
MPD

**Plaintiff**

27.    Questions from Plaintiff's Meeting with HUH Utilization    3/16/2007
Review/Risk Management

28.    Excerpt from National Protocol for Sexual Assault Medical    2004
Forensic Examinations

29.    Current Curriculum Vitae of Dr. Linda Ledray

| | | |
|---|---|---|
| 30. | Expert Report of Dr. Linda Ledray | 12/1/2008 |
| 31. | Rebuttal Expert Report of Dr. Linda Ledray | 4/11/2009 |
| 32. | Supplemental Rebuttal Expert Report of Dr. Linda Ledray | 7/2/2009 |
| 33. | Current Curriculum Vitae of Dr. Michael Weaver | |
| 34. | Expert Report of Dr. Michael Weaver | 12/1/2008 |
| 35. | Rebuttal Expert Report of Dr. Weaver | 4/27/2009 |
| 36. | Current Curriculum Vitae of Ret. Det. Trinka Porrata | |
| 37. | Expert Report of Ret. Det. Trinka Porrata | 12/1/2008 |
| 38. | Rebuttal Expert Report of Ret. Det. Trinka Porrata | 4/15/2009 |
| 39. | Excerpts from Joint Commission on Accreditation of Health Care Organizations, Hospital Standards for Accreditation | 2006 |
| 40. | Excerpts from American College of Emergency Physicians, Evaluation and Management of the Sexually Assaulted or Sexually Abused Patient | June 1999 |
| 41. | American College of Emergency Physicians, Management of the Patient with the Complaint of Sexual Assault | Oct. 2002 |

# Attachment C

# Designation of Portions of Depositions to be Introduced into Evidence

The following is a list of testimony Plaintiff may seek to admit through deposition excerpts – either video deposition footage or paper transcripts.  To the extent the deposition testimony of any witness Plaintiff seeks to introduce through deposition excerpts is excluded, Plaintiff reserves the right to call that witness as a live witness.

**Deposition of Gerald Cook** – November 10, 2008

Husband of Plaintiff's cousin whom Plaintiff and her sister consulted during events at HUH – lives in Chicago, IL.

7:7-9

11:7-22

12:1-7

13:18-22

14:1-3

15:2-9, 16-21

17:1-22

18: 1-15, 19-22

19:1-22

20:1-10

21:4-15

27:7-18

29:1-14

**Deposition of HUH Nurse Bonnie Randolph** – November 7, 2008

Charge Nurse at HUH during Plaintiff's first visit to HUH on December 9, 2006

6:12-14

12:2-6

13:21-14:2

23:19-21

43:18-21

108:3-13

109:14-16

123:14-124:21

156:7-9

156:12-157:6

163: 6-12

170:12-171:4


**Deposition of HUH Dr. Wendie Williams** – July 10, 2008

Attending Physician at HUH Emergency Room during Plaintiff's first visit on December 9, 2006

8:21-9:1

16:22-17:1

17:17-19

22:8-11

109:17-19

120:20-121:7

171:15-173:17

218:15-219:17

265:14-268:5

268:21-270:11

271:6-272:17

277:15-279:9

284:20-285:12

294:11-295:8

295:21-296:7

315:16-316:9

330:17-331:14

341:2-17


**Deposition of GWUH Nurse Christine Barron** – August 25, 2008

Triage Nurse during Plaintiff's visit to GWUH Emergency Room on December 9, 2006 – lives in Roeland Park, KS.

6:10-12

12:22-25

13:17-25

16:18-20

20:25-21:7

21:5-7

23:4-13

29:13-16

35:10-20

36:7-14

37:14-25

38:4-8

38:9-11

42:23-25

48:12-18

57:1-7

59:2-5

59:23-60:1

60:2-16

61:10-22

62:13-63:7

65:9-22

94:7-10

101:2-6

104:23-105:18

106:18-108:2

120:16-23

121:7-12

125:10-14

128:11-25-129:1-13

132:4-11

137:5-12

138:9-21

140:4-11

141:1-9

154:11-25

155:8-25

156:1-20

159:2-7

160:3-9

161:18-20

162:13-16

163:5-9

173:1-7


**<u>Deposition of Dr. Christopher Lang</u>** – June 27, 2008

Attending physician at GWUH Emergency Room during Plaintiff's visit to GWUH.

7:2-4

17:9-18:10

19:1-19

33:16-34:11

36:1-7

42:4-9, 19-22

43:1-3

50:1-8, 18-21

69:4-14

69:9-14

70:11-20

75:13-77:7

78:16-19

79:7-81:21

83: 4-8

85:19-22

86:9-13

86:14-17

87:8-15

92:4-14

93:15-20

105:21-106:6

139:21-140:5

239:8-14

309:4-13


**Deposition of Dr. Nini Khozeimeh** – June 12, 2008

Resident who attended to Plaintiff during Plaintiff's visit to GWUH.

8:16-18

20:13-21

21:16-20

21:21-22:1

23:5-12

23:5-12, 21-22

24:1-25:1-4

31:5-11

32:4-33:8

64:14-18

65:19-66:5

67:18-68:8

68:10-15

78:15-79:5

79:14-80:5

80:7-81:11

82:2-10

84:14-18

96:20-97:12

100:5-21

101:16-22

102:13-103:5

150:7-10

223:14-22